THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN VANCE, *et al.*,

                   Plaintiffs,

     v.

AMAZON.COM, INC.,

                   Defendant.

No. 2:20-cv-01084-RAJ

DEFENDANT AMAZON.COM,
INC.'S MOTION TO DISMISS

**NOTE ON MOTION CALENDAR**:
OCTOBER 9, 2020

**ORAL ARGUMENT REQUESTED**

AMAZON'S MOTION TO DISMISS
(Case No. 2:20-cv-01084-RAJ)

1

**TABLE OF CONTENTS**

2
Page

3   AMAZON HAS CONFERRED WITH PLAINTIFFS......................................................... 3

4   FACTUAL BACKGROUND .............................................................................................. 3

5       A.    The Illinois Biometric Information Privacy Act. ................................................. 3

6       B.    The DiF Dataset. .................................................................................................. 4

        C.    Amazon's Alleged Conduct. ................................................................................ 6
7
    ARGUMENT .................................................................................................................... 6
8
9   I.      THE COURT SHOULD DISMISS PLAINTIFFS' BIPA CLAIMS. ............................. 7

10      A.    Plaintiffs Do Not Allege Any Asserted Violations Occurred "Primarily
              and Substantially" in Illinois, as Required to State a BIPA Claim. ..................... 7

11      B.    Plaintiffs' BIPA Claims Violate the Dormant Commerce Clause........................ 9

12              1.   Plaintiffs' Claims Impermissibly Attempt to Regulate Conduct
                     Occurring Entirely Outside of Illinois's Borders. ..................................... 9
13
                2.   Plaintiffs' BIPA Claims Impermissibly Displace the Legislation
14                   and Policy Decisions Made by States Other than Illinois. ...................... 12

15      C.    Plaintiffs Fail to State a Claim Under BIPA Sections 15(b) Or 15(c). ............... 16

16              1.   BIPA Does Not Apply to the Use of Photographs. .................................. 16

17              2.   Plaintiffs Cannot State a Section 15(b) Claim Because they Fail to
                     Adequately Allege that Amazon "Collected" or "Otherwise
18                   Obtained" Their Biometrics. .................................................................... 18

19              3.   Plaintiffs Cannot Plead a Section 15(c) Claim because they Fail to
                     Plausibly Allege that Amazon "Profited" from Their Biometrics. .......... 21
20
    II.     THE COURT SHOULD DISMISS PLAINTIFFS' UNJUST ENRICHMENT
21          CLAIM. ............................................................................................................... 21

22  III.    PLAINTIFFS HAVE NO SEPARATE INJUNCTIVE RELIEF CLAIM. .................... 23

23  CONCLUSION ................................................................................................................ 23

24

25

26

AMAZON'S MOTION TO DISMISS - i
(Case No. 2:20-cv-01084-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

**Cases**

3   *ACLU v. Johnson*,
       194 F.3d 1149 (10th Cir. 1999) ...........................................................................15

4
   *Aisha Namuwonge v. Kronos, Inc.*,
5       418 F. Supp. 3d 279 (N.D. Ill. 2019) ...................................................................19

6   *Am. Booksellers Found. v. Dean*,
       342 F.3d 96 (2d Cir. 2003)...................................................................................15
7
   *Am. Libraries Ass'n v. Pataki*,
8       969 F. Supp. 160 (S.D.N.Y. 1997) ......................................................................15

9   *Archdiocese of St. Louis v. Internet Entm't Grp., Inc.*,
       1999 WL 66022 (E.D. Mo. Feb. 12, 1999)..........................................................15
10
   *Ashcroft v. Iqbal*,
11       556 U.S. 662 (2009)...............................................................................................6

12
   *Avery v. State Farm Mut. Auto. Ins. Co.*,
13       835 N.E.2d 801 (Ill. 2005)..................................................................................7, 9

14   *Backpage.com, LLC v. McKenna*,
       881 F. Supp. 2d 1262 (W.D. Wash. 2012)...........................................................15
15
   *Bell Atl. Corp. v. Twombly*,
16       550 U.S. 544 (2007)...............................................................................................6

17
   *Bernal v. ADP, LLC*,
18       No. 2017-CH-12364, Order (Cook Cty. Ill. Cir. Ct. Aug. 23, 2019)...............19, 20

19   *Cameron v. Polar Tech Indus., Inc. & ADP, LLC*,
       No. 2019-CH-000013 (DeKalb Cty. Ill. Cir. Ct. Aug. 23, 2019) .........................19
20
   *Chinatown Neighborhood Ass'n v. Harris*,
21       794 F.3d 1136 (9th Cir. 2015) .............................................................................10

22   *Cleary v. Philip Morris Inc.*,
       656 F.3d 511 (7th Cir. 2011) ...............................................................................21
23
   *Cousineau v. Microsoft Corp.*,
24       992 F. Supp. 2d 1116 (W.D. Wash. 2012)........................................................21, 22

25   *In re D.W.*,
       827 N.E.2d 466 (Ill. 2005) ...................................................................................19
26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Dana Tank Container, Inc. v. Human Rights Comm'n*,
  687 N.E.2d 102 (Ill. App. Ct. 1997) ...................................................................19

*Daniels Sharpsmart, Inc. v. Smith*,
  889 F.3d 608 (9th Cir. 2018) .............................................................................10

*Edifecs Inc., v. TIBCO Software Inc.*,
  2011 WL 1045645 (W.D. Wash. Mar. 23, 2011) ...............................................23

*Edwards v. JPMorgan Chase Bank, N.A.*,
  2011 WL 3516155 (W.D. Wash. Aug. 11, 2011) ...............................................23

*In re Facebook Biometric Information Privacy Litigation*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......................................................17, 18

*Healy v. Beer Inst., Inc.*,
  491 U.S. 324 (1989).....................................................................................2, 9, 12

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ................................................................19

*Kelley v. Microsoft Corp.*,
  251 F.R.D. 544 (W.D. Wash. 2008) ...................................................................22

*L'Garde, Inc. v. Raytheon Space & Airborne Sys.*,
  805 F. Supp. 2d 932 (C.D. Cal. 2011) .................................................................5

*Landau v. CNA Fin. Corp.*,
  886 N.E.2d 405 (Ill. App. 2008) ..........................................................................7

*Monroy v. Shutterfly, Inc.*,
  2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ........................................7, 8, 11, 18

*Mount v. PulsePoint, Inc.*,
  684 Fed. App'x 32 (2d Cir. 2017), *as amended* (May 3, 2017) ...........................22

*Nat'l Collegiate Athletic Ass'n v. Miller*,
  10 F.3d 633 (9th Cir. 1993) .........................................................................13, 14

*Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*,
  63 F.3d 652 (7th Cir. 1995) ...............................................................................13

*Neals v. PAR Tech. Corp.*,
  419 F. Supp. 3d 1088 (N.D. Ill. 2019) .................................................................9

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) .....................................................................7, 8, 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seatte, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

AMAZON'S MOTION TO DISMISS - iii
(Case No. 2:20-cv-01084-RAJ)

*Pooh-Bah Enter., Inc. v. Cnty. of Cook*,
  905 N.E.2d 781 (Ill. 2009) ..................................................................................21

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) .................................................................................5

*Rivera v. Google, Inc.*,
  238 F. Supp. 3d 1088 (N.D. Ill. 2017) ...........................................................7, 8, 18

*Rosenbach v. Six Flags Entm't Corp.*,
  129 N.E.3d 1197 (Ill. 2019) ................................................................................18

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015) .........................................................................10, 11

*Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*,
  139 Wn.2d 824, 991 P.2d 1126 (2000)...................................................................23

*Tarzian v. Kraft Heinz Foods Co.*,
  2019 WL 5064732 (N.D. Ill. Oct. 9, 2019)..............................................................9

*Vance et al. v. Microsoft Corp.*,
  W.D. Wash. No. 2:20-cv-01082-JCC-MAT ............................................................1

*Welborn v. Internal Revenue Serv.*,
  218 F. Supp. 3d 64 (D.D.C. 2016) .......................................................................22

**State Statutes**

740 ILCS
  14 (Illinois Biometric Information Privacy Act) ............................................ *passim*
  14/5 .................................................................................................................18
  14/5(a) ..............................................................................................................3
  14/5(b) ..............................................................................................................3
  14/5(b)–(e) .......................................................................................................18
  14/5(d) ..............................................................................................................4
  14/5(e) ..............................................................................................................4
  14/10 ............................................................................................................4, 16
  14/15 ...............................................................................................................19
  14/15(a) ...........................................................................................................19
  14/15(b) ..................................................................................................... *passim*
  14/15(c) ..................................................................................................... *passim*
  14/15(d) ...........................................................................................................19
  14/15(e) ...........................................................................................................19
  14/20(2)..............................................................................................................4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seatte, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

RCW
    19.375.010(1) ............................................................................................12, 13
    19.375.010(4) ............................................................................................12, 13
    19.375.010(5) ....................................................................................................13
    19.375.020 .........................................................................................................13
    19.375.020(1) ....................................................................................................12
    Chapter 49.52 .....................................................................................................23

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. *passim*

**Constitutional Provisions**

U.S. Constitution, Article I, section 8 ......................................................................9

**Other Authorities**

Ira Kemelmacher-Shlizerman et al., *The MegaFace Benchmark: 1 Million Faces
    for Recognition at Scale*, UNIVERSITY OF WASHINGTON (2015) ...................................15

New York State, *Department of State, Division of Corporations, State Records &
    UCC, Search The Corporation and Business Entity Database Results for
    International Business Machines Corporation*,
    https://www.dos.ny.gov/corps/bus_entity_search.html (last accessed Sept. 10,
    2020) ...................................................................................................................5

Oxford English Dictionary (Mar. 2006), *available at*
    https://www.oed.com/view/Entry/142818?rskey=8jt7S7&result=1&isAdvance
    d=false#eid .......................................................................................................18

Sen. Bill 2400,
    § 10 (Feb. 14, 2008) .........................................................................................16
    § 10 (Apr. 11, 2008) .........................................................................................17
    § 10 (May 28, 2008) .........................................................................................17

State of Delaware, *Department of State: Division of Corporations, Business
    Search Results for Oath Inc.*,
    https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (last
    accessed Sept. 10, 2020) ....................................................................................5

Webster's Dictionary 373 (2008 ed.) ......................................................................18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Illinois residents Steven Vance and Tim Janecyk allege that Amazon[1] is liable for violating the Illinois Biometric Information Privacy Act ("BIPA") by downloading an IBM-created dataset consisting of one million facial images, known as the Diversity in Faces Dataset (the "DiF Dataset"), which was created in 2019 "for the purpose of improving the ability of facial recognition systems to fairly and accurately identify all individuals." Dkt. 1, Compl. ¶ 42. Plaintiffs seek to hold Amazon liable for penalties under BIPA, even though they allege that *IBM*—not Amazon—included their images and biometric information in the DiF Dataset.

Plaintiffs allege that they voluntarily uploaded their photographs many years ago to Flickr, a photo-sharing website. They further allege that Flickr then made their images publicly available in a collection of 100 million photographs, from which IBM culled one million images to create the DiF Dataset. Plaintiffs do *not* allege that Amazon (i) interacted with Plaintiffs or any other Flickr users who were Illinois residents, (ii) conducted any activity relevant to this lawsuit in Illinois, (iii) ever linked Plaintiffs' identities with their individual biometric information, or (iv) ever engaged in any transactions to profit from Plaintiffs' data. Nevertheless, Plaintiffs contend that Amazon's out-of-state conduct was regulated by BIPA and that Amazon violated BIPA by "collecting and obtaining individuals' biometric identifiers and information … without providing the requisite written information and without obtaining the requisite written releases." Dkt. 1, Compl. ¶ 100. Plaintiffs seek to represent a class of any other Illinois residents whose images appear in the DiF Dataset.

---

[1] Plaintiffs Vance and Janecyk, represented by the same counsel, are pursuing a substantially identical putative class action against Microsoft, claiming BIPA violations based on allegations that, like Amazon, Microsoft downloaded the Diversity in Faces Dataset from IBM. *See Vance et al. v. Microsoft Corp*., W.D. Wash. No. 2:20-cv-01082-JCC-MAT. Amazon understands Microsoft is likewise filing a motion to dismiss the claims against it, asserting the same dismissal arguments Amazon asserts in this Motion.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    Plaintiffs fail to state a viable claim.  The Court should dismiss Plaintiffs' four-count

2    Complaint, under Federal Rule of Civil Procedure 12(b)(6), with prejudice for the following

3    reasons:

4    *First*, the BIPA claims (Counts I and II) fail because Illinois statutes do not have

5    extraterritorial effect unless a clear intent to the contrary appears in the statute.  Because

6    BIPA conveys no such intent for extraterritorial application, the statute could regulate

7    Amazon only if its BIPA-related conduct occurred primarily and substantially in Illinois.  But

8    Plaintiffs fail to allege that Amazon engaged in ***any*** conduct in Illinois giving rise to BIPA

9    liability.  Plaintiffs allege only that the DiF Dataset, which Amazon obtained from IBM,

10   included publicly-available online photographs of Vance and Janecyk, who are allegedly

11   Illinois residents.  BIPA does not reach Amazon's alleged conduct.

12   *Second*, applying BIPA to Amazon's out-of-state conduct would violate the dormant

13   Commerce Clause, which "precludes the application of a state statute" that has "the practical

14   effect of ... control[ling] conduct beyond the boundaries of the State, … whether or not the

15   commerce has effects within the State."  *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 n.1

16   (1989).  If Plaintiffs' allegations could support a BIPA claim, it would mean that a business in

17   Washington could not engage in an online transaction with a business in New York without

18   subjecting itself to penalties in Illinois—even if it does nothing in Illinois relating to the

19   transaction and even if Washington law is to the contrary.  That is not the law.

20   *Third*, even if BIPA applied, Plaintiffs fail to state a claim under BIPA's plain

21   language.  Neither Section 15(b) nor Section 15(c) of BIPA applies to information derived

22   from "photographs."  Section 15(b) also does not create a cause of action for mere passive

23   possession of biometric identifiers or information by third parties.  And Plaintiffs fail to

24   plausibly plead that Amazon "profited" from Plaintiffs' biometric identifiers or information

25   and thus fail to state a Section 15(c) claim.

26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Fourth*, Plaintiffs fail to state an unjust enrichment claim (Count III) because they fail plausibly to allege that (i) Amazon was enriched by their biometric identifiers or biometric information; (ii) they suffered any expense or loss; or (iii) they lack an adequate remedy at law, because the alleged BIPA violations are the only basis for the unjust enrichment claim.

*Fifth*, Plaintiff's "injunctive relief" claim (Count IV) is merely a prayer for a form of relief, not a claim.

## AMAZON HAS CONFERRED WITH PLAINTIFFS

Pursuant to the Court's Standing Order for Civil Cases (Dkt. 2, ¶ 6), counsel for Amazon conferred with Plaintiffs' counsel regarding the subject of this Motion, and the parties were unable to agree on a resolution.  Decl. of Jaime Drozd Allen ("Allen Decl."), ¶ 2–5.  Plaintiffs contend that their BIPA claims do not violate Illinois's extraterritoriality doctrine or the dormant Commerce Clause, that BIPA applies to Amazon's alleged analysis of photos, and that Plaintiffs adequately allege claims under BIPA Sections 15(b) and 15(c) and for unjust enrichment.  *See id.* ¶ 4.  Amazon disputes Plaintiffs' positions and maintains that the Complaint should be dismissed under Rule 12(b)(6) for the reasons stated below.

## FACTUAL BACKGROUND

### A.     The Illinois Biometric Information Privacy Act.

In 2008, the Illinois General Assembly enacted BIPA to address the growing use of biometric technology "in the business and security screening sectors" in Illinois. 740 ILCS 14/5(a).  The General Assembly found that "[m]ajor national corporations ha[d] selected the City of Chicago and other locations in [Illinois] as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias."  740 ILCS 14/5(b).  The Illinois legislature also found that consumers had concerns about "the use of biometrics when such information is tied to finances" and were "deterred from partaking in biometric identifier-facilitated transactions," in part because of the "limited State law regulating the collection, use,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

safeguarding, and storage of biometrics." 740 ILCS 14/5(d), (e).  BIPA addresses these concerns by regulating the collection, possession, and storage of certain biometric identifiers and information, while expressly excluding coverage of other data.

The statute defines "biometric identifier" using a short, exclusive list of sources of personal data: "'[b]iometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.  BIPA Section 15(b) requires private entities that "collect, capture, purchase, receive through trade, or otherwise obtain a person's ... biometric identifier or biometric information" to first (1) inform the person of that collection "in writing"; (2) inform the person "in writing of the specific purpose and length of term" regarding the collection; and (3) obtain a "written release" from the person.  740 ILCS 14/15(b).  BIPA Section 15(c) further prohibits any private entity "in possession of a biometric identifier or biometric information" from "sell[ing], leas[ing], trad[ing], or otherwise profit[ing] from a person's ... biometric identifier or biometric information."  740 ILCS 14/15(c).

For negligent violations of BIPA, a plaintiff can obtain "liquidated damages of $1,000 or actual damages, whichever is greater," and for intentional or reckless violations of BIPA, a plaintiff can collect "liquidated damages of $5,000 or actual damages, whichever is greater." 740 ILCS 14/20(2).

### B.     The DiF Dataset.

Plaintiffs Steven Vance and Tim Janecyk allege that, in 2008 and 2011, respectively, they uploaded photos of themselves to the photo-sharing website Flickr.  Compl. ¶¶ 66, 75. Each alleges they performed their uploads using devices in Illinois.  *Id.*  Plaintiffs contend that, in 2014, Yahoo!—Flickr's parent company at the time—released to the public approximately 100 million photos uploaded by Flickr users (the "Flickr Dataset").  *Id.* ¶ 29. Oath Inc.—the current name of the entity formerly known as Yahoo!—is a Delaware corporation headquartered in Sunnyvale, California.  *See* State of Delaware, *Department of*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*State: Division of Corporations, Business Search Results for Oath Inc.*,

https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (last accessed Sept. 10,

2020); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir.

2006) (the Court may take judicial notice of information posted on a state government is

"readily verifiable and, therefore, the proper subject of judicial notice."); *L'Garde, Inc. v.*

*Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) (taking judicial

notice of "Business Entity Detail" search result from Secretary of State website submitted in

support of motion to dismiss).  Plaintiffs do not allege any interaction or relationship between

Flickr and Amazon.

Plaintiffs next assert that, in 2019, New York-based International Business Machines

Corporation ("IBM") created "a new dataset consisting of one million images culled from the

Flickr Dataset ... for the purpose of improving the ability of facial recognition systems to

fairly and accurately identify all individuals" (the "Diversity in Faces Dataset" or "DiF

Dataset").  Compl. ¶ 42.  Plaintiffs contend that IBM included their photos in the DiF Dataset,

and that in creating the Dataset, IBM "scanned the facial geometry of each image contained in

the dataset" and created "biometric identifiers" and "biometric information."  Compl. ¶¶ 43,

46.  According to Plaintiffs, the DiF dataset included a "comprehensive set of annotations of

intrinsic facial features that includes craniofacial distances, areas and ratios, facial symmetry

and contrast, skin color, age and gender predictions, subjective annotations, and pose and

resolution."  *Id.* ¶ 43 (citation omitted).

IBM is a New York corporation with its headquarters in New York, New York.  *See*

New York State, *Department of State, Division of Corporations, State Records & UCC,*

*Search The Corporation and Business Entity Database Results for International Business*

*Machines Corporation*, https://www.dos.ny.gov/corps/bus_entity_search.html (last accessed

Sept. 10, 2020).  Plaintiffs do not allege that IBM engaged in this conduct in Illinois or that

IBM knew the culled images included photographs of Illinois residents.  Nevertheless, they

AMAZON'S MOTION TO DISMISS- 5
(Case No. 2:20-cv-01084-RAJ)

claim that BIPA regulates the purported "biometric identifiers" and "biometric information" that IBM allegedly created from the Flickr photographs.  *See* Compl. ¶ 46.  Plaintiffs further claim that IBM made the DiF Dataset available to other companies.  *Id.* ¶ 49.

### C.   Amazon's Alleged Conduct.

Plaintiffs assert that Amazon "applied for and obtained the Diversity in Faces Dataset from IBM."  *Id.* ¶ 61.  Plaintiffs do ***not*** allege that Amazon's acquisition of the DiF Dataset had any connection whatsoever with Illinois.  For example, Plaintiffs do not claim they personally uploaded photos to Amazon servers, used Amazon software, services, or technology, or ever communicated or interacted with Amazon.  Nor do Plaintiffs allege that any of Amazon's alleged actions in purported violation of BIPA—e.g., "collecting, capturing and otherwise obtaining the[ir] biometric identifiers and information" and/or "profit[ing]" from that data, *id.* ¶¶ 65, 71–72, 79–80, 107—took place in Illinois.  Amazon's only alleged connection to Illinois is allegedly possessing IBM's DiF Dataset of publicly-available photos of approximately one million individuals, some undetermined number of which allegedly include Illinois residents.  *See id.* ¶¶ 69, 77.

## ARGUMENT

Rule 12(b)(6) requires dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To plead a viable cause of action, the allegations must transcend the "speculative," "conceivable," and "possible" and "state a claim that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 566–67, 570 (2007).  The Court must disregard "legal conclusions" and "conclusory statements" and must scrutinize factual allegations to ensure that they are more than "merely consistent with a defendant's liability."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).   Plaintiffs fail to state a claim, and this Court should dismiss the Complaint with prejudice.

AMAZON'S MOTION TO DISMISS- 6
(Case No. 2:20-cv-01084-RAJ)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    **I.      THE COURT SHOULD DISMISS PLAINTIFFS' BIPA CLAIMS.**

2         **A.      Plaintiffs Do Not Allege Any Asserted Violations Occurred "Primarily
3                   and Substantially" in Illinois, as Required to State a BIPA Claim.**

4              Under Illinois law, "a statute is without extraterritorial effect unless a clear intent in

5    this respect appears from the express provisions of the statute." *Avery v. State Farm Mut.*

6    *Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005) (citation omitted).  "[N]one of BIPA's express

7    provisions indicates that the statute was intended to have extraterritorial effect." *Monroy v.*

8    *Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017).  Because BIPA "was not

9    intended to and does not have extraterritorial application," "asserted violations of [BIPA]

10   must have taken place in Illinois." *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100, 1104

11   (N.D. Ill. 2017).  This requires an assessment "as to where the essential elements of a BIPA

12   violation take place." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019).

13   Accordingly, Amazon could be subject to BIPA only if "the majority of circumstances

14   relating to the alleged violation of the [statute]" occurred in Illinois.  *Landau v. CNA Fin.*

15   *Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008).  Put another way, Amazon could be subject to

16   BIPA only "if the circumstances relating to the claim occur[ed] primarily and substantially" in

17   Illinois.  *Avery*, 835 N.E.2d at 854; *see also Patel*, 932 F.3d at 1275–76 (applying "primarily

18   and substantially" test to BIPA claim).  Plaintiffs' claims fail this basic test.

19             For Plaintiffs' Section 15(b) claim, Plaintiffs would have to prove Amazon's alleged

20   "collection" of Plaintiffs' biometric data from IBM was without prior notice to Plaintiffs (who

21   were, of course, unknown to Amazon before the filing of this lawsuit) and without their

22   written consent.  *See* Compl. ¶ 100; 740 ILCS 14/15(b).  For Plaintiffs' Section 15(c) claim,

23   Plaintiffs would have to prove Amazon "profited" from Plaintiffs' biometric data.  *See*

24   Compl. ¶ 107; 740 ILCS 14/15(c).  Plaintiffs do not sufficiently allege Amazon engaged in

25   any of this conduct in Illinois—and nor could they in good faith.

26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Amazon's alleged possession of photographs of Illinois residents, Compl. ¶¶ 69, 77, even if true, would ***not*** show that Amazon collected biometric data or profited from that data in Illinois.  On the contrary, Plaintiffs allege that Amazon obtained the DiF Dataset online from IBM (a New York corporation) for free.  Compl. ¶¶ 51, 61–62.  Plaintiffs fail to allege that this non-commercial transaction occurred "primarily and substantially" in Illinois, nor could they.

Plaintiffs also allege that Amazon "developed, produced, marketed and otherwise used facial recognition products and technologies in connection with its business," and that "Amazon's core facial recognition product is Amazon Rekognition," which Plaintiffs describe as "a fundamental cornerstone of many of Amazon's largest consumer products and services around the world." *Id.* ¶¶ 55–56.  Plaintiffs further allege, "[o]n information and belief," that "Amazon has also profited from selling its facial recognition technology to third parties." *Id.* ¶ 56.  But Plaintiffs' conclusory allegations do not plausibly explain how these activities have any connection to the DiF Dataset.  In particular, Plaintiffs fail to allege how the DiF Dataset, released in 2019, played any role in Amazon's development of any facial-recognition products sold in Illinois, let alone that photographs ***from Illinois residents*** specifically were used in that development.

While a few courts have found it premature at the motion to dismiss stage to determine whether a plaintiff's claims would require an extraterritorial application of BIPA, those cases are distinguishable in an important respect: in each case, an Illinois plaintiff allegedly uploaded a photo ***directly*** to the ***defendant's*** systems from a computer or device located in Illinois, so the defendant's collection arguably occurred in Illinois.  *See, e.g.*, *Patel*, 932 F.3d at 1268, 1276 (Illinois-based Facebook users uploaded their photos to Facebook from Illinois); *Monroy*, 2017 WL 4099846, at *6 (plaintiff "allege[d] that [his] photo was uploaded to Shutterfly's website from a device that was physically located in Illinois and had been assigned an Illinois-based IP address"); *Rivera*, 238 F. Supp. 3d at 1101 (plaintiff's

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   "photographs were allegedly 'automatically uploaded in Illinois to [Google's] cloud-based

2   Google Photos service . . . from an Illinois-based Internet Protocol ('IP') address'") (citation

3   omitted).  Here, by contrast, Plaintiffs allege that they uploaded their photos from their

4   devices in Illinois directly to ***Flickr***; they do not allege that they uploaded ***anything*** to

5   Amazon (or even IBM).  Indeed, Plaintiffs do not allege that they ever interacted with

6   Amazon at all—in Illinois or anywhere else—or that Amazon had any interactions in Illinois

7   concerning the collection, use, or profit from the Dataset in question.

8           In short, the Complaint does not state a BIPA claim because it does not allege that any

9   facts satisfying the elements of that claim occurred "primarily and substantially" in Illinois, as

10  required to state a claim under Illinois law.  *Avery*, 835 N.E.2d at 854; *see also Neals v. PAR*

11  *Tech. Corp.*, 419 F. Supp. 3d 1088, 1091–92 (N.D. Ill. 2019) (dismissing BIPA complaint

12  with leave to amend where court was "unable to reasonably infer from the complaint that

13  [plaintiff's] fingerprint was collected in Illinois"); *Tarzian v. Kraft Heinz Foods Co.*, 2019

14  WL 5064732, at *3 (N.D. Ill. Oct. 9, 2019) (dismissing Illinoi consumer fraud claims under

15  Rule 12(b)(6) based on absence of Illinois connection).

16          **B.      Plaintiffs' BIPA Claims Violate the Dormant Commerce Clause.**

17                  **1.      Plaintiffs' Claims Impermissibly Attempt to Regulate Conduct**
18                          **Occurring Entirely Outside of Illinois's Borders.**

19          Like Illinois' extraterritoriality doctrine, the U.S. Constitution ensures a state regulates

20  only conduct it has a substantial interest in controlling.  Article I, section 8 gives Congress the

21  exclusive power to regulate commerce "among the several states."  This express grant of

22  power implicitly "limit[s] ... the authority of the States to enact legislation affecting interstate

23  commerce" and "precludes the application of a state statute" that has "the practical effect of ...

24  control[ling] conduct beyond the boundaries of the State ... whether or not the commerce has

25  effects within the State."  *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 n.1 (1989).

26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    "[T]he dormant Commerce Clause . . . has at least two emanations": (1) when a state

2    statute "discriminates against interstate commerce, or when its effect is to favor in-state

3    economic interests over out-of-state interests"; and (2) "the direct regulation emanation"—

4    i.e., "when a state law directly affects transactions that take place across state lines or entirely

5    outside of the state's borders." *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 614–15 (9th

6    Cir. 2018) (quoting *S.D. Myers, Inc. v. City & County of San Francisco*, 253 F.3d 461, 467

7    (9th Cir. 2001)).  If a state statute directly regulates conduct "entirely outside of the state's

8    borders," the statute is "struck down ... without further inquiry." *Chinatown Neighborhood*

9    *Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) (citation omitted).

10        Here, the "practical effect" of Plaintiffs' BIPA claims would be to control conduct

11   entirely beyond Illinois boundaries, given that Plaintiffs do not allege that Amazon engaged in

12   ***any*** relevant conduct in Illinois.  Plaintiffs' claims therefore violate the "direct regulation"

13   emanation of the dormant Commerce Clause by impermissibly attempting to regulate

14   Amazon's conduct occurring entirely outside of Illinois.  *See, e.g.*, *Daniels Sharpsmart, Inc.*,

15   889 F.3d at 614–15  (California Medical Waste Management Act likely violated dormant

16   Commerce Clause by "attempt[ing] to reach beyond the borders of California and control

17   transactions that occur wholly outside of the State after ... medical waste ... has been removed

18   from the State"); *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1322 (9th Cir. 2015)

19   ("easily conclud[ing] that" use of California statute to regulate terms of art sales outside

20   California simply because seller resided in California violated dormant Commerce Clause).

21        *Christies* is instructive.  *Christies* involved California's Resale Royalty Act, which

22   required a seller of fine art to pay the artist a 5% royalty "if the seller resides in California or

23   the sale takes place in California." *Id.* (citation omitted).  Various artists sued auction houses

24   and an online retailer for violating the Royalty Act by failing to pay the required royalties on

25   fine art sales, alleging that "some sales took place in California and that other sales took place

26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

outside California but on behalf of a seller who is a resident of California." *Id.*  The Ninth

Circuit affirmed the district court's Rule 12(b)(6) dismissal of the plaintiffs' claims:

> [The] Royalty Act requires the payment of royalties to the artist after a sale of
> fine art whenever "the seller resides in California *or* the sale takes place in
> California."  Defendants challenge the first clause because it regulates sales
> that take place outside California. ***Those sales have no necessary connection
> with the state other than the residency of the seller****.  For example, if a
> California resident has a part-time apartment in New York, buys a sculpture in
> New York from a North Dakota artist to furnish her apartment, and later sells
> the sculpture to a friend in New York, the Act requires the payment of a
> royalty to the North Dakota artist – even if the sculpture, the artist, and the
> buyer never traveled to, or had any connection with, California. ***We easily
> conclude that the royalty requirement, as applied to out-of-state sales by
> California residents, violates the dormant Commerce Clause****. . . .

*Id.* at 1323–24 (emphasis added) (internal citations omitted).

Plaintiffs' BIPA claims present analogous circumstances: like the California-based art

sellers in *Christies*, Plaintiffs' Illinois residency does not allow them to use BIPA to regulate

the transmission of data between two non-Illinois entities (i.e., IBM and Amazon) simply

because some of the data purportedly relates to Illinois residents.

The courts that have found dormant Commerce Clause challenges premature at the

pleading stage have done so based on very different allegations.  In finding Shutterfly's

dormant Commerce Clause argument premature at the pleading stage, for example, the

*Monroe* court emphasized that plaintiff's "suit, as well as his proposed class, is confined to

individuals whose biometric data was obtained from photographs ***uploaded to Shutterfly in

Illinois***."  2017 WL 4099846, at *7 (emphasis added).  As a result the court held that,

"[a]pplying BIPA in this case would not entail any regulation of Shutterfly's gathering and

storage of biometric data obtained outside of Illinois."  *Id*.  By contrast, based on the

allegations in the Complaint, "applying BIPA in this case ***would*** [] entail [] regulation of

[Amazon's] gathering and storage of biometric data obtained outside of Illinois."  *See id*.

(emphasis added).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

### 2.     Plaintiffs' BIPA Claims Impermissibly Displace the Legislation and Policy Decisions Made by States Other than Illinois.

3

4      The dormant Commerce Clause also prevents "inconsistent legislation arising from the

5  projection of one state regulatory regime into the jurisdiction of another State." *Healy*, 491

6  U.S. at 326–27 n.1.  This has particular application where, as here, extraterritorial application

7  of Illinois law would ***displace*** the inconsistent policies of the majority of states, including

8  Washington, where Amazon is incorporated and has its principal place of business.

9      Washington's Biometric Privacy Law applies only to the use and collection of

10 biometric information for "commercial purposes."  RCW 19.375.020(1).  Plaintiffs do not

11 allege that Amazon violated the Washington law.  They do not allege that Amazon used their

12 biometrics for a "[c]ommercial purpose"—i.e., "in furtherance of the sale or disclosure to a

13 third party of a biometric identifier for the purpose of marketing of goods or services when

14 such goods or services are unrelated to the initial transaction in which a person first gains

15 possession of an individual's biometric identifier."  RCW 19.375.010(4).  Moreover,

16 Washington's law defines "[b]iometric identifier" as "data generated by automatic

17 measurements of an individual's biological characteristics … used to identify a specific

18 individual," but specifically excludes from the definition "a ***physical or digital photograph …***

19 ***or data generated therefrom.***"  RCW 19.375.010(1) (emphasis added).  In other words,

20 Washington's law specifically ***excludes*** from its scope the facial-recognition technology at

21 issue in the Complaint.  *See* Compl. ¶¶ 43–46 (alleging that "biometric identifiers and

22 information" in IBM's DiF Dataset were obtained from photos).

23     Washington's and Illinois's statutes thus have a very different reach, making them

24 directly inconsistent.  Illinois regulates any businesses that "collect, capture, purchase, receive

25 through trade, or otherwise obtain a person's ... biometric identifier or biometric information,"

26 without regard to the purpose of the collection.  740 ILCS 14/15(b).  In contrast, Washington

requires notice and consent only for the process of biometric information "enrollment"—

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    which Plaintiffs do not allege Amazon has done—involving "captur[ing] a biometric

2    identifier of an individual, convert[ing] it into a reference template that cannot be

3    reconstructed into the original output image, and stor[ing] it in a database that matches the

4    biometric identifier to a specific individual." RCW 19.375.020; RCW 19.375.010(5).

5    Moreover, Washington law regulates the storage of biometric data only for a narrowly defined

6    type of "commercial purpose," i.e., "in furtherance of the sale or disclosure to a third party of

7    a biometric identifier for the purpose of marketing of goods or services." RCW

8    19.375.010(4). As a result, the Washington law does not reach Amazon's conduct, as

9    Plaintiffs do not allege any effort by Amazon to sell or disclose biometric identifiers for

10   marketing purposes. Further, were the Court to interpret BIPA as applying to information

11   obtained from photos (which it should not, for the reasons explained below), the Illinois law

12   would again conflict with Washington law, given Washington's explicit decision *not* to

13   regulate "data generated" from "a physical or digital photograph." RCW 19.375.010(1).

14         Allowing Plaintiffs' BIPA claims to proceed despite these differences between the

15   Washington Biometric Privacy Law and BIPA would effectively allow Illinois to make policy

16   and legislative decisions for Washington, when Washington struck a different balance

17   regarding biometric privacy. Plaintiffs might argue that the laws do not "conflict" because a

18   company could simultaneously comply with both statutes. But it could only do so by

19   complying with the stricter statute (BIPA), a result that would effectively "forc[e]

20   [Washington] to alter [its] regulations to conform with the conflicting legislation." *Nat'l*

21   *Solid Wastes Mgmt. Ass'n v. Meyer*, 63 F.3d 652, 660 n.9 (7th Cir. 1995).

22         The dormant Commerce Clause is not violated only where it is logically impossible to

23   comply with the laws of different states. In *Miller*, for example, Nevada's statute "require[d]

24   any national collegiate athletic association to provide a Nevada institution, employee, student-

25   athlete, or booster who is accused of a rules infraction" with "procedural due process

26   protections," many of which were "not included in the NCAA enforcement program." *Miller*,

AMAZON'S MOTION TO DISMISS- 13
(Case No. 2:20-cv-01084-RAJ)

10 F.3d at 637.  The Nevada statute did not literally "conflict" with NCAA rules or the laws of other states; it was simply stricter in that it required additional protections.  The court nonetheless held that the statute violated the dormant Commerce Clause, and explained what is meant by states having "inconsistent obligations":

> [S]uppose that state X required proof of an infraction beyond a reasonable doubt, while state Y only required clear and convincing evidence, and state Z required infractions to be proven by a preponderance of the evidence.  Given that the NCAA must have uniform enforcement procedures in order to accomplish its fundamental goals, its operation would be disrupted because it could not possibly comply with all three statutes.  ***Nor would it do to say that it need only comply with the most stringent burden of persuasion (beyond a reasonable doubt), for a state with a less stringent standard might well consider its standard a maximum as well as a minimum***.  The serious risk of inconsistent obligations wrought by the extraterritorial effect of the Statute demonstrates why it constitutes a per se violation of the Commerce Clause.

*Id.* at 639–40 (emphasis added).

Applied here, BIPA and the Washington Biometric Privacy Law are similarly inconsistent because the "state with a less stringent" biometric privacy law (Washington) "might well consider its standard a maximum as well as a minimum."  For instance, perhaps not wanting to hamper research and development in a state known for technological innovation, the Washington legislature may have consciously narrowed the scope of its law so companies do not cease technological development for fear of liability.

The dormant Commerce Clause protects businesses engaged in interstate commerce from precisely this kind of inconsistency between state statutes, which can "easily subject the [defendant] to conflicting requirements."  *See, e.g.*, *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993) (holding Nevada statute establishing "procedural rules for NCAA enforcement proceedings" violated dormant Commerce Clause because other state "statutes could easily subject the NCAA to conflicting requirements").  This principle is particularly important in the Internet context.  "[C]ourts have long recognized that certain types of commerce demand consistent treatment," and "[t]he Internet represents one of those areas": "[r]egulation by any single state can only result in chaos, because at least some states

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   will likely enact laws subjecting Internet users to conflicting obligations." *Am. Libraries*

2   *Ass'n v. Pataki*, 969 F. Supp. 160, 181 (S.D.N.Y. 1997); *see also Am. Booksellers Found. v.*

3   *Dean*, 342 F.3d 96, 104 (2d Cir. 2003) ("the internet will soon be seen as falling within the

4   class of subjects that are protected from State regulation" under dormant Commerce Clause);

5   *ACLU v. Johnson*, 194 F.3d 1149, 1162 (10th Cir. 1999).  At the very least, the "massive

6   liability brought on by conflicting applicable law could chill … the rapidly expanding field of

7   Internet commerce." *Archdiocese of St. Louis v. Internet Entm't Grp., Inc.*, 1999 WL 66022,

8   at *3 (E.D. Mo. Feb. 12, 1999).  At worst, these "inconsistent regulatory schemes could

9   paralyze the development of the Internet altogether." *Pataki*, 969 F. Supp. at 181.

10          Applying BIPA to regulate a transaction through which Amazon, a Washington

11   company, allegedly downloaded data from IBM, a New York-based company, would clearly

12   burden interstate commerce and violate the dormant Commerce Clause.  *See Backpage.com,*

13   *LLC v. McKenna*, 881 F. Supp. 2d 1262, 1285–86 (W.D. Wash. 2012) (Washington statute

14   likely violated dormant Commerce Clause because: (1) it would regulate "advertisement[s] …

15   occurring entirely outside of the state"; (2) the statute's proposed "screening process would

16   constitute a significant and costly change to … corporations that have little to no connection

17   with the State of Washington" and a "burden [that] would be exponentially exacerbated if

18   every state were permitted to legislate its own requirements"; and (3) "the Internet is likely a

19   unique aspect of commerce that demands national treatment").  Amazon's download of the

20   DiF Dataset, which IBM created "for the purpose of improving the ability of facial

21   recognition systems to fairly and accurately identify all individuals," Compl. ¶ 42, does not

22   violate Washington law.  To apply BIPA to govern transactions of this nature would adversely

23   affect businesses and universities across the country, who could be forced to stop any research

24   into facial recognition using any dataset that might contain a small percentage of images of

25   Illinois residents.  *See, e.g.*, Ira Kemelmacher-Shlizerman et al., *The MegaFace Benchmark: 1*

26   *Million Faces for Recognition at Scale*, UNIVERSITY OF WASHINGTON (2015),

AMAZON'S MOTION TO DISMISS- 15
(Case No. 2:20-cv-01084-RAJ)

1  http://megaface.cs.washington.edu/KemelmacherMegaFaceCVPR16.pdf, at § 3 (explaining

2  that University of Washington's "MegaFace" facial-recognition research project made use of

3  "Yahoo's 100M Flickr set"). The dormant Commerce Clause prevents a single state from

4  imposing this kind of burden on interstate commerce.

5      **C.      Plaintiffs Fail to State a Claim Under BIPA Sections 15(b) Or 15(c).**

6          **1.      BIPA Does Not Apply to the Use of Photographs.**

7      Plaintiffs fail to state a claim under either BIPA Section 15(b) or 15(c) because, under

8  the statute's plain language, BIPA does not apply to photographs or identifiers derived from

9  photographs. In enacting BIPA, the Illinois legislature created two categories of covered

10  biometric data: (1) original sources of information about a person ("biometric identifiers"—

11  defined as a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry");

12  and (2) data extracted or derived from those sources ("biometric information"—defined as

13  "information … based on an individual's biometric identifier"). 740 ILCS 14/10. The statute

14  specifically **_excludes_** photographs from the definition of "biometric identifier," and because

15  "biometric information" includes **_only_** information based on a "biometric identifier,"

16  "information derived from" photographs necessarily cannot be "biometric information." *Id.*

17      In short, the Illinois legislature went out of its way to exclude both photographs and

18  information derived from photographs from BIPA's scope. The alleged "comprehensive set

19  of annotations of intrinsic facial features" IBM allegedly obtained from Plaintiffs' Flickr

20  photos and sent to Amazon, Compl. ¶¶ 43, 61, are therefore expressly excluded from the

21  statutory definitions of "biometric identifier" and "biometric information."

22      The legislative history confirms BIPA's limited purpose. As BIPA moved toward

23  passage, the definitions of "biometric identifier" and "biometric information" were sharply

24  narrowed. The first Senate version of BIPA defined "biometric identifier" broadly:

25  "Examples of biometric identifiers **_include, but are not limited to[,]_** iris or retinal scans,

26  fingerprints, voiceprints, and **_records_** of hand or facial geometry." Sen. Bill 2400, § 10 (Feb.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

14, 2008) (emphases added) (attached as **Exhibit A**).  And although the definition of

"biometric identifier" always excluded "photographs," the original definition of "biometric

information" did ***not*** exclude information derived from photographs.  *Id.*  The next proposal

was even broader: "biometric identifier" included "records or scans of hand geometry, facial

geometry, or ***facial recognition***."  Sen. Am. to Sen. Bill 2400, § 10 (Apr. 11, 2008) (emphasis

added) (attached as **Exhibit B**).  But that proposal was rejected, and the House offered a

substantially narrower version: it (a) changed the definition of "biometric identifiers" from an

open-ended set of "[e]xamples" to a narrow list of enumerated sources; (b) removed the broad

term "records" of hand or face geometry; and (c) excluded from the definition of "biometric

information" all "information derived from items or procedures excluded under the definition

of biometric identifiers."  House Am. to Sen. Bill 2400, § 10 (May 28, 2008) (attached as

**Exhibit C**).  The legislature enacted this narrower version of BIPA.  Consistent with its

findings, the legislature expressly declined to include a "record" of facial geometry in the

definition of biometric identifier, to regulate all forms of "facial recognition," or to allow

information derived from photographs to slip into the definition of "biometric information."

This reflects a clear intent to regulate only a narrow set of technologies and to exclude a host

of others, including all forms of facial recognition derived from photographs.

     Although some courts have denied motions to dismiss BIPA complaints based on the

application of facial-recognition technology to photos, those non-binding cases were wrongly

decided, and this Court should decline to follow them.  For example, the court in *In re*

*Facebook Biometric Information Privacy Litigation*, 185 F. Supp. 3d 1155, 1171 (N.D. Cal.

2016), concluded that "'[p]hotographs' is better understood to mean paper prints of

photographs, not digitized images stored as a computer file and uploaded to the Internet."  But

this reading cannot be reconciled with the commonly understood meaning of "photograph"

when the statute was passed in 2008.  By 2006, even the Oxford English Dictionary defined

"photograph" as "[a] picture made using a camera in which an image is focused on to

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

sensitive material and then made visible and permanent by chemical treatment; (later also) ***a***

***picture made by focusing an image and then storing it digitally***."  Oxford English Dictionary

(Mar. 2006), *available at*

https://www.oed.com/view/Entry/142818?rskey=8jt7S7&result=1&isAdvanced=false#eid

(emphasis added); *see also* Webster's Dictionary 373 (2008 ed.) ("photography" means "the

art or process of producing images on a sensitive surface (as film or a CCD chip [a form of

technology commonly used in digital imaging] by the action of light"), attached as **Exhibit D**.

A statutory term should be interpreted "consistent with standard definitions … found

in dictionaries, which [courts] may consult when attempting to ascertain the plain and

ordinary meaning."  *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1205 (Ill. 2019).

By interpreting "[p]hotographs" to mean only "paper prints of photographs, not digitized

images," 185 F. Supp. 3d at 1171, *Facebook* ignored the "plain and ordinary meaning" of

"photographs."  The reasoning in *Monroy* and *Rivera* is similarly unsound, as those cases did

not properly account for BIPA Section 5, which makes clear that the statute is intended to

regulate "biometric identifier-facilitated ***transactions***," such as those that occur "at grocery

stores, gas stations, and school cafeterias," which are all intrinsically ***in-person*** activities.  740

ILCS 14/5(b)–(e) (emphases added).  Indeed, the statute gives several examples of the

activities it regulates, and ***all*** involve in-person activities in which biometric information

might be captured.  *See id.*

> **2.  Plaintiffs Cannot State a Section 15(b) Claim Because they Fail to Adequately Allege that Amazon "Collected" or "Otherwise Obtained" Their Biometrics.**

BIPA Section 15(b) requires private entities, before they can collect an individual's

biometric information, to: (1) inform the individual "in writing that a biometric identifier or

biometric information is being collected"; (2) inform the individual "in writing of the specific

purpose and length of term for which a biometric identifier or biometric information is being

collected"; and (3) receive "a written release executed by the subject."  740 ILCS 14/15(b).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Unlike BIPA Sections 15(a), (c), (d), and (e)—which use the passive term "in possession"—only **actions** trigger Section 15(b), i.e., the private entity must "collect, capture, purchase, receive through trade," or "obtain" biometric information.  740 ILCS 14/15.  Section 15(b) does not impose any requirements on entities that merely "possess[]" biometric information, but rather only on entities who actively "*collect*" biometric information.  Had the legislature meant to bring all entities who merely "possess" biometrics within Section 15(b)'s purview, it could have explicitly done so, as it did in Sections 15(a), (c), (d), and (e).  *See, e.g.*, *Dana Tank Container, Inc. v. Human Rights Comm'n*, 687 N.E.2d 102, 104 (Ill. App. Ct. 1997) ("Where the legislature uses certain words in one instance and different words in another, it intended different results."); *accord, In re D.W.*, 827 N.E.2d 466, 479 (Ill. 2005).

Because of this textual difference, Section 15(b) does not apply to the conduct alleged here, where Plaintiffs do not allege that Amazon collected or obtained biometric data directly from any individual, let alone these Plaintiffs.  *See, e.g.*, *Cameron v. Polar Tech Indus., Inc. & ADP, LLC*, No. 2019-CH-000013, Tr. at 29–36 (DeKalb Cty. Ill. Cir. Ct. Aug. 23, 2019) (dismissing Section 15(b) claim against third-party timekeeping vendor) (attached as **Exhibit E**); *Bernal v. ADP, LLC*, No. 2017-CH-12364, Order at 2–3 (Cook Cty. Ill. Cir. Ct. Aug. 23, 2019) (dismissing Section 15(a), (b), (c), and (d) claims against ADP and noting that Section 15(b)'s "requirement that the private entity whose actions the subsection is meant to regulate must receive a 'written release' … does suggest that the legislature did not intend for the subsection to apply to a third party entity") (attached as **Exhibit F**); *see also Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020) ("[F]or Section 15(b)'s requirements to apply, an entity must, at a minimum, take an active step to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data.") (citation omitted); *Aisha Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing Section 15(b) claims against third-party timekeeping vendor and noting that "there is a difference between *possessing* and *collecting* biometric information").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1          It would yield absurd results to construe Section 15(b) as imposing individual notice

2   and release obligations on third parties like Amazon, who do not collect **any** individual's

3   biometric information but simply download a large dataset of anonymized images that, only

4   incidentally, **might** include some images of Illinois residents.  Plaintiffs' proposed solution

5   only compounds the problem.  They allege that Amazon should have identified Plaintiffs'

6   images by clicking the one million "links Defendant Amazon received from IBM,"

7   ascertained that each of Plaintiff's photographs in the DiF Dataset "originated from, and was

8   affiliated with, his Flickr account," learned of Plaintiff's Illinois residency by scrutinizing the

9   account, and then contacted each Plaintiff to seek an individual release.  Compl. ¶¶ 68–72

10  (Vance), 76–80 (Janecyk).  Leaving aside the absurdity and impracticality of this suggestion,

11  it would not even satisfy Section 15(b) as Plaintiffs read it, since the statute forbids an entity's

12  receipt of biometric information unless it "*first*" provides notice and secures a release,

13  something the Complaint concedes Amazon could not have done until **after** it had the DiF

14  Dataset in its possession for a sufficient length of time to scour one million Flickr accounts,

15  locate Plaintiffs, identify them as Illinois residents, and secure a release.

16          In short, under Plaintiffs' reading of the statute, no entity could safely download **any**

17  large dataset that might contain "biometric information," no matter how anonymized the

18  images or laudable its purposes, because the of the entity would face BIPA liability if the

19  dataset happened to contain images of Illinois residents, which the entity could ascertain only

20  after it was too late to avoid liability.  "[T]o read BIPA as requiring that a third party ...,

21  without any direct relationship with [plaintiffs], obtain written releases from said [plaintiffs]

22  would be unquestionably not only inconvenient but arguably absurd."  *Bernal*, No. 2017-CH-

23  12364, Ex. F at 2–3.  The Court should dismiss Plaintiffs' BIPA Section 15(b) claim because

24  Plaintiffs do not allege Amazon actively collected or obtained their biometrics.

25

26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

### 3.    Plaintiffs Cannot Plead a Section 15(c) Claim because they Fail to Plausibly Allege that Amazon "Profited" from Their Biometrics.

3         Plaintiffs' BIPA Section 15(c) claim—based on Amazon allegedly "profiting" from

4    Plaintiffs' biometrics by using the DiF Database to improve its facial-recognition technology,

5    *see* Compl. ¶ 65—turns on a mischaracterization of "profit" as used in Section 15(c).  That

6    section provides that an entity may not "sell, lease, trade, or otherwise profit from a person's

7    ... biometric identifier or biometric information."  The four verbs—"sell, lease, trade, or

8    otherwise profit"—all contemplate the direct provision of biometric data in exchange for

9    money.  740 ILCS 14/15(c).  "[W]hen a statutory clause specifically describes several classes

10   of ... things and then includes 'other ... things,' the word 'other' is interpreted to mean 'other

11   such like.'"  *Pooh-Bah Enter., Inc. v. Cnty. of Cook,* 905 N.E.2d 781, 799 (Ill. 2009).  Thus,

12   like "sell," "lease," and "trade," Section 15(c)'s use of "otherwise profit" contemplates an

13   entity receiving a pecuniary benefit in exchange for a person's biometric data—not the

14   indirect "profit" gained by using a large dataset of information derived from anonymous facial

15   imagery "to improve the fairness and accuracy of ... facial recognition."  Compl. ¶ 62.

16   Moreover, Plaintiffs have not alleged, and cannot allege, that any of their images in particular

17   were of any value to Amazon in improving its facial recognition technology, let alone that any

18   improvements derived from their images led to profits.

19   ## II.    THE COURT SHOULD DISMISS PLAINTIFFS' UNJUST ENRICHMENT CLAIM.

20

21        Plaintiffs must plead three elements to allege unjust enrichment under Washington

22   law: "(1) that [Amazon] received a benefit, (2) at [Plaintiffs'] expense, and (3) the

23   circumstances make it unjust for [Amazon] to retain the benefit without payment."

24   *Cousineau v. Microsoft Corp*., 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012) (Coughenour,

25   J.) (citing *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008)).  Illinois law is no different.

26   S*ee Cleary v. Philip Morris Inc*., 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    *Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145 (Ill. 1989)) ("In

2    Illinois, '[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must

3    allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that

4    defendant's retention of the benefit violates the fundamental principles of justice, equity, and

5    good conscience.'").  "In the absence of a conflict [between Illinois and Washington law],

6    Washington law applies," since it is the law of the forum state.  *Kelley v. Microsoft Corp.*, 251

7    F.R.D. 544, 550 (W.D. Wash. 2008).

8              Plaintiffs' unjust enrichment claim should be dismissed for at least three reasons:

9              *First*, as explained above, the conduct at issue does not violate any applicable law, and

10   Plaintiffs have not alleged anything independent of BIPA that would make Amazon's alleged

11   conduct "inequitable."  In fact, nothing in the Complaint suggests Plaintiffs' Flickr photos

12   were privately posted; to the contrary, Plaintiffs suggest their images were publicly available

13   to anyone.  *See* Compl. ¶¶ 70, 78.

14             *Second*, although Plaintiffs allege the DiF Dataset, consisting of a million images,

15   indirectly "enriched" Amazon by playing some undefined role in "improv[ing] its facial

16   recognition products," *id.* ¶ 65, they do not allege this purported enrichment caused them to

17   suffer a corresponding economic "expense" or "detriment."  This Court has rejected the

18   notion that unjust enrichment can be based on alleged misuse of personal or private data,

19   because unjust enrichment does not apply "outside the context of an 'expense' stemming from

20   some tangible economic loss to a plaintiff."  *Cousineau*, 992 F. Supp. 2d at 1129–30 (granting

21   motion to dismiss unjust enrichment claim that defendant used location data "to improve its

22   systems and develop its mobile marketing campaign"); *see also Mount v. PulsePoint, Inc.*,

23   684 Fed. App'x 32, 36 (2d Cir. 2017), *as amended* (May 3, 2017) (plaintiffs failed to plead

24   unjust enrichment in light of "plaintiffs' failure to allege specific loss or deprivation of

25   opportunity to profit from [personal] information"); *Welborn v. Internal Revenue Serv.*, 218 F.

26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Supp. 3d 64, 78 (D.D.C. 2016) ("Courts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value.").

*Third*, unjust enrichment provides an equitable remedy, available only when a plaintiff lacks an adequate remedy at law.  As a result, when plaintiffs have a statutory remedy available, "they are not entitled to pursue a remedy in equity" for unjust enrichment.  *Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 139 Wn.2d 824, 838–39, 991 P.2d 1126 (2000) (employees who "had a cause of action under chapter 49.52 RCW" could not pursue equitable claim for restitution or unjust enrichment).  Here, Plaintiffs claim that common law principles make it unfair or inequitable for an entity "to improve the fairness and accuracy of its facial recognition products and technologies" by using biometric markers derived from a large dataset of photographs.  Compl. ¶ 62.  Plaintiffs unjust enrichment claim therefore turns on their allegation of a BIPA violation.  In these circumstances, Plaintiffs must pursue their remedies at law, under BIPA, or not at all.

## III.   PLAINTIFFS HAVE NO SEPARATE INJUNCTIVE RELIEF CLAIM.

Plaintiffs' purported separate cause of action for injunctive relief fails because "[i]njunctive relief is a remedy, not a cause of action." *Edifecs Inc., v. TIBCO Software Inc.*, 2011 WL 1045645, at *3 (W.D. Wash. Mar. 23, 2011).  The Court should also dismiss the request for injunctive relief because Plaintiffs fail to plead viable causes of action in Counts I through III and therefore have no valid claim to which they could tie the requested remedy of injunctive relief.  *See, e.g.*, *Edwards v. JPMorgan Chase Bank, N.A.*, 2011 WL 3516155, at *3–4 (W.D. Wash. Aug. 11, 2011) (dismissing injunctive relief claim and noting plaintiffs "have no right to injunctive relief absence a viable cause of action against [defendant]").

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1     DATED this 14th day of September, 2020.

2

3                             DAVIS WRIGHT TREMAINE LLP
                                Attorneys for Defendant Amazon.com, Inc.

4

5                         By */s/ Jaime Drozd Allen*
                               Jaime Drozd Allen, WSBA # 35742

6                               David Maas, WSBA # 50694
                               920 Fifth Avenue, Suite 3300

7                               Seattle, WA  98104-1610
                               Telephone: (206) 757-8039

8                               Fax: (206) 757-7039
                               E-mail: JaimeAllen@dwt.com

9                                       DavidMaas@dwt.com

10

11                            MORGAN LEWIS & BOCKIUS
                            Attorneys for Defendant Amazon.com, Inc.

12

13                         By */s/ Elizabeth B. Herrington*
                               Elizabeth B. Herrington (*pro hac*

14                               pending)
                               77 West Wacker Drive, Suite 500

15                               Chicago, IL 60601-5094
                               Telephone: (312) 324-1188

16                               E-mail:
                               Beth.Herrington@morganlewis.com

17

18                       By */s/ Raechel Keay Kummer*
                               Raechel Keay Kummer (*pro hac*

19                               pending)
                               1111 Pennsylvania Avenue, NW

20                               Washington, DC 20004-2541
                               Telephone: (202) 739-3000

21                               E-mail:
                               Raechel.Kummer@morganlewis.com

22

23

24

25

26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# Exhibit A



# SB2400

## 95TH GENERAL ASSEMBLY

## State of Illinois

## 2007 and 2008

### SB2400

Introduced 2/14/2008, by Sen. Terry Link

## SYNOPSIS AS INTRODUCED:

New Act

Creates the Biometric Information Privacy Act. Provides that a public agency or private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the public agency or private entity. Provides that absent a valid warrant or subpoena, a public agency or private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines. Provides that no public agency or private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first satisfies certain conditions. Provides that these provisions do not apply to a public agency engaged in criminal investigations or prosecutions or a public agency acting pursuant to a valid warrant or subpoena. Provides that a public agency in possession of biometric identifiers or biometric information shall store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the public agency stores, transmits, and protects other confidential and sensitive information. Provides that any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court. Preempts home rule. Contains other provisions.

LRB095 19768 KBJ 46142 b

FISCAL NOTE ACT
MAY APPLY

HOME RULE NOTE
ACT MAY APPLY

A BILL FOR

SB2400                                    LRB095 19768 KBJ 46142 b

1        AN ACT concerning health.

2        **Be it enacted by the People of the State of Illinois,**

3    **represented in the General Assembly:**

4        Section 1. Short title. This Act may be cited as the
5    Biometric Information Privacy Act.

6        Section 5. Legislative findings; intent. The General
7    Assembly finds all of the following:
8        (a) The use of biometrics is growing in the business and
9    security screening sectors and appears to promise streamlined
10   financial transactions and security screenings.
11       (b) Major national corporations have selected the City of
12   Chicago and other locations in this State as pilot testing
13   sites for new applications of biometric-facilitated financial
14   transactions, including "Pay By Touch" at banks, grocery
15   stores, gas stations, and school cafeterias.
16       (c) Biometrics are unlike other unique identifiers that are
17   used to access finances or other sensitive information. For
18   example, social security numbers, when compromised, can be
19   changed. Biometrics, however, are biologically unique to the
20   individual; therefore, once compromised, the individual has no
21   recourse, is at heightened risk for identity theft, and is
22   likely to withdraw from biometric-facilitated transactions.
23       (d) An overwhelming majority of members of the public are

SB2400                    - 2 -          LRB095 19768 KBJ 46142 b

1   opposed to the use of biometrics when such information is tied

2   to personal finances and other personal information.

3       (e) Despite limited State law regulating the collection,

4   use, safeguarding, and storage of biometric information, many

5   members of the public are deterred from partaking in biometric

6   identifier-facilitated facility transactions.

7       (f) The public welfare, security, and safety will be served

8   by regulating the collection, use, safeguarding, handling,

9   storage, retention, and destruction of biometric identifiers

10  and information.


11      Section 10. Definitions. In this Act:

12      "Biometric identifier" means any indelible personal

13  physical characteristic which can be used to uniquely identify

14  an individual or pinpoint an individual at a particular place

15  at a particular time. Examples of biometric identifiers

16  include, but are not limited to iris or retinal scans,

17  fingerprints, voiceprints, and records of hand or facial

18  geometry. Biometric identifiers do not include writing

19  samples, written signature, and photographs.

20      "Biometric information" means any information, regardless

21  of how it is captured, converted, stored, or shared, based on

22  an individual's biometric identifier used to identify an

23  individual.

24      "Confidential and sensitive information" means personal

25  information that can be used to uniquely identify an individual

1    or an individual's account or property include, but are not
2    limited to a genetic marker, genetic testing information, a
3    unique identifier number to locate an account or property, an
4    account number, a PIN number, a pass code, a driver's license
5    number, or a social security number.
6        "Legally effective written release" means informed written
7    consent.
8        "Private   entity"   means   any   individual,   partnership,
9    corporation, limited liability company, association, or other
10   group, however organized.
11       "Public agency" means the State of Illinois and its various
12   subdivisions and agencies, and all units of local government,
13   school districts, and other governmental entities.

14       Section    15.    Retention;    collection;    disclosure;
15   destruction.
16       (a) A public agency or private entity in possession of
17   biometric identifiers or biometric information must develop a
18   written policy, made available to the public, establishing a
19   retention schedule and guidelines for permanently destroying
20   biometric  identifiers  and  biometric  information  when  the
21   initial purpose for collecting or obtaining such identifiers or
22   information  has  been  satisfied  or  within  3  years  of  the
23   individual's last interaction with the public agency or private
24   entity. Absent a valid warrant or subpoena issued by a court of
25   competent jurisdiction, a public agency or private entity in

SB2400                        - 4 -          LRB095 19768 KBJ 46142 b

1    possession of biometric identifiers or biometric information
2    must comply with its established retention schedule and
3    destruction guidelines.
4        (b)  No public agency or private entity may collect,
5    capture, purchase, receive through trade, or otherwise obtain a
6    person's or a customer's biometric identifier or biometric
7    information, unless it first:
8            (1) informs the subject in writing that a biometric
9        identifier or biometric information is being collected or
10       stored;
11           (2) informs the subject in writing of the specific
12       purpose and length of term for which a biometric identifier
13       or biometric information is being collected, stored, and
14       used; and
15           (3) receives a legally effective written release
16       executed by the subject of the biometric identifier or
17       biometric information or the subject's legally authorized
18       representative.
19       (c) Subsections (a) and (b) of this Section do not apply to
20   a public agency engaged in criminal investigations or
21   prosecutions. Subsections (a) and (b) of this Section do not
22   apply to a public agency acting pursuant to a valid warrant or
23   subpoena issued by a court of competent jurisdiction.
24       (d) No public agency or private entity in possession of a
25   biometric identifier or biometric information may sell, lease,
26   trade, or otherwise profit from a person's or a customer's

1    biometric identifier or biometric information.

2        (e)  Nothing in subsection (d) of this Section shall be

3    construed to prohibit or inhibit a public agency engaged in

4    criminal investigations or prosecutions from:

5            (1) sharing biometric identifiers or biometric

6        information with another public agency engaged in criminal

7        investigations or prosecutions to further such criminal

8        investigations or prosecutions;

9            (2) sharing biometric identifiers or biometric

10       information pursuant to federal law or regulation; or

11           (3) sharing biometric identifiers or biometric

12       information pursuant to a valid warrant or subpoena issued

13       by a court of competent jurisdiction.

14       (f)  No public agency, private entity, or person in

15   possession of a biometric identifier or biometric information

16   may disclose, redisclose, or otherwise disseminate a person's

17   or a customer's biometric identifier or biometric information,

18   unless:

19           (1) the subject of the biometric identifier or

20       biometric information or the subject's legally authorized

21       representative consents to the disclosure or redisclosure;

22           (2) the disclosure or redisclosure completes a

23       financial transaction requested or authorized by the

24       subject of the biometric identifier or the biometric

25       information;

26           (3) the disclosure or redisclosure is required under

SB2400                        - 6 -        LRB095 19768 KBJ 46142 b

1    federal law; and

2         (4) the disclosure is required pursuant to a valid

3    warrant or subpoena issued by a court of competent

4    jurisdiction.

5    (g) A public agency in possession of biometric identifiers

6    or biometric information shall store, transmit, and protect

7    from disclosure all biometric identifiers and biometric

8    information in a manner that is the same as or more protective

9    than the manner in which the public agency stores, transmits,

10   and protects other confidential and sensitive information.

11   (h) A private entity in possession of a biometric

12   identifier or biometric information shall:

13        (1) store, transmit, and protect from disclosure all

14        biometric identifiers and biometric information using the

15        reasonable standard of care within the private entity's

16        industry; and

17        (2) store, transmit, and protect from disclosure all

18        biometric identifiers and biometric information in a

19        manner that is the same as or more protective than the

20        manner in which the private entity stores, transmits, and

21        protects other confidential and sensitive information.

22   (i) All information and records held by a public agency

23   pertaining to biometric identifiers and biometric information

24   shall be confidential and exempt from copying and inspection

25   under the Freedom of Information Act to all except to the

26   subject of the biometric identifier or biometric information.

SB2400                          - 7 -          LRB095 19768 KBJ 46142 b

1    The   subject   of   the   biometric   identifier   or   biometric

2    information held by a public agency shall be permitted to copy

3    and inspect only their own biometric identifiers and biometric

4    information.


5        Section 20. Right of action.

6        (a) Any person aggrieved by a violation of this Act shall

7    have   a   right   of   action   in   a   State   circuit   court   or   as   a

8    supplemental   claim   in   federal   district   court   against   an

9    offending   party.   A   prevailing   party   may   recover   for   each

10   violation:

11            (1) against any public agency or private entity that

12           negligently   violates   a   provision   of   this   Act,   liquidated

13           damages of $1,000 or actual damages, whichever is greater;

14            (2) against any public agency or private entity that

15           intentionally   or   recklessly   violates   a   provision   of   this

16           Act,   liquidated   damages   of   $5,000   or   actual   damages,

17           whichever is greater;

18            (3)  reasonable  attorneys'  fees  and  costs,  including

19           expert witness fees and other litigation expenses; and

20            (4) other relief, including an injunction, as the State

21           or federal court may deem appropriate.

22       (b)  For  the  purpose  of  this  Act,  "prevailing  party"

23   includes  any  party:  (i)  who  obtains  some  of  his  or  her

24   requested  relief  through  a  judicial  judgment  in  his  or  her

25   favor;  (ii)  who  obtains  some  of  his  or  her  requested  relief

SB2400                          - 8 -        LRB095 19768 KBJ 46142 b

1    through any settlement agreement approved by the court; or

2    (iii) whose pursuit of a non-frivolous claim was a catalyst for

3    a unilateral change in position by the opposing party relative

4    to the relief sought.


5        Section 25. Home rule. The corporate authorities of a

6    municipality or other unit of local government may enact

7    ordinances, standards, rules, or regulations that protect

8    biometric identifiers and biometric information in a manner or

9    to an extent equal to or greater than the protection provided

10   in this Act. This Section is a limitation on the concurrent

11   exercise of home rule power under subsection (i) of Section 6

12   of Article VII of the Illinois Constitution.

# Exhibit B

Case 2:20-cv-01084-RAJ    Document 18    Filed 08/14/20    Page 42 of 135

**Sen. Terry Link**

# Filed: 4/11/2008

09500SB2400sam004                    LRB095 19768 RPM 49426 a

1                    AMENDMENT TO SENATE BILL 2400

2        AMENDMENT NO. _____. Amend Senate Bill 2400, AS AMENDED,
3    by replacing everything after the enacting clause with the
4    following:

5        "Section 1. Short title. This Act may be cited as the
6    Biometric Information Privacy Act.

7        Section 5. Legislative findings; intent. The General
8    Assembly finds all of the following:
9        (a) The use of biometrics is growing in the business and
10   security screening sectors and appears to promise streamlined
11   financial transactions and security screenings.
12       (b) Major national corporations have selected the City of
13   Chicago and other locations in this State as pilot testing
14   sites for new applications of biometric-facilitated financial
15   transactions, including "Pay By Touch" at banks, grocery
16   stores, gas stations, and school cafeterias.

09500SB2400sam004              -2-         LRB095 19768 RPM 49426 a

1      (c) Biometrics are unlike other unique identifiers that are
2    used to access finances or other sensitive information. For
3    example, social security numbers, when compromised, can be
4    changed. Biometrics, however, are biologically unique to the
5    individual; therefore, once compromised, the individual has no
6    recourse, is at heightened risk for identity theft, and is
7    likely to withdraw from biometric-facilitated transactions.

8      (d) An overwhelming majority of members of the public are
9    opposed to the use of biometrics when such information is tied
10   to personal finances and other personal information.

11     (e) Despite limited State law regulating the collection,
12   use, safeguarding, and storage of biometric information, many
13   members of the public are deterred from partaking in biometric
14   identifier-facilitated facility transactions.

15     (f) The public welfare, security, and safety will be served
16   by regulating the collection, use, safeguarding, handling,
17   storage, retention, and destruction of biometric identifiers
18   and information.

19     Section 10. Definitions. In this Act:
20     "Biometric identifier" means any indelible personal
21   physical characteristic which can be used to uniquely identify
22   an individual or pinpoint an individual at a particular place
23   at a particular time. Examples of biometric identifiers
24   include, but are not limited to iris or retinal scans,
25   fingerprints, voiceprints, and records or scans of hand

09500SB2400sam004              -3-         LRB095 19768 RPM 49426 a

1     geometry, facial geometry, or facial recognition. Biometric
2     identifiers  do  not  include  writing  samples,  written
3     signatures,  photographs,  tattoo  descriptions,  physical
4     descriptions,  or  human  biological  samples  used  for  valid
5     scientific testing or screening. Biometric identifiers do not
6     include donated organs, tissues, or parts as defined in the
7     Illinois Anatomical Gift Act or blood or serum stored on behalf
8     of recipients or potential recipients of living or cadaveric
9     transplants and obtained or stored by a federally-designated
10    organ procurement agency. Biometric identifiers do not include
11    biological materials regulated under the Genetic Information
12    Privacy Act. Biometric identifiers do not include information
13    captured from a patient in a health care setting or information
14    collected, used, or stored for health care treatment, payment,
15    or operations under the federal Health Insurance Portability
16    and Accountability Act of 1996. Biometric identifiers do not
17    include an X-ray, roentgen process, computed tomography, MRI,
18    PET scan, mammography, or other image or film of the human
19    anatomy used to diagnose, prognose, or treat an illness or
20    other medical condition or to further valid scientific testing
21    or screening.
22         "Biometric information" means any information, regardless
23    of how it is captured, converted, stored, or shared, based on
24    an individual's biometric identifier used to identify an
25    individual. Biometric information does not include information
26    derived from items or procedures excluded under the definition

1    of  biometric  identifiers.  Biometric  information  does  not
2    include information captured from a patient in a health care
3    setting or information collected, used, or stored for health
4    care treatment, payment, or operations under the federal Health
5    Insurance Portability and Accountability Act of 1996.
6        "Confidential  and  sensitive  information"  means  personal
7    information that can be used to uniquely identify an individual
8    or  an  individual's  account  or  property.  Examples  of
9    confidential  and  sensitive  information  include,  but  are  not
10   limited to, a genetic marker, genetic testing information, a
11   unique identifier number to locate an account or property, an
12   account number, a PIN number, a pass code, a driver's license
13   number, or a social security number.
14       "Legally effective written release" means informed written
15   consent or a release executed by an employee as a condition of
16   employment.
17       "Private  entity"  means  any  individual,  partnership,
18   corporation, limited liability company, association, or other
19   group, however organized. A private entity does not include a
20   public agency. A private entity does not include any court of
21   Illinois, a clerk of the court, or a judge or justice thereof.
22       "Public agency" means the State of Illinois and its various
23   subdivisions and agencies, and all units of local government,
24   school districts, and other governmental entities. A public
25   agency does not include any court of Illinois, a clerk of the
26   court, or a judge or justice thereof.

09500SB2400sam004             -5-         LRB095 19768 RPM 49426 a

1      Section   15.   Retention;   collection;   disclosure;
2  destruction.

3      (a) A public agency or private entity in possession of
4  biometric identifiers or biometric information must develop a
5  written policy, made available to the public, establishing a
6  retention schedule and guidelines for permanently destroying
7  biometric   identifiers   and   biometric   information  when  the
8  initial purpose for collecting or obtaining such identifiers or
9  information has been satisfied or within 3 years of the
10 individual's last interaction with the public agency or private
11 entity, whichever occurs first. Absent a valid warrant or
12 subpoena issued by a court of competent jurisdiction, a public
13 agency or private entity in possession of biometric identifiers
14 or biometric information must comply with its established
15 retention schedule and destruction guidelines.

16     (b) No public agency or private entity may collect,
17 capture, purchase, receive through trade, or otherwise obtain a
18 person's or a customer's biometric identifier or biometric
19 information, unless it first:

20        (1) informs the subject in writing that a biometric
21     identifier or biometric information is being collected or
22     stored;

23        (2) informs the subject in writing of the specific
24     purpose and length of term for which a biometric identifier
25     or biometric information is being collected, stored, and

09500SB2400sam004            -6-         LRB095 19768 RPM 49426 a

1      used; and

2          (3)  receives  a  legally  effective  written  release

3      executed  by  the  subject  of  the  biometric  identifier  or

4      biometric  information  or  the  subject's  legally  authorized

5      representative.

6      (c) Subsections (a) and (b) of this Section do not apply to

7  a public agency:

8          (1)  engaged  in  criminal  investigations,  arrests,

9      prosecutions, or law enforcement;

10         (2)  overseeing  pretrial  detention,  post-trial

11     commitment,  corrections  or  incarceration,  civil

12     commitment, probation services, or parole services;

13         (3)  serving  as  the  State  central  repository  of

14     biometrics  for  criminal  identification  and  investigation

15     purposes;

16         (4)  furnishing  biometric  identifiers  or  biometric

17     information to a State or federal repository of biometrics

18     pursuant to State or federal law or municipal ordinance;

19         (5)  receiving  biometric  identifiers  or  biometric

20     information pursuant to State or federal law or municipal

21     ordinance;

22         (6)  acting  pursuant  to  a  valid  warrant  or  subpoena

23     issued by a court of competent jurisdiction;

24         (7)  issuing  driver's  licenses,  driver's  permits,

25     identification  cards  issued  pursuant  to  the  Illinois

26     Identification Card Act, or occupational licenses; or

09500SB2400sam004               -7-        LRB095 19768 RPM 49426 a

1        (8) performing employee background checks in
2    accordance with the public agency's hiring policies or
3    statutory obligations.
4    Nothing in subsections (a) and (b) of this Section shall be
5    construed to conflict with the retention and collection
6    practices for fingerprints, other biometric identifiers, or
7    biometric information under the Criminal Identification Act,
8    the Illinois Uniform Conviction Information Act, or the federal
9    National Crime Prevention and Privacy Compact. Subsection (a)
10   of this Section does not apply to school districts; however, a
11   school district that collects biometric identifiers or
12   biometric information must adopt retention schedules and
13   destruction policies in accordance with the School Code.
14   Subsection (a) of this Section does not apply to a fingerprint
15   vendor or fingerprint vendor agency; however, a fingerprint
16   vendor or fingerprint vendor agency must adopt retention
17   schedules and destruction polices in accordance with the
18   Private Detective, Private Alarm, Private Security,
19   Fingerprint Vendor, and Locksmith Act of 2004.
20       (d) No public agency or private entity in possession of a
21   biometric identifier or biometric information may sell, lease,
22   trade, or otherwise profit from a person's or a customer's
23   biometric identifier or biometric information.
24       (e) No public agency or private entity in possession of a
25   biometric identifier or biometric information may disclose,
26   redisclose, or otherwise disseminate a person's or a customer's

09500SB2400sam004           -8-          LRB095 19768 RPM 49426 a

1    biometric identifier or biometric information unless:

2         (1) the subject of the biometric identifier or
3         biometric information or the subject's legally-authorized
4         representative consents to the disclosure or redisclosure;

5         (2) the disclosure or redisclosure completes a
6         financial transaction requested or authorized by the
7         subject of the biometric identifier or the biometric
8         information;

9         (3) the disclosure or redisclosure is required by State
10        or federal law or municipal ordinance; or

11        (4) the disclosure is required pursuant to a valid
12        warrant or subpoena issued by a court of competent
13        jurisdiction.

14   (f) Nothing in subsections (d) or (e) of this Section shall
15   be construed to prohibit or inhibit a public agency (i) engaged
16   in criminal investigations, arrests, prosecutions, or law
17   enforcement, (ii) overseeing pretrial detention, post-trial
18   commitment, corrections or incarceration, civil commitment,
19   probation services, or parole services, (iii) serving as the
20   State central repository of biometrics for criminal
21   identification and investigation purposes, (iv) furnishing
22   biometric identifiers or biometric information to a State or
23   federal repository of biometrics pursuant to State or federal
24   law, or (v) issuing driver's licenses, driver's permits, or
25   identification cards pursuant to the Illinois Identification
26   Card Act from:

09500SB2400sam004               -9-        LRB095 19768 RPM 49426 a

1          (1)  sharing  biometric  identifiers  or  biometric
2     information with another public agency engaged in criminal
3     investigations, arrests, prosecutions, or law enforcement
4     to   further   such   criminal   investigations,   arrests,
5     prosecutions, or law enforcement;
6          (2)  sharing  biometric  identifiers  or  biometric  or
7     biometric   information   with   another   public   agency
8     overseeing  pretrial  detention,  post-trial  commitment,
9     corrections or incarceration, civil commitment, probation
10    services, or parole services;
11         (3)  sharing  biometric  identifiers  or  biometric
12    information pursuant to, or required by, State or federal
13    law; or
14         (4)  sharing  biometric  identifiers  or  biometric
15    information pursuant to a valid warrant or subpoena issued
16    by a court of competent jurisdiction.
17    (g) Nothing in subsections (d) or (e) of this Section shall
18    be  construed  to  conflict  with  the  reporting  and  sharing
19    practices  for  fingerprints,  other  biometric  identifiers,  or
20    biometric  information  under  the  Criminal  Identification  Act,
21    the  Illinois  Uniform  Conviction  Information  Act,  and  the
22    federal National Crime Prevention and Privacy Compact. Nothing
23    in  subsection  (d)  of  this  Section  shall  be  construed  to
24    conflict  with  the  reporting  and  sharing  practices  of  a
25    fingerprint  vendor  or  fingerprint  vendor  agency  under  the
26    Private   Detective,   Private   Alarm,   Private   Security,

09500SB2400sam004            -10-        LRB095 19768 RPM 49426 a

1   Fingerprint Vendor, and Locksmith Act of 2004.

2       (h) Nothing in subsections (d) or (e) of this Section shall
3   be construed to prohibit or inhibit a public agency that issues
4   occupational licenses from:

5           (1)  sharing  biometric  identifiers  or  biometric
6       information  pursuant  to  or  when  required  by  State  or
7       federal law; or

8           (2)  sharing  biometric  identifiers  or  biometric
9       information pursuant to a valid warrant or subpoena issued
10      by a court of competent jurisdiction.

11      (i) Nothing in subsections (d) or (e) of this Section shall
12  be  construed  to  prohibit  a  public  agency  from  performing
13  employee  background  checks  in  accordance  with  the  public
14  agency's hiring policies or statutory obligations.

15      (j) A public agency in possession of biometric identifiers
16  or  biometric  information  shall  store,  transmit,  and  protect
17  from  disclosure  all  biometric  identifiers  and  biometric
18  information in a reasonable manner that is the same as or more
19  protective than the manner in which the public agency stores,
20  transmits,  and  protects  other  similar  confidential  and
21  sensitive  information  specific  to  that  public  agency.  The
22  storage, transmittal, and protection from disclosure standards
23  under this subsection (j) are solely the choice of the public
24  agency to adopt in accordance with this Act, other applicable
25  State or federal law, evolving advances in technology, budget
26  constraints, and comparable practices specific to that public

09500SB2400sam004               -11-        LRB095 19768 RPM 49426 a


1     agency.

2        (k)  A  private  entity  in  possession  of  a  biometric
3     identifier or biometric information shall:

4            (1) store, transmit, and protect from disclosure all
5         biometric identifiers and biometric information using the
6         reasonable standard of care within the private entity's
7         industry; and

8            (2) store, transmit, and protect from disclosure all
9         biometric  identifiers  and  biometric  information  in  a
10        manner that is the same as or more protective than the
11        manner in which the private entity stores, transmits, and
12        protects other confidential and sensitive information.

13       (l) All information and records held by a public agency
14    pertaining to biometric identifiers and biometric information
15    shall be confidential and exempt from copying and inspection
16    under the Freedom of Information Act to all except to the
17    subject of the biometric identifier or biometric information.
18    The  subject  of  the  biometric  identifier  or  biometric
19    information held by a public agency shall be permitted to copy
20    and inspect only their own biometric identifiers and biometric
21    information.


22       Section 20. Right of action. Any person aggrieved by a
23    violation of this Act shall have a right of action in a State
24    circuit court or as a supplemental claim in federal district
25    court  against  an  offending  party.  A  prevailing  party  may

09500SB2400sam004            -12-         LRB095 19768 RPM 49426 a

1    recover for each violation:

2         (1) against any public agency or private entity that

3         negligently violates a provision of this Act, liquidated

4         damages of $1,000 or actual damages, whichever is greater;

5         (2) against any public agency or private entity that

6         intentionally or recklessly violates a provision of this

7         Act, liquidated damages of $5,000 or actual damages,

8         whichever is greater;

9         (3) reasonable attorneys' fees and costs, including

10        expert witness fees and other litigation expenses; and

11        (4) other relief, including an injunction, as the State

12        or federal court may deem appropriate.


13   Section 25. Construction. Nothing in this Act shall be

14   construed to impact the admission or discovery of biometric

15   identifiers and biometric information in any action of any kind

16   in any court, or before any tribunal, board, agency, or person.

17   Nothing in this Act shall be construed to conflict with the

18   X-Ray Retention Act or the federal Health Insurance Portability

19   and Accountability Act of 1996. Subcontractors or agents of a

20   public agency must comply with this Act to the extent and

21   manner this Act applies to that public agency.


22   Section 30. Home rule. Any home rule unit of local

23   government, any non home rule municipality, or any non home

24   rule county within the unincorporated territory of the county

09500SB2400sam004              -13-        LRB095 19768 RPM 49426 a

1   may enact ordinances, standards, rules, or regulations that
2   protect biometric identifiers and biometric information in a
3   manner or to an extent equal to or greater than the protection
4   provided in this Act. This Section is a limitation on the
5   concurrent exercise of home rule power under subsection (i) of
6   Section 6 of Article VII of the Illinois Constitution.

7        Section 95. Applicability. This Act applies to private
8   entities beginning on the effective date of this Act. This Act
9   applies to public agencies beginning on January 1, 2011.

10       Section 99. Effective date. This Act takes effect upon
11  becoming law.".

# Exhibit C

**Executive Committee**

# Filed: 5/28/2008

09500SB2400ham001                          LRB095 19768 RPM 51505 a

1              AMENDMENT TO SENATE BILL 2400

2       AMENDMENT NO. _____. Amend Senate Bill 2400 by replacing
3    everything after the enacting clause with the following:

4       "Section 1. Short title. This Act may be cited as the
5    Biometric Information Privacy Act.

6       Section 5. Legislative findings; intent. The General
7    Assembly finds all of the following:
8       (a) The use of biometrics is growing in the business and
9    security screening sectors and appears to promise streamlined
10   financial transactions and security screenings.
11      (b) Major national corporations have selected the City of
12   Chicago and other locations in this State as pilot testing
13   sites for new applications of biometric-facilitated financial
14   transactions, including finger-scan technologies at grocery
15   stores, gas stations, and school cafeterias.
16      (c) Biometrics are unlike other unique identifiers that are

09500SB2400ham001              -2-          LRB095 19768 RPM 51505 a

1    used to access finances or other sensitive information. For
2    example, social security numbers, when compromised, can be
3    changed. Biometrics, however, are biologically unique to the
4    individual; therefore, once compromised, the individual has no
5    recourse, is at heightened risk for identity theft, and is
6    likely to withdraw from biometric-facilitated transactions.

7         (d) An overwhelming majority of members of the public are
8    weary of the use of biometrics when such information is tied to
9    finances and other personal information.

10        (e) Despite limited State law regulating the collection,
11   use, safeguarding, and storage of biometrics, many members of
12   the  public  are  deterred  from  partaking  in  biometric
13   identifier-facilitated transactions.

14        (f) The full ramifications of biometric technology are not
15   fully known.

16        (g) The public welfare, security, and safety will be served
17   by  regulating  the  collection,  use,  safeguarding,  handling,
18   storage, retention, and destruction of biometric identifiers
19   and information.

20        Section 10. Definitions. In this Act:
21        "Biometric  identifier"  means  a  retina  or  iris  scan,
22   fingerprint, voiceprint, or scan of hand or face geometry.
23   Biometric identifiers do not include writing samples, written
24   signatures, photographs, human biological samples used for
25   valid  scientific  testing  or  screening,  demographic  data,

09500SB2400ham001            -3-          LRB095 19768 RPM 51505 a

1    tattoo descriptions, or physical descriptions such as height,
2    weight, hair color, or eye color. Biometric identifiers do not
3    include donated organs, tissues, or parts as defined in the
4    Illinois Anatomical Gift Act or blood or serum stored on behalf
5    of recipients or potential recipients of living or cadaveric
6    transplants and obtained or stored by a federally designated
7    organ procurement agency. Biometric identifiers do not include
8    biological materials regulated under the Genetic Information
9    Privacy Act. Biometric identifiers do not include information
10   captured from a patient in a health care setting or information
11   collected, used, or stored for health care treatment, payment,
12   or operations under the federal Health Insurance Portability
13   and Accountability Act of 1996. Biometric identifiers do not
14   include an X-ray, roentgen process, computed tomography, MRI,
15   PET scan, mammography, or other image or film of the human
16   anatomy used to diagnose, prognose, or treat an illness or
17   other medical condition or to further validate scientific
18   testing or screening.
19       "Biometric information" means any information, regardless
20   of how it is captured, converted, stored, or shared, based on
21   an individual's biometric identifier used to identify an
22   individual. Biometric information does not include information
23   derived from items or procedures excluded under the definition
24   of biometric identifiers.
25       "Confidential and sensitive information" means personal
26   information that can be used to uniquely identify an individual

09500SB2400ham001            -4-          LRB095 19768 RPM 51505 a

1    or   an   individual's   account   or   property.   Examples   of

2    confidential and sensitive information include, but are not

3    limited to, a genetic marker, genetic testing information, a

4    unique identifier number to locate an account or property, an

5    account number, a PIN number, a pass code, a driver's license

6    number, or a social security number.

7       "Private   entity"   means   any   individual,   partnership,

8    corporation, limited liability company, association, or other

9    group, however organized. A private entity does not include a

10   State or local government agency. A private entity does not

11   include any court of Illinois, a clerk of the court, or a judge

12   or justice thereof.

13      "Written release" means informed written consent or, in the

14   context of employment, a release executed by an employee as a

15   condition of employment.

16      Section    15.    Retention;    collection;    disclosure;

17   destruction.

18      (a) A private entity in possession of biometric identifiers

19   or biometric information must develop a written policy, made

20   available to the public, establishing a retention schedule and

21   guidelines  for  permanently  destroying  biometric  identifiers

22   and  biometric  information  when  the  initial  purpose  for

23   collecting  or  obtaining  such  identifiers  or  information  has

24   been  satisfied  or  within  3  years  of  the  individual's  last

25   interaction  with  the  private  entity,  whichever  occurs  first.

09500SB2400ham001           -5-        LRB095 19768 RPM 51505 a

1    Absent a valid warrant or subpoena issued by a court of
2    competent jurisdiction, a private entity in possession of
3    biometric identifiers or biometric information must comply
4    with its established retention schedule and destruction
5    guidelines.

6      (b) No private entity may collect, capture, purchase,
7    receive through trade, or otherwise obtain a person's or a
8    customer's biometric identifier or biometric information,
9    unless it first:

10         (1) informs the subject or the subject's legally
11         authorized representative in writing that a biometric
12         identifier or biometric information is being collected or
13         stored;

14         (2) informs the subject or the subject's legally
15         authorized representative in writing of the specific
16         purpose and length of term for which a biometric identifier
17         or biometric information is being collected, stored, and
18         used; and

19         (3) receives a written release executed by the subject
20         of the biometric identifier or biometric information or the
21         subject's legally authorized representative.

22     (c) No private entity in possession of a biometric
23    identifier or biometric information may sell, lease, trade, or
24    otherwise profit from a person's or a customer's biometric
25    identifier or biometric information.

26     (d) No private entity in possession of a biometric

09500SB2400ham001            -6-            LRB095 19768 RPM 51505 a

1    identifier or biometric information may disclose, redisclose,
2    or otherwise disseminate a person's or a customer's biometric
3    identifier or biometric information unless:

4        (1) the subject of the biometric identifier or
5        biometric information or the subject's legally authorized
6        representative consents to the disclosure or redisclosure;

7        (2) the disclosure or redisclosure completes a
8        financial transaction requested or authorized by the
9        subject of the biometric identifier or the biometric
10       information or the subject's legally authorized
11       representative;

12       (3) the disclosure or redisclosure is required by State
13       or federal law or municipal ordinance; or

14       (4) the disclosure is required pursuant to a valid
15       warrant or subpoena issued by a court of competent
16       jurisdiction.

17    (e) A private entity in possession of a biometric
18    identifier or biometric information shall:

19       (1) store, transmit, and protect from disclosure all
20       biometric identifiers and biometric information using the
21       reasonable standard of care within the private entity's
22       industry; and

23       (2) store, transmit, and protect from disclosure all
24       biometric identifiers and biometric information in a
25       manner that is the same as or more protective than the
26       manner in which the private entity stores, transmits, and

09500SB2400ham001            -7-        LRB095 19768 RPM 51505 a

1        protects other confidential and sensitive information.

2        Section 20. Right of action. Any person aggrieved by a
3    violation of this Act shall have a right of action in a State
4    circuit court or as a supplemental claim in federal district
5    court against an offending party. A prevailing party may
6    recover for each violation:

7        (1) against a private entity that negligently violates
8        a provision of this Act, liquidated damages of $1,000 or
9        actual damages, whichever is greater;

10        (2) against a private entity that intentionally or
11        recklessly violates a provision of this Act, liquidated
12        damages of $5,000 or actual damages, whichever is greater;

13        (3) reasonable attorneys' fees and costs, including
14        expert witness fees and other litigation expenses; and

15        (4) other relief, including an injunction, as the State
16        or federal court may deem appropriate.

17        Section 25. Construction.
18        (a) Nothing in this Act shall be construed to impact the
19    admission or discovery of biometric identifiers and biometric
20    information in any action of any kind in any court, or before
21    any tribunal, board, agency, or person.

22        (b) Nothing in this Act shall be construed to conflict with
23    the X-Ray Retention Act, the federal Health Insurance
24    Portability and Accountability Act of 1996 and the rules

09500SB2400ham001            -8-        LRB095 19768 RPM 51505 a

1    promulgated under either Act.

2        (c) Nothing in this Act shall be deemed to apply in any

3    manner to a financial institution or an affiliate of a

4    financial institution that is subject to Title V of the federal

5    Gramm-Leach-Bliley Act of 1999 and the rules promulgated

6    thereunder.

7        (d) Nothing in this Act shall be construed to conflict with

8    the Private Detective, Private Alarm, Private Security,

9    Fingerprint Vendor, and Locksmith Act of 2004 and the rules

10   promulgated thereunder.


11       Section 30. Home rule. Any home rule unit of local

12   government, any non-home rule municipality, or any non-home

13   rule county within the unincorporated territory of the county

14   may enact ordinances, standards, rules, or regulations that

15   protect biometric identifiers and biometric information in a

16   manner or to an extent equal to or greater than the protection

17   provided in this Act. This Section is a limitation on the

18   concurrent exercise of home rule power under subsection (i) of

19   Section 6 of Article VII of the Illinois Constitution.


20       Section 35. Biometric Information Privacy Study Committee.

21       (a) The Department of Human Services, in conjunction with

22   Central Management Services, subject to appropriation or other

23   funds made available for this purpose, shall create the

24   Biometric Information Privacy Study Committee, hereafter

09500SB2400ham001            -9-        LRB095 19768 RPM 51505 a

1    referred to as the Committee. The Department of Human Services,
2    in conjunction with Central Management Services, shall provide
3    staff   and   administrative   support   to   the   Committee.   The
4    Committee shall examine (i) current policies, procedures, and
5    practices used by State and local governments to protect an
6    individual   against   unauthorized   disclosure   of   his   or   her
7    biometric identifiers and biometric information when State or
8    local government requires the individual to provide his or her
9    biometric identifiers to an officer or agency of the State or
10   local   government;   (ii)   issues   related   to   the   collection,
11   destruction,   security,   and   ramifications   of   biometric
12   identifiers, biometric information, and biometric technology;
13   and (iii) technical and procedural changes necessary in order
14   to   implement   and   enforce   reasonable,   uniform   biometric
15   safeguards by State and local government agencies.

16       (b)   The   Committee   shall   hold   such   public   hearings   as   it
17   deems   necessary   and   present   a   report   of   its   findings   and
18   recommendations to the General Assembly before January 1, 2009.
19   The Committee may begin to conduct business upon appointment of
20   a majority of its members. All appointments shall be completed
21   by 4 months prior to the release of the Committee's final
22   report. The Committee shall meet at least twice and at other
23   times at the call of the chair and may conduct meetings by
24   telecommunication, where possible, in order to minimize travel
25   expenses. The Committee shall consist of 27 members appointed
26   as follows:

09500SB2400ham001              -10-        LRB095 19768 RPM 51505 a

1          (1) 2 members appointed by the President of the Senate;

2          (2) 2 members appointed by the Minority Leader of the

3      Senate;

4          (3) 2 members appointed by the Speaker of the House of

5      Representatives;

6          (4) 2 members appointed by the Minority Leader of the

7      House of Representatives;

8          (5) One member representing the Office of the Governor,

9      appointed by the Governor;

10         (6) One member, who shall serve as the chairperson of

11     the Committee, representing the Office of the Attorney

12     General, appointed by the Attorney General;

13         (7) One member representing the Office of the Secretary

14     of the State, appointed by the Secretary of State;

15         (8) One member from each of the following State

16     agencies appointed by their respective heads: Department

17     of Corrections, Department of Public Health, Department of

18     Human Services, Central Management Services, Illinois

19     Commerce Commission, Illinois State Police; Department of

20     Revenue;

21         (9) One member appointed by the chairperson of the

22     Committee, representing the interests of the City of

23     Chicago;

24         (10) 2 members appointed by the chairperson of the

25     Committee, representing the interests of other

26     municipalities;

09500SB2400ham001             -11-        LRB095 19768 RPM 51505 a


1       (11) 2 members appointed by the chairperson of the

2    Committee, representing the interests of public hospitals;

3    and

4       (12) 4 public members appointed by the chairperson of

5    the Committee, representing the interests of the civil

6    liberties community, the electronic privacy community, and

7    government employees.

8    (c) This Section is repealed January 1, 2009.


9       Section 99. Effective date. This Act takes effect upon

10   becoming law.".

# Exhibit D

# WEBSTER'S
## Contemporary
## School & Office
## Dictionary

• More than 70,000 definitions •
• Up-to-date and easy-to-use •

Created in Cooperation with the Editors of
MERRIAM-WEBSTER

# Webster's Contemporary School & Office Dictionary

Created in Cooperation with the Editors of
MERRIAM-WEBSTER



A Division of Merriam-Webster, Incorporated
Springfield, Massachusetts

Copyright © by Merriam-Webster, Incorporated

Federal Street Press is a trademark of Federal Street Press,
a division of Merriam-Webster, Incorporated.

All rights reserved.  No part of this book covered by the copyrights hereon
may be reproduced or copied in any form or by any means — graphic,
electronic, or mechanical, including photocopying, taping,
or information storage and retrieval systems —
without written permission of the publisher.

This 2008 edition published by
Federal Street Press
A Division of Merriam-Webster, Incorporated
P.O. Box 281
Springfield, MA 01102

Federal Street Press books are available for bulk purchase for
sales promotion and premium use.
For details write the manager of special sales,
Federal Street Press, P.O. Box 281, Springfield, MA 01102

**ISBN 13**  978-1-59695-047-4

**ISBN 10**  1-59695-047-1

Printed in the United States of America

08  09  10  11  12          5  4  3  2  1

**pho·to·chem·i·cal** \ˌfō-tō-ˈke-mi-kəl\ *adj* : of, relating to, or resulting from the chemical action of radiant energy

**pho·to·com·pose** \ˌkəm-ˈpōz\ *vb* : to compose reading matter for reproduction by means of characters photographed on film — **pho·to·com·po·si·tion** \ˌkäm-pə-ˈzi-shən\ *n*

**pho·to·copy** \ˈfō-tə-ˌkä-pē\ *n* : a photographic reproduction of graphic matter — **photocopy** *vb*

**pho·to·elec·tric** \ˌfō-tō-i-ˈlek-trik\ *adj* : relating to an electrical effect due to the interaction of light with matter — **pho·to·elec·tri·cal·ly** \-tri-k(ə-)lē\ *adv*

**photoelectric cell** *n* : a device whose electrical properties are modified by the action of light

**pho·to·en·grave** \ˌfō-tō-in-ˈgrāv\ *vb* : to make a photoengraving of

**pho·to·en·grav·ing** *n* : a process by which an etched printing plate is made from a photograph or drawing; *also* : a print made from such a plate

**photo finish** *n* : a race finish so close that a photograph of the finish is used to determine the winner

**pho·tog** \fə-ˈtäg\ *n* : PHOTOGRAPHER

**pho·to·gen·ic** \ˌfō-tə-ˈje-nik\ *adj* : eminently suitable esp. aesthetically for being photographed

**pho·to·graph** \ˈfō-tə-ˌgraf\ *n* : a picture taken by photography — **photograph** *vb* — **pho·tog·ra·pher** \fə-ˈtä-grə-fər\ *n*

**pho·tog·ra·phy** \fə-ˈtä-grə-fē\ *n* : the art or process of producing images on a sensitive surface (as film or a CCD chip) by the action of light — **pho·to·graph·ic** \ˌfō-tə-ˈgra-fik\ *adj* — **pho·to·graph·i·cal·ly** \-fi-k(ə-)lē\ *adv*

**pho·to·gra·vure** \ˌfō-tə-grə-ˈvyu̇r\ *n* : a process for making prints from an intaglio plate prepared for photographic methods

**pho·to·li·thog·ra·phy** \ˌfō-tō-li-ˈthä-grə-fē\ *n* : the process of photographically transferring a pattern to a surface for etching (as in making an integrated circuit)

**pho·tom·e·ter** \fō-ˈtä-mə-tər\ *n* : an instrument for measuring the intensity of light — **pho·to·met·ric** \ˌfō-tə-ˈme-trik\ *adj* — **pho·tom·e·try** \fō-ˈtä-mə-trē\ *n*

**pho·to·mi·cro·graph** \ˌfō-tə-ˈmī-krə-ˌgraf\ *n* : a photograph of a microscope image — **pho·to·mi·crog·ra·phy** \-mī-ˈkrä-grə-fē\ *n*

**pho·ton** \ˈfō-ˌtän\ *n* : a quantum of electromagnetic radiation

**photo op** *n* : a situation or event that lends itself to the taking of pictures which favor the individuals photographed

**pho·to·play** \ˈfō-tō-ˌplā\ *n* : MOTION PICTURE

**pho·to·sen·si·tive** \ˌfō-tə-ˈsen-sə-tiv\ *adj* : sensitive or sensitized to the action of radiant energy

**pho·to·sphere** \ˈfō-tə-ˌsfir\ *n* : the luminous surface of a star — **pho·to·spher·ic** \ˌfō-tə-ˈsfir-ik, -ˈsfer-\ *adj*

**pho·to·syn·the·sis** \ˌfō-tō-ˈsin-thə-səs\ *n* : the process by which chlorophyll-containing plants make carbohydrates from water and from carbon dioxide in the air in the presence of light — **pho·to·syn·the·size** \-ˌsīz\ *vb* — **pho·to·syn·thet·ic** \-sin-ˈthe-tik\ *adj*

**phr** *abbr* phrase

¹**phrase** \ˈfrāz\ *n* **1** : a brief expression **2** : a group of two or more grammatically related words that form a sense unit expressing a thought

²**phrase** *vb* **phrased; phras·ing** : to express in words

**phrase·ol·o·gy** \ˌfrā-zē-ˈä-lə-jē\ *n, pl* **-gies** : a manner of phrasing : STYLE

**phras·ing** *n* : style of expression

**phre·net·ic** *archaic var of* FRENETIC

**phren·ic** \ˈfre-nik\ *adj* : of or relating to the diaphragm (~ nerves)

**phre·nol·o·gy** \fri-ˈnä-lə-jē\ *n* : the study of the conformation of the skull based on the belief that it indicates mental faculties and character traits

**phy·lac·tery** \fə-ˈlak-tə-rē\ *n, pl* **-ter·ies** **1** : one of two small square leather boxes containing slips inscribed with scripture passages and traditionally worn on the left arm and forehead by Jewish men during morning weekday prayers **2** : AMULET

**phy·lum** \ˈfī-ləm\ *n, pl* **phy·la** \-lə\ [NL, fr. Gk *phylon* tribe, race] : a major category in biological classification esp. of animals that ranks above the class and below the kingdom; *also* : a group (as of people) apparently of common origin

**phys** *abbr* **1** physical **2** physics

¹**phys·ic** \ˈfi-zik\ *n* **1** : the profession of medicine **2** : MEDICINE; *esp* : PURGATIVE

²**physic** *vb* **phys·icked; phys·ick·ing** : PURGE **2**

¹**phys·i·cal** \ˈfi-zi-kəl\ *adj* **1** : of or relating to nature or the laws of nature **2** : material as opposed to mental or spiritual **3** : of, relating to, or produced by the forces and operations of physics **4** : of or relating to the body — **phys·i·cal·ly** \-k(ə-)lē\ *adv*

²**physical** *n* : PHYSICAL EXAMINATION

**physical education** *n* : instruction in the development and care of the body ranging from simple calisthenics to training in hygiene, gymnastics, and the performance and management of athletic games

**physical examination** *n* : an examination of the bodily functions and condition of an individual

**phys·i·cal·ize** \ˈfi-zə-kə-ˌlīz\ *vb* **-ized; -iz·ing** : to give physical form or expression to

**physical science** *n* : any of the sciences (as physics and astronomy) that deal primarily with nonliving materials — **physical scientist** *n*

**physical therapy** *n* : the treatment of disease by physical and mechanical means (as massage, exercise, water, or heat) — **physical therapist** *n*

**phy·si·cian** \fə-ˈzi-shən\ *n* : a doctor of medicine

**physician's assistant** *n* : a person certified to provide basic medical care usu. under a licensed physician's supervision

**phys·i·cist** \ˈfi-zə-sist\ *n* : a scientist who specializes in physics

**phys·ics** \ˈfi-ziks\ *n* [L *physica*, pl., natural sciences, fr. Gk *physika*, fr. *physis* growth, nature, fr. *phyein* to bring forth] **1** : the science of matter and energy and their interactions **2** : the physical properties and composition of something

**phys·i·og·no·my** \ˌfi-zē-ˈäg-nə-mē\ *n, pl* **-mies** : facial appearance esp. as a reflection of inner character

**phys·i·og·ra·phy** \ˌfi-zē-ˈä-grə-fē\ *n* : geography dealing with physical features of the earth — **phys·io·graph·ic** \ˌfi-zē-ō-ˈgra-fik\ *adj*

**phys·i·ol·o·gy** \ˌfi-zē-ˈä-lə-jē\ *n* **1** : a branch of biology dealing with the functions and functioning of living matter and organisms **2** : functional processes in an organism or any of its parts — **phys·i·o·log·i·cal** \-zē-ə-ˈlä-ji-kəl\, *or* **phys·i·o·log·ic** \-jik\ *adj* — **phys·i·o·log·i·cal·ly** \-ji-k(ə-)lē\ *adv* — **phys·i·ol·o·gist** \-zē-ˈä-lə-jist\ *n*

**phys·io·ther·a·py** \ˌfi-zē-ō-ˈther-ə-pē\ *n* : PHYSICAL THERAPY — **phys·io·ther·a·pist** \-pist\ *n*

**phy·sique** \fə-ˈzēk\ *n* : the build of a person's body : bodily constitution

**phy·to·chem·i·cal** \ˌfī-tō-ˈke-mi-kəl\ *n* : a chemical compound occurring naturally in plants

**phy·to·plank·ton** \ˈfī-tō-ˌplaŋk-tən\ *n* : plant life of the plankton

**pi** \ˈpī\ *n, pl* **pis** \ˈpīz\ **1** : the 16th letter of the Greek alphabet — Π or π **2** : the symbol π denoting the ratio of the circumference of a circle to its diameter; *also* : the ratio itself equal to approximately 3.1416

**PI** *abbr* private investigator

**pi·a·nis·si·mo** \ˌpē-ə-ˈni-sə-ˌmō\ *adv or adj* : very softly — used as a direction in music

**pi·a·nist** \pē-ˈa-nist, ˈpē-ə-\ *n* : a person who plays the piano

¹**pi·a·no** \pē-ˈä-nō\ *adv or adj* : SOFTLY — used as a direction in music

²**piano** \pē-ˈa-nō\ *n, pl* **pianos** [It, short for *pianoforte*, fr. *gravicembalo col piano e forte*, lit., harpsichord with soft and loud; fr. the fact that its tones could be varied in loudness] : a musical instrument having steel strings sounded by felt-covered hammers operated from a keyboard

**pi·ano·forte** \pē-ˌa-nō-ˈfōr-ˌtā, -tē; pē-ˈa-nə-ˌfōrt\ *n* : PIANO

**pi·as·tre** *also* **pi·as·ter** \pē-ˈas-tər\ *n* — sec *pound* at MONEY table

**pi·az·za** \pē-ˈa-zə, *esp for 1* -ˈat-sə\ *n, pl* **piazzas** *or* **pi·az·ze** \-ˈat-(ˌ)sä, -ˈät-\ [It, fr. L *platea* broad street] **1** : an open square esp. in an Italian town **2** : a long hall with an arched roof **3** *dial* : VERANDA, PORCH

**pi·broch** \ˈpē-ˌbräk\ *n* : a set of variations for the bagpipe

**pic** \ˈpik\ *n, pl* **pics** *or* **pix** \ˈpiks\ **1** : PHOTOGRAPH **2** : MOTION PICTURE

# Exhibit E

                    IN THE CIRCUIT COURT OF THE
                  TWENTY-THIRD JUDICIAL CIRCUIT
                  DEKALB COUNTY, CHANCERY DIVISION


    BRENT CAMERON, Individually,      )
    and on behalf of all others      )
    similarly situated,              )
                                     )
                                     )
            Plaintiffs,              )
                                     )
        vs.                          ) No. 2019-CH-000013
                                     )
                                     )
    POLAR TECH INDUSTRIES, INC.,     )
    and ADP LLC,                     )
                                     )
                                     )
            Defendants.              )


                  TRANSCRIPT OF PROCEEDINGS at the

          hearing of the above-entitled cause before THE

          HONORABLE BRADLEY WALLER, Judge of said Court,

          in Room 300 of the Dekalb County Courthouse,

          133 West State Street, Sycamore, Illinois, on

          August 23, 2019, at the hour of 10:00 a.m.


    REPORTED BY:  Nohemi Salazar-Pitts, CSR
    LICENSE NO.:  084-4648

```
 1        APPEARANCES:

 2               STEPHAN ZOURAS, LLP, by
                 MS. HALEY R. JENKINS and
 3               MR. RYAN F. STEPHAN
                 100 N Riverside Plaza
 4               Suite 2150
                 Chicago, Illinois  60606
 5               (312) 233-1550
                 hjenkins@stephanzouras.com
 6               rstephan@stephanzouras.com

 7                       Appeared on behalf of the
                         Plaintiff and the Putative Class;
 8

 9               JENNER & BLOCK, LLP, by
                 MR. DAVID C. LAYDEN
10               353 North Clark Street
                 Chicago, Illinois  60654-3456
11               312.922.9350
                 dlayden@jenner.com
12
                         Appeared on behalf of the
13                       Defendant ADP LLC;

14
                 O'HAGAN MEYER, by
15               MR. THOMAS BOWERS
                 One East Wacker Drive
16               Suite 3400
                 Chicago, Illinois  60601
17               312.422.6100
                 tbowers@ohaganmeyer.com
18
19                       Appeared on behalf of Defendant
                         Polar Tech Industries, Inc.
20

21

22

23

24
```

Page 3

```
 1            THE COURT:  All right.
 2            THE CLERK:  Cameron v Polar Tech.
 3            THE COURT:  Do you want to stay there?
 4    You don't have to.
 5            MR. LAYDEN:  Whatever you prefer, your
 6    Honor.
 7            THE COURT:  As long as you speak up, I
 8    have no problem if you'd like to stay right there.
 9                I'd like you to identify yourselves
10    from my left to my right, please.
11            MR. BOWERS:  Thomas Bowers on behalf of
12    Polar Tech.
13            MR. LAYDEN:  Good morning, your Honor.
14    David Layden on behalf of ADP.
15            MS. JENKINS:  Haley Jenkins on behalf of
16    the Plaintiffs.
17            MR. STEPHAN:  Good morning, Judge.  Ryan
18    Stephan on behalf of Plaintiffs.
19            THE COURT:  Did you have something you
20    wanted to tender to me?
21            MR. LAYDEN:  No, your Honor.  If you
22    prefer that we step up, we're happy to do it.
23    Whatever you'd like us to do.
24            THE COURT:  Whatever you guys want to do.
```

Page 4

1    If you want to have a seat and argue from there,

2    that's perfectly fine.  All right?

3              So what's before the court is motions

4    to dismiss.  Polar Tech has brought a motion under

5    2-619.1, which, we all know, is a dual motion

6    including 615 and 619.  Essentially, their motion

7    is predicated under (a)(5) statute of limitations

8    issue as well as long as (a)(9), and then ADP has

9    filed a 2-615 motion.  There is joint response

10   filed by the Plaintiff.  There's respective

11   replies.  I have had the opportunity to review

12   everything.

13             Who would like to go first on the

14   Defendants' side?

15        MR. LAYDEN:  Your Honor --

16        THE COURT:  And you can have a seat, by

17   the way.  You don't have to stand.  Thank you.

18        MR. LAYDEN:  Your Honor, we flipped a

19   coin, and I will go first.

20        THE COURT:  All right.

21        MR. LAYDEN:  Your Honor, as -- and I will

22   obviously repeat a little bit just to try to

23   summarize the high points.  ADP's motion first, of

24   all directed, at the Section 15(b) claim of BIPA,

1  which is the portion of BIPA which requires that

2  an entity collecting biometric information covered

3  by the statute provide written notice and consent

4  and obtain written consent or written release.

5          Your Honor, the basis for our motion

6  is that the way that the plain language of the

7  statute is structured, you read the entire

8  statute, you focus on 15(b), is that 15(b) applies

9  only to the entity, we think, collecting the data.

10  This is not applied to any entity that is in

11  possession of the data.

12          And our position is in this case the

13  Plaintiff has alleged, and it's practically

14  Plaintiff's employer, Polar Tech, which actually

15  collected the data.  And obviously the employer

16  had control of the workplace, which required that

17  its employees use the biometric and therefore is

18  the collector.

19          We certainly, of course, as we

20  indicate, don't think it is a valid claim against

21  Polar Tech, but we do believe that if anyone is

22  subject to 15(b), it would be Polar Tech.  We

23  think that that is clear from the plain language

24  of statute.

1          It's also important, Judge, to focus

2    on the definition of "written release," which is

3    set forth in BIPA, which provides that a written

4    release in the context of employment is a release

5    executed as a condition of employment.

6          And we think, your Honor, that that

7    further affirms our reading of the statute, which

8    is that when you have an employer using biometric

9    technology in the workplace that is covered by the

10   statute, that it is the employer's job to obtain

11   and to provide written notice to get the consent.

12          Plaintiff's position as set forth in

13   their response is basically that any entity that

14   comes into possession of biometric data at any

15   point in time is subject to 15(b).  We don't think

16   that's right, your Honor, because, first of all,

17   it would serve to destroy the careful distinction

18   that the general assembly made in using words like

19   "collect" versus "possess."

20          If that's really what the legislature

21   intended, they would have just simply said "any

22   entity coming into possession of biometric data

23   needs to get notice and get consent."  That's not

24   what the legislation said, and we think that's

1    very important to recognize.

2             The Plaintiffs also focused on the

3    word "obtain," or actually it said the words

4    "otherwise obtain" at the end of 15(b), and

5    suggested that that's essentially just akin to

6    coming into possession.  We don't agree with them,

7    first of all, in line with what I just said, which

8    is that it would collapse the distinction that the

9    legislature made.

10            And second of all, the word

11   "otherwise obtain" comes at the end of a string of

12   other words, "capture," "collect," which all

13   involve, essentially, an active process of

14   obtaining information from the actual individual

15   who has the biometric data, and therefore we think

16   that it needs to be read consistently with that,

17   meaning an interaction with the person who has the

18   biometric data and the opportunity to give notice

19   and obtain release, if that is required.

20            And for all those reasons, we don't

21   believe that the 15(b) claim can stand.  And if

22   you look at the complaint, your Honor, it's pretty

23   clear that the specific allegations in the

24   complaint are that Polar Tech was the entity

1   collecting.

2            Certainly, the Plaintiff has included

3   some general allegations that each Defendant or

4   that Defendants actively collected.  But I think

5   if you look at the Plaintiff's theory of the case

6   is that Polar Tech used the clock in the workplace

7   to obtain the employees' biometric information and

8   then it was later, according to Plaintiffs,

9   disclosed to ADP, meaning that ADP was not

10  collecting; ADP was receiving it afterwards.

11  That's the theory that we believe is set forth in

12  the complaint.  And we believe that that

13  forecloses the Plaintiff from a pleading, a claim,

14  against ADP under Section 15(b).

15            We also would move to dismiss the

16  Section 15(a) claim, your Honor, and that is the

17  one that requires an entity in possession of

18  biometric information covered by the statute to

19  develop a written retention policy.

20            Your Honor, as we have set forth in

21  our brief, the Plaintiff had argued initially that

22  ADP violated it by not providing the policy to

23  Plaintiff.  That's not what the statute requires.

24  The Plaintiff seems to have now backed off a

1   little bit and said we have to have a policy.

2   And, your Honor, first of all, that's not what the

3   statute requires.  The statute actually has

4   different language.  It says you must develop,

5   which to us means plainly that when you come into

6   possession of biometric information, you then must

7   develop a policy.

8              And I think just to be clear here,

9   your Honor -- and we haven't raised a 619 motion,

10  so this may have to be a summary judgment issue if

11  we don't prevail today on this.  But ADP had a

12  biometric policy in effect in October 2017.  The

13  Plaintiff started working in early 2018, so there

14  is not going to be a Section 15(a) claim against

15  ADP unless the Plaintiff is going to challenge the

16  efficacy of the policy.  I don't understand them

17  doing so, but we may have to get to that.

18             So we think that the 15(a) claim

19  fails to state a claim because they just haven't

20  alleged that ADP violated that section of BIPA.

21             And then, your Honor, finally, that

22  leaves us with the alleged claim under 15(d),

23  which is the section of BIPA that deals with

24  disclosure/disseminations.  And here what we

1    really have is a very conclusory obligation.

2              In parts of their Complaint, the

3    Plaintiff alleges that Polar Tech has collected

4    and then disclosed to ADP.  But then they say,

5    well, ADP also disclosed to cloud storage

6    providers and other vendors.  It's actually not

7    true, but for purposes of their pleading, our

8    position is that they haven't pled that that's the

9    issue.

10             THE COURT:  Can I ask you a question?

11             MR. LAYDEN:  Certainly, your Honor.

12             THE COURT:  My understanding is that you

13   concede in your, I think it's your reply, I could

14   be wrong, that there was a -- it was transmitted

15   to a third-party storage provider.

16             MR. LAYDEN:  Your Honor, I don't think we

17   did, and if we did, we misspoke, and so I

18   apologize for that.  I can tell you also --

19             THE COURT:  I want to be accurate.

20             MR. LAYDEN:  Sure.  Of course.  I can

21   tell you, and I realize that we're stepping a

22   little bit outside pleadings, your Honor; but ADP

23   does not disclose or give data to anyone else.

24   The data -- any data that ADP gets stays at ADP.

1               Plaintiffs, obviously, are entitled

2    to allege that, but I just -- I'm telling you what

3    the facts will ultimately show.

4          THE COURT:  Just give me a moment because

5    I do not want to state something that is

6    inaccurate.

7               It must have been with the -- I

8    apologize.  It must have been what the Plaintiff

9    had alleged, because I'm looking at your reply and

10   I do not see it in here.  As a matter of fact, you

11   can test that.

12              So go ahead.

13         MR. LAYDEN:  Very well, your Honor.  So

14   basically the -- so putting aside what actually

15   happened, because I appreciate in the 615 motion,

16   you need to deal with the specific facts alleged.

17   We understand that.  There is no -- there are no

18   specific facts alleged as to a

19   disclosure/dissemination.

20              And even if -- this is obviously

21   assuming, because it's not true.  Even if they

22   could allege that ADP had disseminated it to a

23   cloud storage provider, our view is that is not a

24   disclosure/dissemination because -- for two

1  reasons:  A, the dictionary definition of

2  disclosure or disseminating would mean essentially

3  to reveal something.  It's to reveal to someone

4  who does not have a right to have it.

5            And the cloud storage provider simply

6  provided, essentially, an administrative service,

7  and it would be a significant expansion of BIPA to

8  say that any time a cloud storage provider is ever

9  provided data that there needs to be, essentially,

10  disclosure consent.

11            And, actually, taking Plaintiff's

12  theory to the actual logical conclusion, I think

13  they would say that 15(b) applies to cloud storage

14  providers.  So if anyone ever were to switch

15  storage providers, they would have to somehow get

16  back and go to all the people who they collected

17  data from and get that information including

18  former employees.  So I think it becomes one

19  whirlpool very, very quickly.

20            So, your Honor, we're not contending

21  that, you know -- as Plaintiff said that, you

22  know, that ADP could do whatever they want with

23  this data, but they can't give it to -- you know,

24  they can't sell it, they can't provide it to

Page 13

1    people who -- for purposes other than what it has

2    been collected for.

3              But even assuming -- again, it's not

4    true, but even assuming ADP had used a cloud

5    storage provider, we don't believe that it

6    constitutes a disclosure or dissemination under

7    the statute.

8              As a matter of fact, it is in

9    Section 15(b) of the statute, a provision talks

10   about what happens when you transmit data and how

11   you have to deal with it when you transmit it, and

12   then if you transmit it, you're not allowed to

13   disclose it, which to us is further confirmation

14   that not every transmission of data to someone

15   else constitutes disclosure, because otherwise

16   that section doesn't make any sense.

17             So, your Honor, for those reasons --

18   and I'm obviously happy to answer any further

19   questions you have -- we don't believe that the

20   complaint alleges a sufficient claim under BIPA

21   against ADP, and we would ask that it be dismissed

22   with prejudice.

23             THE COURT:  And you're also moving to

24   dismiss the common law negligence count as well,

1    correct?

2         MR. LAYDEN:  Your Honor, we are.  And

3    obviously Plaintiff's counsel can address this.

4    I don't understand they're proceeding on that, at

5    least in other cases they have dropped that claim

6    post Rosenbach.  But we are -- to the extent they

7    are proceeding on that, we are, in fact, proposing

8    it for the reasons that we have said at this time.

9         THE COURT:  And you are also saying that

10   the statute of limitations issue which was raised

11   by the co-Defendant is premature at this point

12   because the named Plaintiff, whether you pick the

13   one-, two-, five-year statute of limitation, was

14   filed, even in the worst case, within the one-year

15   statute of limitations; is that correct.

16        MR. LAYDEN:  Your Honor, that is ADP's

17   view.  I don't want to step on Polar Tech's toes.

18        THE COURT:  I'm not -- no.  I'm the one

19   bringing it up, so you're not stepping on their

20   toes.

21        MR. LAYDEN:  You're right.  That is what

22   we believe to be the case.  But obviously Polar

23   Tech has a relationship with the Plaintiff, and

24   they are aware, obviously, of the facts relating

1   to his employment status.  So we are just not in

2   the position to say that, but based on the briefs,

3   that is what we believe.

4          THE COURT:  Okay.  Very good.

5          All right.  The way I'm going to

6   handle this is that I'm going to allow you to

7   respond to ADP, and then you get the last word on

8   your motion, and then we will move to Polar Tech.

9          You're up.

10         MS. JENKINS:  Thank you, your Honor.  ADP

11  is essentially claiming that only certain sections

12  of BIPA don't apply to it, but the plain language

13  of the statute makes clear that it applies to all

14  private entities that come into possession or that

15  obtained this data, and to private entities as

16  defined by the statute.

17         THE COURT:  Can I ask you this question?

18  What data is ADP actually acquiring?

19         MS. JENKINS:  Well, your Honor, ADP is

20  the manufacturer of the clock, the manufacturer of

21  the software, and is additionally supporting the

22  services, and they're obtaining whatever data that

23  clock is taking from the Plaintiff.  So when he

24  puts his fingerprint on the clock and it takes

1    that fingerprint data from him, that's the data

2    that they're obtaining.

3              THE COURT:  Okay.  But -- and I know a

4    little bit about this, I think, but, I mean,

5    there's different ways to obtain data.  So you can

6    have the data that I think is contemplated by the

7    statute which is that you have somebody's

8    biometric information in the form of a fingerprint

9    or a retina scan, et cetera, as defined, or you

10   can have data that -- I don't know if you're

11   familiar with the terminology of a hash function

12   where a hash function is essentially, as I have

13   always looked at it as, is it's kind of like

14   gibberish, it's encrypted, it's something that --

15   it's like, you know, your password.

16             So if you type in your password, you

17   know, "I love mom," the hash function recognizes

18   that, but it doesn't recognize it word-for-word.

19   So it seems to me it begs the first question:

20   What data, in your view, is ADP actually acquiring

21   from your client?

22             MS. JENKINS:  Well, your Honor, the first

23   part is that they may be acquiring his actual

24   biometric identifier, his actual fingerprint; but

1  the statute also contemplates biometric

2  information, which is any information derived from

3  that fingerprint.

4           So even if -- and I'm going to

5  anticipate ADP would argue that they're collecting

6  some encrypted mathematical template of his -- of

7  the fingerprint scan the Plaintiff puts on the

8  time clock.  But that is biometric information,

9  and that is data that they're collecting.

10          THE COURT:  So you think the statute is

11  broad enough to encompass and include encrypted or

12  hash functions?

13          MS. JENKINS:  I do.

14          THE COURT:  Go ahead.

15          MR. STEPHAN:  And, Judge, if I can add

16  one thing on that.

17          THE COURT:  Yes.

18          MR. STEPHAN:  And this is sort of how

19  computers work, right?  If you look at any image

20  on your computer, there are numbers behind it.

21  That's how the computers communicate.  So they

22  don't -- it's not like a hard copy fingerprint

23  that you would see at a police office.  So it's

24  how computers communicate, and we clearly believe

Page 18

1    that's contemplated by the statute.

2          THE COURT:  But, to your point, they

3    communicate by use of digits, they communicate by

4    use of codes.  So, you know, you could look at the

5    data collected by virtue of the fingerprint or the

6    retina scan and have absolutely no idea what

7    you're looking at.

8               You believe that's contemplated by

9    the statute?

10         MR. STEPHAN:  Well, I don't believe that

11   your first part of that is necessarily accurate.

12   Anything that is encrypted can be unencrypted, and

13   oftentimes numbers represent other things.  So we

14   do feel like that is included by the statute and

15   we feel that it is under the definition of

16   biometric information covered by the statute.

17         THE COURT:  What section would you direct

18   my attention to, of the statute?

19         MS. JENKINS:  In Section 14/10 is the

20   definition of biometric information.

21         THE COURT:  So your position is

22   biometric -- the biometric identifier and the

23   biometric information, those two coupled together

24   would include encrypted/unencrypted, hash

1    functions, et cetera?

2              MS. JENKINS:  Yes.

3              THE COURT:  And your position would be

4    under biometric information means any information

5    regardless of how it's been captured, converted,

6    stored, or shared?

7              MS. JENKINS:  Exactly.

8              THE COURT:  Go ahead.  By the way, do you

9    have the case on that?

10             MS. JENKINS:  I'm sorry?

11             THE COURT:  Do you have a case or cases

12   on that?

13             MS. JENKINS:  Not yet.  It's still being

14   litigated.

15                  But, your Honor --

16             THE COURT:  I don't ask questions I don't

17   know answers to, but ahead.

18             MS. JENKINS:  So, your Honor, I think one

19   of the important things to remember is that ADP

20   bases its entire business model on the fact that

21   it's collecting this data, sets out to collect

22   this data because it creates the time clocks that

23   do it and software that goes along with it.  It

24   integrates those programs into it's various HR and

1    payroll functions that it provides to various

2    employers, and it profits from all of this.

3                   So to call them not a collector of

4    the data, we just think would simply inaccurate.

5    It's actually one of the biggest collectors of

6    this type of data, which means it should be the

7    most knowledgeable in this space, the most

8    experienced.  It's one of the most vulnerable if

9    attacked, and it's the most culpable here as well.

10   And yet they did nothing absolutely to comply with

11   BIPA.

12                  We are at a Section 2-615 motion to

13   dismiss stage, and if you look simply at the

14   pleadings with respect to Section 15(a), we

15   allege, and ADP hasn't really disputed that they

16   possessed the Plaintiff's biometric data.

17                  We alleged that they didn't have a

18   written publically available retention and

19   destruction policy, and if discovery bears out

20   that they might have produced that prior to the

21   Plaintiff's employment, so be it, but we are

22   talking about the allegations in the pleadings

23   right now; and under the pleadings and within the

24   boundaries of the complaint, we have properly

1    alleged a claim with respect to 15(a).

2                    With respect to Section 15(b), we

3    have alleged, and they don't really dispute it,

4    that they failed to provide the requisite notice

5    under BIPA and they failed to obtain a written

6    release from our client, all before collecting his

7    biometric data.  Instead, they just want to write

8    themselves out of the statute, but as we stated

9    before, Section 15(b) applies uniformly to all

10   private entities that collect, capture, or

11   otherwise obtain this data.

12                   THE COURT:  How would ADP have any sort

13   of privity or the ability to effectuate the

14   elements under B?  In other words, it talks about

15   that has to be obtained before the collection of

16   the data, correct?  So how would they be in a

17   position to do that?

18                   MS. JENKINS:  They could easily implement

19   on their own device, you know, a pop-up screen

20   that comes up when the Plaintiff or another

21   individual first uses the device that says, you

22   know -- it has BIPA-compliant written disclosure

23   and asks for their written consent to do so.

24                   They could also require their

1   customers, the employers, to include them on any

2   BIPA-complaint disclosure and a release that they

3   provide to their employees prior to collecting the

4   data.

5           There are a number of ways that they

6   could comply with the statute, but they have

7   chosen not to.  They then want the Court to

8   believe that collection rests only with the

9   employer, but this position just simply makes no

10  sense.

11          That would be like saying, when the

12  minister passes around the collection plate at

13  church, only the minister is collecting the money

14  and not the church, and we all know that that's

15  not true; and that's not how data works in our

16  day-to-day lives either.  It doesn't stay with the

17  initial collector.  No data that you provide to

18  one, you know, company or to one venue generally

19  stays with that.  It's disseminated across several

20  platforms and integrated into other platforms, as

21  ADP well knows.

22          And with respect, again, to

23  Section 15(d), we have alleged that they had

24  disclosed or disseminated the Plaintiff's

Page  23

1   biometric data to third parties.  And the biggest

2   contention is that the conclusions -- or their

3   allegations are conclusory, but we can't be

4   expected to know at the pleading stage where

5   everything that they have disclosed has gone and

6   who it's gone to.

7            But we do know from our own

8   investigation and from our experience in this

9   field that the data is shared or at least able to

10  be accessed across a number of different platforms

11  by a number of different parties.

12            Again, if discovery bears out that an

13  allegation turns out not to be fruitful, that's an

14  issue for a different time.  Based on the

15  pleadings we have alleged that ADP violated

16  Section 15(d).  ADP also claims that Section 15(d)

17  requires some sort of public disclosure of

18  Plaintiff's data, but the plain text of BIPA does

19  not require that.  It just requires that it be

20  disseminated or disclosed to a third party.

21            You could disclose something to a

22  third party without making it known to the public

23  at large, which is what we have alleged that they

24  have done here.

1           So, again, your Honor, I think it's

2    important to consider that we're still at the

3    pleading stage, and based on the allegations in

4    the Complaint the Plaintiff has properly alleged

5    the violations of Sections 15(a), (b), and (d) of

6    BIPA with respect to ADP.

7           THE COURT:  Anything else?

8           MS. JENKINS:  Not unless you have

9    questions.

10          THE COURT:  Do you have anything?

11          MR. STEPHAN:  No, Judge.  Thank you.

12          THE COURT:  Okay.  You get the last word.

13    It's your motion.

14          MR. LAYDEN:  Thank you, Judge.

15          So just to re-respond, and

16    actually -- well, to your questions and also to

17    what Plaintiff's counsel said; first of all, the

18    way the technology works, there is no fingerprint

19    involved.  The scanning function essentially

20    measures -- it's much, much less precise than a

21    law enforcement fingerprint, so anything that you

22    may have seen on TV or what we think of as actual

23    fingerprints, it's not involved here.

24          The scanning essentially measures a

1   few points on the fingertip, on a portion of the

2   fingertip.  It then creates this mathematical

3   template that your Honor referenced; it's

4   encrypted, it's just a series of hexadecimal

5   numbers.  That's all that it is.  There's no

6   fingerprint stored, there's no image of the

7   fingerprint stored.  It's just a series of

8   numbers.  So that's what we're dealing with here.

9            And, your Honor, we certainly

10   disagree, and I think I may have previewed this a

11   little bit in my opening remarks.  We don't

12   believe this technology is covered by the statute.

13   We do believe, though, that there probably is

14   going to be summary judgment issues as opposed to

15   a -- or maybe a trial issue as opposed to a motion

16   to dismiss issue.

17            So we're not at all conceding that

18   it's covered, and, your Honor, I think your

19   question goes to one of the key arguments we're to

20   be raising, which is it just simply isn't covered.

21            A couple of other points just to

22   respond to what Plaintiff's counsel said, it's

23   actually not true that ADP manufactures the

24   clocks.  ADP doesn't.  ADP buys the clocks from a

1    company called Kronos that actually manufactures

2    them.  And that's important, your Honor, because

3    it goes to something else that Ms. Jenkins said.

4             Your Honor asked whether -- how could

5    ADP have actually obtain, provide notice and get

6    consent, and that's obviously going to be focused

7    on our briefs.  And one of the suggestions that

8    Plaintiff's counsel has alleged is we could just

9    build it in the clock software.  Well, that's

10   impossible, your Honor.  We don't write the clock

11   software; it's Kronos software.

12            So you're essentially suggesting that

13   something that we buy from someone else, we should

14   somehow be required under BIPA to reprogram, which

15   we can't because we don't actually have the source

16   code to provide this onscreen notice.

17            And then the other suggestion Ms.

18   Jenkins made was that we could just rely upon the

19   customers to provide notice and get consent.

20   Well, actually, the problem with that, your Honor,

21   is that BIPA has these $1,000, $5,000 per item

22   penalties, and that's a significant risk to ask a

23   company like ADP to run because certainly we would

24   expect that all of our clients would comply with

1    the law in every instance.

2              But when we have the plaintiffs all

3    over this country who are filing these lawsuits by

4    the dozens and hundreds, and so basically for

5    their end, for their response that they make

6    repeatedly, well, you can't just rely upon someone

7    else to take care -- or just rely upon someone

8    else to just take care of any financial liability.

9    We don't think it's workable, and frankly it's not

10   what the statute says, your Honor.  The statute

11   says that -- it talks about a collector, it talks

12   about the companies that may become in possession.

13             And, your Honor, Ms. Jenkins' used an

14   interesting analogy, the minister with the

15   collection plate, which is not one I have heard

16   before, but I actually certainly think it is

17   pretty interesting.

18        THE COURT:  Well, we have ushers in my

19   church who pass the plate.

20        MR. LAYDEN:  Yeah, I was going to say

21   that, but I thought they were ushers, and the

22   minister is not going to have much to do with the

23   ushers just passing it around.

24             But I think actually the analogy

1    works a little bit better if you think about it

2    this way:  The minister, or the church, is Polar

3    Tech; the people passing around the collections

4    plate are the supervisors.  They are folks in

5    Polar Tech's facility who are in charge of making

6    sure its employees use these clocks to clock in

7    and out of work so they can be paid wages by Polar

8    Tech in connection with their employment of Polar

9    Tech.

10               I don't think it would be reasonable

11   for the Plaintiff to sue all those supervisors

12   individually and say that they were collecting,

13   and try to subject them to 1,000 liability.

14   Instead, I think that the way BIPA works is that

15   the entity that is actually collecting the data

16   for use in its business, which is the employer, is

17   the entity that is the collector, it's not the

18   supervisor, it's not someone like that.

19               So I think actually that analogy does

20   work if you just switch the entities out a little

21   bit.  I think that the ushers are the supervisors.

22               So, your Honor, I think for all those

23   reasons, you know, I think that the Plaintiff's

24   response doesn't really quite meet the arguments

1    that we made in the brief.  I think that this is a

2    situation where understandably they're really

3    trying to stretch BIPA way beyond its limits in

4    terms of who is covered by this, and I really

5    think that it just creates a real practical

6    problem.

7              We should not be construing laws in

8    ways that make it impractical or impossible for

9    entities to comply, particularly where you have

10   such a draconian penalty scheme in it.  And that's

11   really what they're asking for, and it's really

12   kind of a trap for companies like ADP which are

13   marketed for selling its clocks, providing its

14   services.

15             So for those reasons, we don't think

16   there's any basis to apply 15(b) to ADP, and I

17   don't think -- I think that my remarks on 15(a)

18   and 15(d), I think, can stand; and for those

19   reasons, your Honor, we would ask that you grant

20   our motion to dismiss the claims.  Thank you.

21             THE COURT:  Thank you.  This is a very

22   intriguing area for me.  I'm going to deal with

23   the simple thing first or simple count first.  I

24   did not see that the Plaintiff gave any sort of a

Page 30

1    response to the, what I'll term the common law

2    negligence claim, but to make the record clear,

3    there is a statutory provision that I believe

4    predominates, and I'm going to dismiss the common

5    law negligence claim with prejudice under

6    619(a)(9).

7                The -- and that also addresses what

8    Polar Tech raised, but in any event, what's really

9    in play here is the statute, and the statute is

10   the Biometric Information Privacy Act found at

11   740 ILCS 14/1 at (c), and it addresses a number of

12   issues.

13               And what, however, is before me today

14   with respect to ADP is a 2-615 motion.  And as we

15   all know, 2-615 is the motion under the Code of

16   Civil Procedure that mandates that I look to the

17   four corners of the pleadings and the four corners

18   of the pleadings only, and that's what I have

19   done.

20               I'm admonished that I'm to construe

21   the complaint in the light most favorable to the

22   nonmoving party.  It's what I like to call the "so

23   what" motion.  So, what you have alleged does not

24   state a cause of action, in this case under the

1    statute that's before me.

2              So diving into this, the complaint --

3    we're going to start with, since both sides have

4    started with 15(b), I'm going to start there.

5    15(b) of the statute provides that no private

6    entity, and I really have not heard, nor did I see

7    in any of the briefs, if you will, there's no

8    dispute, there's no contest, there's no argument

9    that ADP is anything but a private entity.

10             No private entity may collect,

11   capture, purchase, receive through trade or

12   otherwise obtain a person's or a customer's

13   biometric identifier or biometric information

14   unless it first, so in other words, before, it

15   collects, captures, purchases, receives, or

16   otherwise obtains, it first must inform the

17   subject or the subject's legally authorized

18   representative in writing that a biometric

19   identifier or biometric information is being

20   collected or stored;

21             Two, informs the subject or the

22   subject's legally authorized representative in

23   writing of the specific purpose and length of term

24   for which a biometric identifier or biometric

1   information is being collected, stored, and used,

2   and receives a written release executed by the

3   subject of the biometric identifier or biometric

4   information or the subject's legally authorized

5   representative.

6           There's a definition of written

7   release, and that means informed written consent

8   or, in the context of employment, a release

9   executed by an employee as condition of

10  employment.  Although not really addressed in any

11  of the briefs, the issue of what is a -- or what's

12  the definition of a legally authorized

13  representative.  That's not set forth in the

14  statute.  Does that mean the employer?  There are

15  no cases that interpret that.

16          So I have to give effect to the plain

17  language of a statute.  I'm mandated by the

18  Appellate and Supreme Court to do that.  And the

19  best way is to look at the plain language and not

20  to excise out a particular section, but to read

21  the statute in its totality.

22          So it seems to me that trying to give

23  effect to the statute as a whole where a cause of

24  action would accrue would really be under 15(a),

Page 33

1   (b), (c), (d), and (e), as to what, if you will, a

2   private entity can do with the data as defined in

3   the statute.  So to try to give effect to the

4   whole of the statute, it's this court's view that

5   15(b) only applies to an employer and not a third

6   party.

7            It seems to me that trying to give

8   effect to this, the information is, first and

9   foremost, it is a before, unless it first informs

10  the subject or the subject's legally authorized

11  representative.  And if I look at the pleading, it

12  seems to me that the intent of this section is for

13  an employer to be, if you will, responsible for

14  providing that information.  And I'm trying to

15  give effect to the definition of written release

16  in the employment context, and that by its plain

17  language states that.

18           So I always hate to be on the cutting

19  edge because that branch can get real thin real

20  quick, but unfortunately I don't see a case that

21  is directly on point interpreting this.  The

22  statute is fairly new, as we all know, but my view

23  is that it applies when it is an employment

24  situation, which is the allegation here, that it's

Page 34

1  the employer's responsibility, not a third party,

2  and I'm going to grant the 2-615 motion with

3  respect to 15(b), with prejudice.

4              15(a) does not require that a private

5  entity provide an individual with anything.  It

6  is -- what it states specifically, for the record,

7  is that a private entity in possession of

8  biometric identifiers or biometric information

9  must develop a written policy made available to

10 the public establishing a retention schedule and

11 guidelines for permanently destroying biometric

12 identifiers and biometric information, and it goes

13 on.  I don't think I need to go any further.

14              But with respect to the pleadings, I

15 think there needs to be more specificity than just

16 a recitation of the statute.  But I don't think

17 the pleadings correctly or accurately state that,

18 and I'm directing everyone's attention to

19 paragraph 44, "Furthermore, each defendant fails

20 to provide employees," that's not required, but I

21 am certainly going to give, with respect to a

22 15(a) allegation, the Plaintiff the opportunity to

23 replead.  So the 615 motion will be granted,

24 however, it will be granted without prejudice.

 1                    15(d), this is interesting.  15(d)

 2      provides that "no private entity in possession of

 3      a biometric identifier or biometric information

 4      may disclose, re-disclose or otherwise disseminate

 5      a person's or a customer's biometric identifier or

 6      biometric information, unless the subject of the

 7      biometric identifier or biometric information or

 8      the subject's legally authorized representative --

 9      there is it is again" -- "consents to the

10      disclosure or re-disclosure, the disclosure or

11      re-disclosure completes a financial transaction

12      requested or authorized by the subject, the

13      biometric identifier, or the biometric

14      information, or the subject's legally authorized

15      representative --" it's not applicable here --

16      "the disclosure or re-disclosure is required by

17      State or Federal Law or municipal ordinance, or

18      the disclosure is required pursuant to a valid

19      warrant or subpoena issued by a court of competent

20      jurisdiction."

21                    But what's in play here is no private

22      entity in possession of a biometric identifier or

23      biometric information may disclose re-disclose or

24      otherwise disseminate.  With respect to again, the

1     four corners of the pleadings, it seems to me that

2     there are not sufficient facts, there's not

3     sufficient specificity just to say it was

4     disclosed without more.

5                   And, again, like I did under (a), I'm

6     going to grant the motion; however, it's going to

7     be without prejudice to replead.  And so that will

8     be the order of the Court with respect to ADP's

9     motion.

10                  You're up.

11          MR. BOWERS:  Thank you, your Honor.  And

12    I apologize, I'm also getting over a cold, so I'll

13    do my best to speak up.

14          THE COURT:  No apologies necessary.

15                  Go ahead.

16          MR. BOWERS:  So given the fact that your

17    Honor has already addressed Polar Tech's argument

18    with respect to Plaintiff's Common Law negligence

19    claim, I'll just start turn my attention to the

20    statute of limitations issue that's before you.

21                  We filed a Section 619 motion with

22    respect to the statute of limitations --

23          THE COURT:  (a)(5)?

24          MR. BOWERS:  Correct, (a)(5)motion.

1                   As your Honor is well aware, BIPA

2    does not contain an expressed statute of

3    limitations.  This is an area that's being

4    litigated amongst circuit courts across Illinois,

5    and these lawsuits continue to be filed by

6    plaintiffs' attorneys in Northern Illinois and

7    across the state.

8                   It is Polar Tech's stance that a

9    one-year statute of limitations applies to

10   Mr. Cameron's BIPA claim because BIPA is a statute

11   that is concerned with the right of privacy and

12   the protection of privacy rights.

13                  Alternatively, Polar Tech submits

14   that in the event a one-year statute of

15   limitations does not apply, a two-year statute of

16   limitations applies to limit any claims of the

17   Plaintiffs and/or the putative class to two years

18   arising two years before the date of filing the

19   complaint, which in this case would be August 7th

20   of 2016.

21                  Based on the fact that the Illinois

22   Supreme Court's decision in Rosenbach v Six Flags

23   effectively transformed BIPA into not only a

24   strict liability statute, but also a penal

1    statute, as opposed to a remedial statute, as

2    Plaintiff asserts in his response brief.

3                    With respect to Polar Tech's

4    assertion that a one-year statute of limitation

5    applies -- this falls under Section 13-201 of the

6    Code of Civil Procedure, a one-year statute of

7    limitation applies in the event that there is a

8    publication --

9             THE REPORTER:  Your Honor, I need him to

10   speak up.

11            THE COURT:  Can you speak up a little bit

12   for the court reporter.

13            MR. BOWERS:  Yes.  Sorry.

14                    A one-year statute of limitation

15   applies to privacy claims in the event that there

16   is publication of the information that was, in

17   this case, purportedly collected, stored and, as

18   alleged in Plaintiff's, disseminated.

19                    In Plaintiff's Complaint, there are

20   allegations that biometric data was not only

21   collected and stored, but also disseminated to

22   third parties, ADP, and, quote, "other unknown

23   third parties."

24                    There is a case out of the First

1   District Appellate Court called Popko v

2   Continental Casualty Company.  That cite is 355

3   Ill. App. 3d 257.  It's a 2005 case out of the

4   First District.  In that case, an employee was

5   terminated from CNA Insurance, Continental

6   Casualty Insurance.

7                   After undergoing a performance review

8   in which he allegedly used profanity during this

9   performance review with his supervisor.  That

10  supervisor sent a memorandum to yet another

11  supervisor, a manager within the company, and the

12  plaintiff was ultimately terminated in that case.

13                  And in that case he brought a

14  defamation claim against his former employer, but

15  the focus of the court's opinion there was whether

16  or not there was publication.  And I bring this

17  particular case up, not for the defamation part of

18  the case, but to address the issue of publication.

19                  In that case, the court said that

20  there was publication solely by virtue of the fact

21  that information regarding the plaintiff's

22  performance review was transmitted by his

23  supervisor who was present at that performance

24  review to another individual within the company.

1   So in that case, an intra-office communication

2   from one individual to another, while not made

3   directly available to the public at large, can

4   constitute a publication.

5           And similarly here, that's what's

6   been alleged in Plaintiff's Complaint.  Plaintiff

7   has alleged that Polar Tech collected and stored

8   Mr. Cameron's biometric data by virtue of his

9   usage of providing scans of his finger on a time

10  clock system that was provided by ADP, and that

11  that information was then disseminated to a third

12  party, in this case ADP, and potentially to other

13  third parties.

14          BIPA itself is concerned with

15  publication, as seen in Section 15(c) and section

16  15(d).

17      THE COURT:  Can I stop and ask you a

18  question?

19      MR. BOWERS:  Sure.

20      THE COURT:  So the allegations in the

21  Complaint is that the Plaintiff was employed by

22  your client from February of 2018 until May of

23  2018, and this is a 619, so you admit all well

24  pled facts.  And this case was filed on 8/7 of

1    '18.  So would I be correct in assuming that what

2    you're directing my attention to would be the

3    class action component of this pleading?

4            MR. BOWERS:  That's correct.

5            THE COURT:  Go ahead.

6            MR. BOWERS:  So, yes, we are directing

7    your attention to the class action component for

8    this particular claim as opposed to Mr. Cameron's

9    actual dates of employment.  But as stated before,

10   BIPA does concern itself with publication in

11   Sections 15(c) and 15(d).

12           THE COURT:  But you would agree that, I

13   mean, the Complaint was filed even in the shortest

14   statute of limitation, which is a year that you're

15   asking me to consider, right?

16           MR. BOWERS:  Correct.

17           THE COURT:  Okay.  Go ahead.

18           MR. BOWERS:  I will concede the fact that

19   this complaint was filed within one year of

20   Mr. Cameron's employment.

21           THE COURT:  Okay.

22           MR. BOWERS:  But for purposes of the

23   class size, that will be determined down the road.

24   That's why I preface it now, because I don't want

Page 42

1    to waive this argument later.

2            THE COURT:  I understand.

3            MR. BOWERS:  BIPA does prohibit parties

4    from selling and trading or profiting by

5    dissemination of a person's biometric data and

6    also prohibits parties from disclosing

7    re-disclosing, or otherwise disseminating an

8    individual's biometric data, and this signals the

9    Illinois General Assembly's intent to regulate

10   dissemination and, therefore, publication of an

11   individual's biometric data to third parties.

12            Again, publication is not required,

13   that this data be made available to the public at

14   large, or that could be made available to the

15   public at large, it requires that it's transmitted

16   to a third party.  Because Illinois takes a more

17   narrow view of what "publication" means as opposed

18   to other jurisdictions in this country.

19            So, accordingly, we submit that a

20   one-year statute of limitations applies to

21   Mr. Cameron's claim.

22            Alternatively, if the Court is

23   inclined that to opine that the one-year statute

24   of limitations does not apply, Polar Tech submits

1    that a two-year statute of limitations applies,

2    because Mr. Cameron seeks a statutory penalty in

3    its prayer for relief.

4              BIPA provides liquidated damages of

5    $1,000 per negligent violation, and $5,000 for

6    intention and/or reckless violation of the Act.

7              Plaintiff asserts that a five-year

8    statute of limitations applies to his claim

9    because BIPA does not contain an expressed statute

10   of limitations.  And while BIPA itself does not

11   contain a specific statute of limitations, unless

12   a rule to the contrary applies, then the five-year

13   statute of limitations, the catch-all provision,

14   applies.  And that's exactly what that is, a

15   catch-all, a backup, if nothing else applies.

16             Here alternatively, a two-year

17   statute of limitations would apply should the

18   one-year statute of limitations not apply, because

19   the Supreme Court's decision in Rosenbach v Six

20   Flags not only transforms BIPA into a strict

21   liability statute, it also rendered it into a

22   penal statute.

23             A statute is there for penal if it

24   imposes automatic liability or violation of its

1    own terms, if it sets forth a predetermined amount

2    of damages, and if it imposes liability without

3    actual damages suffered by the plaintiff.

4                In Rosenbach, the Supreme Court held

5    that the plaintiff did not need to allege actual

6    damages in order to bring a claim underneath the

7    umbrella of the statute.  That is exactly what

8    happened here.

9                Plaintiff then attempts to rebut my

10   argument by saying that BIPA addresses a societal

11   concern, in this case regulating an individual's

12   privacy and their biometric data, which, fine, I

13   will concede that it may have been an intent.  But

14   a statute can both be penal and serve remedial

15   purposes.

16               In Plaintiff's response, they bring

17   up the Telephone Consumer Protection Act, and

18   whether -- in the case called Lay, whether or not

19   that statute was remedial or penal.  And in that

20   case, the court noted that the TCPA were provided

21   for treble damages, which were separate from the

22   liquidated damages contained within the statute.

23   That's a distinguishing feature from BIPA.

24               BIPA does not contain such a

1   provision.  It provides solely liquidated damages.

2   It provides punitive and deterrent goals to

3   prevent abuse of individual -- collection of an

4   individual's biometric data.  It is

5   distinguishable from TCPA.

6               And in the event that a one-year

7   statute of limitations does not apply, because the

8   statute is penal in nature, it has deterrent and

9   punitive goals, it provides a predetermined amount

10  of damages, it imposes liability without regard

11  for actual damages as articulated by the Illinois

12  Supreme Court in Rosenbach, and it imposes

13  automatic liability for a violation of its own

14  terms, which the Illinois Supreme Court rendered

15  the statute into a strict liability statute

16  through Rosenbach.

17              This statute is penal in nature, not

18  remedial, and alternatively, a two-year statute of

19  limitations would apply to this lawsuit in

20  general, to BIPA claims in general.

21          THE COURT:  Anything else?

22          MR. BOWERS:  That's all I have.

23          THE COURT:  You will get the last word.

24          MS. JENKINS:  Thank you, your Honor.

1            We would first like to acknowledge we

2    do agree with the court.  This isn't properly at

3    issue right now.  The Plaintiff's claims were

4    filed within one year, so even assuming the short

5    statute of limitations, this complaint cannot be

6    dismissed on those grounds alone.

7            Instead, this is Defendant's improper

8    attempt to limit the class size, which it's more

9    properly handled by the motion for class

10   certification or potentially a summary judgment.

11   But regardless, as it's been noted, BIPA has no

12   self-contained statute of limitations, and

13   therefore, the statute of limitations provided by

14   735 ILCS 5/13-205, which is the default five-year

15   limitations period, should apply.

16

17

18            The one-year statute of limitations

19   does not apply here for two reasons.  First, while

20   we might allege that Plaintiff's privacy has been

21   denigrated by virtue of Polar Tech violations of

22   BIPA, the true nature of a potential liability

23   here stems from Polar Tech's violation of the

24   statute itself.  This is not an action for slander

Page  47

1     or libel or publication of a matter violating the

2     right to privacy.

3                    The plain and unambiguous language of

4     Section 13-201, which provides the one-year

5     statute of limitations states that it applies to

6     actions for publication of a matter violating the

7     right to privacy, which is not what's being

8     alleged here.  The defendants in these cases can't

9     have it both ways saying that publication is a

10    necessary element for the statute of limitations,

11    but dissemination only takes place if it's made to

12    the public at large.

13                   The positions that have been taken,

14    and I understand that ADP and Polar Tech were

15    making separate arguments, but these types of

16    positions are inconsistent.  And further, the

17    plain and unambiguous language of BIPA doesn't

18    require us to allege publication, and therefore we

19    don't believe that BIPA falls within the one-year

20    statute of limitations period.

21                   Polar Tech, alternatively declares

22    that the two-year statute applies because it

23    thinks that BIPA is a penal statute; but penal

24    statutes impose automatic liability, which BIPA

1   does not.  It sets forth a predetermined amount of

2   damages, and BIPA does contain statutory damages

3   in the event that Plaintiff doesn't recover their

4   actual damages.

5              They also claim that BIPA imposes

6   damages without regard to the actual damages

7   suffered by the Plaintiff, but that's simply not

8   true.  If you read the statute, Section 14/20

9   provides that a plaintiff can recover actual

10  damages or statutory damages, whichever is

11  greater, and, therefore, BIPA is not a penal

12  statute.

13             It is analogous to the Telephone

14  Consumer Protection Act, or TCPA, which provides

15  that a plaintiff can recover actual damages or

16  $500 per each violation, whichever is greater.

17  The language is almost the same as the language in

18  BIPA.

19             And as the Illinois Supreme Court

20  recognized in Standard Mutual Insurance Company v

21  Lay, the TCPA is not a penal statute with that

22  identical statutory language, and therefore BIPA

23  shouldn't be considered one either.

24             Rosenbach didn't make BIPA a penal

1  statute.  It again reiterates that a plaintiff

2  could recover actual damages if they properly pled

3  and proved them or statutory damages.  And they

4  don't need to allege actual damages because the

5  statute provides statutory damages.  Therefore,

6  only the five-year statute of limitations remains.

7           And furthermore, Judge, no case or

8  court or judge has considered this issue, directly

9  or indirectly has adopted the Defendant's

10 position.  Every court that has considered this

11 issue has ruled in favor of the five-year statute

12 of limitations.  And I recognize that none of

13 those cases are binding on this court, but we do

14 think that they're persuasive in holding that

15 several judges across both the country and the

16 state have held that the five-year statute of

17 limitations applies.

18           And we filed with the court a notice

19 of supplemental authority.  The case Robertson v

20 Hostmark Hospitality Group, which I have copy of

21 if you need it today; and in that case Judge Cohen

22 in Cook County also held that the one-year and

23 two-year statute of limitations do not apply for

24 the reasons we have articulated, and agreed that

Page 50

1    the five-year statute of limitations period is not

2    applicable here.

3              Other cases, in ruling on motions for

4    class certification, have held that the five-year

5    statute of statute of limitations period is

6    applicable with respect to the class size, and

7    those cases are Alvarado v International Laser

8    Production Inc., Case No. 18-cv-07756 in the

9    Northern District of Illinois decided on June 19

10   of 2019; Roberson v Symphony Post Acute Network,

11   Case No. 17-L-733 in the Circuit Court of St.

12   Clair County, in March of 2019; and the Facebook

13   Biometric Privacy Litigation case pending in the

14   Northern District of California, which was

15   determined and decided in April of 2018.

16             And for these reasons, we believe

17   that the five-year statute of limitations period

18   is the one that applies to BIPA and not this

19   shorter one or two-year periods.

20        THE COURT:  Thank you.

21             Last word.

22        MR. BOWERS:  Your Honor, just a couple of

23   things to address, and I'll do my best to make

24   this quick.

1          First, Ms. Jenkins has stated earlier

2    that the allegations contained in this complaint

3    focused on the violation of the statute based on

4    the collection of biometric data.  They have also

5    alleged that this data was disseminated to third

6    parties, and BIPA itself expressly prohibits

7    dissemination and publication of data to third

8    parties.

9          That is part of the violation of

10   BIPA.  There are multiple ways to violate the

11   statute:  By profiting, by collecting, by

12   capturing, by storing, by disseminating, by

13   publishing.

14         Publishing and collecting were both

15   alleged in this complaint.  BIPA expressly

16   prohibits publishing and disseminating biometric

17   data to third party.  That was what was alleged in

18   this complaint.  So, accordingly, we would submit

19   that a one-year statute of limitations does apply

20   to this claim.

21         Secondly, with respect to the

22   argument of the two-year statute of limitations,

23   as I have stated before, this statute does contain

24   express liquidated damages based on the type of

1    violation of the statute.  It imposes liability

2    automatically for violation of its terms based

3    upon a plain reading and interpretation of the

4    Illinois Supreme Court's decision in Rosenbach.

5                    This statute has been transformed

6    into a strict liability statute, and it has been

7    transformed into a penal statute, and

8    alternatively, a two-year statute of limitations

9    should apply to a BIPA claim.

10                   And, finally, I'll just bring up the

11   authority, the supplemental authority that

12   Ms. Jenkins has just brought to your attention.

13   None of these cases are -- none of these decisions

14   are binding on this court.  We have a decision out

15   of the Northern District of Illinois, at a

16   St. Clair County, and out of the Northern District

17   of California.  None of those cases, none of those

18   decisions are a binding precedent on this court.

19                   And so accordingly, Polar Tech

20   submits that those decisions should be disregarded

21   as they are not binding on this court.

22                   THE COURT:  Thank you.

23                   Excellent job.  But as I thought

24   through this, it seems to me that this is

1   premature.  I don't have before me anything more

2   than the complaint which pertains to the named

3   Plaintiff.  I understand why you did what you did.

4   You want to preserve this.  It is preserved.  But

5   I'm going to enter and continue my decision on

6   that until, I don't know, class certification,

7   summary judgment.

8              But certainly, in my view, the record

9   needs to be developed much more than it is, but

10  Polar Tech is in no way, shape, or form

11  prejudiced, precluded, foreclosed from addressing

12  this as we get further down the road.  So I am not

13  ruling on this.  I'll enter and continue the issue

14  for a later date.

15             That being said, how much time does

16  Plaintiff need to replead on the Counts or the

17  sections that I left up?

18         MS. JENKINS:  30 days, your Honor, if

19  that's okay with you.

20         THE COURT:  That's reasonable.  Here's

21  the offer that I will make.  Okay?  I know this is

22  isn't the only file on your respective desks.  I

23  don't believe in bringing back attorneys unless

24  we're going to accomplish something of substance,

1    so I will throw this out.

2              I don't know what your respective

3    thoughts are, obviously, because you haven't seen

4    the amended pleading, but I'm affording you ample

5    opportunity to decide whether you're going to file

6    a motion to dismiss; I'm willing to do that.

7              You're all excellent lawyers.  You

8    can work out a briefing schedule.  I can give you

9    an outside date right now for a hearing date.  If

10   it ends up being that you file an answer, we could

11   just use that as a status date on discovery, et

12   cetera.

13             Would you like to take me up on my

14   offer.

15        MR. LAYDEN:  It's certainly fine with

16   ADP, your Honor.

17        THE COURT:  Why don't we kick this out

18   for status/argument.  How about if we go to the

19   beginning of December?  That gives each side a

20   full opportunity to work out a briefing schedule,

21   with the caveat that I get courtesy copies one

22   week before, but I'll just throw out arbitrarily

23   Wednesday, December 4th at 10:00 for argument or

24   status.

Page 55

1            MR. LAYDEN:  Your Honor, that day is not

2     terrific for me.  Any other day that week is fine.

3            THE COURT:  December the 6th?  That's a

4     Friday at 10:00.

5            MR. STEPHAN:  Judge, can we suggest maybe

6     pushing that to January.  The holidays are just --

7     I'm always jammed.

8            THE COURT:  I'm not opposed at all.

9     Might I suggest the 17th, 10:00?

10            MR. LAYDEN:  Fine with me.

11            THE COURT:  Argument or status?

12            MR. BOWERS:  Judge, I'm scheduled to be

13     out of town that day.  Is there a day that week,

14     maybe earlier that week?

15            THE COURT:  15th?

16            MR. BOWERS:  That's fine, your Honor.

17            MR. LAYDEN:  That works.

18            MR. STEPHAN:  That's good.

19            THE COURT:  Same thing.  10:00 status or

20     argument.  And then you guys work out a briefing

21     schedule.  If somebody wants to e-mail an order,

22     if it gets to that point, I'd be happy to enter

23     the order without a court appearance.  Okay?

24                   So if you'd indicate today for the

Page 56

1   reasons stated on the record, and then just go

2   from there.

3               Anything else we can accomplish?

4          MS. JENKINS:  No, your Honor.

5          MR. STEPHAN:  Thank you, Judge.

6          MR. LAYDEN:  Thanks, your Honor.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 57

1    STATE OF ILLINOIS  )

2                      )

3    COUNTY OF C O O K  )

4

5              NOHEMI SALAZAR-PITTS, a Certified

6    Shorthand Reporter doing business in and for the

7    State of Illinois certifies that she reported in

8    shorthand the proceedings of said hearing, and

9    that the foregoing is a true and correct

10   transcript of her shorthand notes so taken as

11   aforesaid and contains the proceedings given at

12   said hearing.

13

14

15              _____
                Certified Shorthand Reporter
16

17

18

19

20

21

22

23

24

# Exhibit F

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JUDGE DAVID B. ATKINS

| | |
|---|---|
| FELIPE BERNAL, individually and on behalf of others similarly situated,<br><br>                Plaintiff,<br><br>            v.<br><br>ADP, LLC,<br>                Defendant. | AUG 23 2019<br>Circuit Court-1879<br><br>No. 2017-CH-12364<br><br>Calendar 16<br><br>Judge David B. Atkins |

### MEMORANDUM OPINION AND ORDER

THIS CASE COMING TO BE HEARD on Defendant ADP, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to 735 ILCS 5/2-615, the court, having considered the briefs submitted and being fully advised in the premises,

HEREBY FINDS AND ORDERS:

### *Background*

Plaintiff, Felipe Bernal, as an employee of Rockit Ranch Productions, Inc. ("Rockit"), was required to use biometric scanning technology to "clock-in" and "clock-out." The biometric technology was provided and serviced by Defendant ADP, LLC. Plaintiff alleges the use of his biometric identifying information during his employment with Rockit was improperly acquired, possessed, and disseminated in violation of sections 740 ILCS 14/15 (a)-(d) of the Biometric Information Privacy Act ("BIPA"). Plaintiff originally brought suit against Rockit for said violations, but he subsequently amended his Complaint to drop all allegations against Rockit and instead claim that Defendant violated BIPA. Defendant now seeks to dismiss all counts.

### *Standard of Review*

A 2-615 motion to dismiss challenges the complaint's legal sufficiency based on facial defects.[1] The court assumes all well-pleaded facts and their reasonable inferences in the complaint as true, viewing the allegations in the light most favorable to the plaintiff.[2] As Illinois is a fact-pleading jurisdiction, "a plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action."[3] Mere conclusions of law and unsupported conclusory factual allegations are insufficient to survive a 2-615 motion to dismiss.[4] A 2-615 motion to dismiss does not raise affirmative factual defenses.[5] "A

---

[1] *Beacham v. Walker*, 231 Ill. 2d 51, 57 (2008).
[2] *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 735 (2009).
[3] *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 355, (2004).
[4] *Alpha School Bus*, 391 Ill. App. 3d at 736.

motion to dismiss should be granted only if the plaintiff can prove no set of facts to support the cause of action asserted."[6]

<em>Discussion</em>

Count I of Plaintiff's Complaint alleges violations of four separate clauses within BIPA. The Court addresses each alleged violation separately.[7]

## Applicability of § 15(b).

Plaintiff asserts that Defendant violated § 15(b), which imposes certain preconditions that private entities must comply with before they can "collect, capture, purchase, receive through trade, or otherwise obtain" an individual's biometric information. Defendant presents a compelling argument that § 15(b) should not apply to an entity like ADP, pointing out that language included by the legislature differs from the language included in the other subsections and suggests that the legislature intended for possession alone to not be enough to make an entity subject to § 15(b). Indeed, § 15(b)'s requirement that the private entity whose actions the subsection is meant to regulate must receive a "written release" from the subject of the biometric identifier or biometric information or their legally-authorized representative does suggest that the legislature did not intend for the subsection to apply to a third party entity as Defendant seems to be here.[8] Here, Defendant is not Plaintiff's employer. While Plaintiff correctly contends that BIPA can be applied outside of an employment situation, there is nothing to suggest that BIPA was intended to apply to situations wherein the parties are without any direct relationship.[9] Moreover, from the facts as they are alleged, the Court can infer that this case fits squarely within an employment context. All of Plaintiff's claims stem from Rockit's requirement that employees participate in biometric scanning technology. That Rockit obtained the technology from Defendant does not remove Plaintiff's case from existing within the context of his employment by Rockit. As Defendant notes, to read BIPA as requiring that a third party provider of the biometric timeclock technology, without any direct relationship with its customers' employees, obtain written releases

---

[5] *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 382 (2004).

[6] *Kaiser v. Fleming*, 315 Ill. App. 3d 921, 925, (2000).

[7] In his response to Defendant's motion to dismiss, Plaintiff represents that he "voluntarily dismisses his negligence claim (Count II) against Defendant," thus rendering as moot Defendant's motion to dismiss Count II.

[8] As Defendant notes in its motion, the BIPA's definition of "written release" clearly limits its applicability, in the context of employment, to the relationship that exists between employer and employee. 740 ILCS 14/10.

[9] In *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186 (2019), the Supreme Court noted that the purpose of § 15(b) is to vest "in individuals and customers the right to control their biometric information without requiring notice before collection and giving them the power to say no by withholding consent." 2019 IL 123186 at ¶34. Given the Supreme Court's interpretation of § 15(b)'s purpose, there is little reason to believe that its applicability should extend beyond the point at which an individual has the right to withhold consent. Here, Plaintiff's right to withhold consent can be exercised by refusing Rockit's authority to collect his biometric information.

from said employees would be unquestionably not only inconvenient but arguably absurd.[10]

Yet, based on the pleadings, as written, the Court's decision must ultimately turn on the insufficiency of Plaintiff's Complaint as to § 15(b). Plaintiff has failed to allege facts sufficient enough for the Court to properly assess Defendant's actual involvement, relative to the biometric scanning technology, beyond the fact that Defendant supplied Rockit with the technology. In order for the Court to determine whether or not § 15(b) is applicable here, Plaintiff's Complaint must include factual allegations of what Defendant's role relative to Plaintiff's biometric information is. Most of Plaintiff's claims that are relevant to § 15(b) are aimed at what the technology Defendant provides to Rockit allegedly does. In so far that Plaintiff's claims allege particular action on Defendant's part, the allegations are conclusive in nature.[11] Therefore, Defendant's motion to dismiss, as to the portion of Count I alleging a violation of § 15(b) of BIPA is GRANTED.

**Whether § 15(a) is Moot.**

Plaintiff alleges a breach of § 15(a), which requires private entities in possession of biometric information to:

> "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers ... when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric information must comply with its established retention scheduled and destruction guidelines."

The language in § 15(a) seems to make clear that a private entity is required to comply with its established retention schedule and destruction guidelines whenever in possession of biometric information. The subsection seems to stipulate that the schedule and guidelines must be written and made available to the public. Therefore, if a private entity is in possession of biometric information, but lacks an established retention schedule and destruction guidelines, it stands to reason that said private entity could be found to be in violation of § 15(a).

Notwithstanding the requirement that a private entity in possession of biometric information have an established retention schedule and destruction guidelines, there is no explicit requirement that the schedule or guidelines exist "prior to" possession of the

---

[10] "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *People v. Hanna*, 207 Ill. 2d 486, 498 (2003) (citing *Croissant v. Joliet Park Dist.*, 141 Ill. 3d 449, 455 (1990) ("Statutes are to be construed in a manner that avoids absurd or unjust results")).

[11] See Plaintiff's Complaint at ¶ 3 ("Defendant ADP is capturing, storing, using, and/or disseminating the biometrics of Plaintiff ...")

biometrics information.  Yet, regarding § 15(a), Plaintiff alleges that "[p]rior to taking Plaintiff's biometrics, Defendant did not make publicly available any written policy as to a biometric retention schedule and guidelines for permanently destroying the collected biometrics."  While this may be true, such an allegation does not exclude the possibility that Defendant made available to the public an established schedule and guidelines when, and not before, it was in possession of Plaintiff's biometric information.   Plaintiff's Complaint, as written, does not sufficiently allege an actual violation of § 15(a), and thus, fails to state a claim.  Defendant's motion to dismiss, as to the portion of Count I asserting a violation of § 15(a) of BIPA is GRANTED.

**Whether Plaintiff has Sufficiently Alleged a Violation of § 15(c).**

Plaintiff alleges an infraction of § 15(c), which prohibits private entities from selling, leasing, trading, or otherwise profiting from an individual's biometric information.[12]  Here, Plaintiff's contends that the allegations in his Complaint, "when combined with reasonable inferences that can be drawn therefrom, establish that Defendant obtains and stores the biometric information captured by its devices, which it in turn sells, leases, or otherwise makes commercially available to Plaintiff's employer for the purposes of biometric timekeeping."[13]  The court disagrees.  Paragraphs 11 and 26 of Plaintiff's Complaint allege that Defendant disseminates biometric information to "third parties, including vendors for timekeeping, data storage, and payroll purposes."  Plaintiff's Complaint does not contain any allegation that Defendant sold, leased, traded, or otherwise profited from anyone's biometric information.  Thus, since Plaintiff's Complaint only alleges facts sufficient to demonstrate that Defendant passes biometric data to third party partners for purposes other than profit, Defendant's motion to dismiss as to the portion of Count I asserting a violation of § 15(c) is GRANTED.

**Whether Plaintiff has Sufficiently Alleged a Violation of § 15(d).**

Defendant provides a compelling argument regarding whether § 15(d) is even applicable in this case.  Namely, that Plaintiff's implication of Defendant's allowing biometric information to pass to data storage vendors and payroll services does not qualify as instances of "disclosure" or "dissemination" under BIPA, but rather should be considered a form of mere transmission.  However, to the extent that Defendant's argument seems to suggest an affirmative factual defense, it would be inappropriate for the Court to entertain this line of argument on a Section 2-615 motion to dismiss.

Turning to the Complaint as pled, Plaintiff asserts a violation of § 15(d), which establishes certain preconditions with which private entities must comply before they "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric … information."  Only twice in Plaintiff's Complaint does he allege any such disclosure; each instance consists of a single statement that Defendant's technology "allows for and resulted in" the dissemination of Plaintiff's biometric information to third parties,

---

[12] See 740 ILCS 14/15(c).
[13] See Plaintiff's response to Defendant's motion to dismiss at pg. 8.

including vendors for timekeeping, data storage, and payroll purposes."[14]   These allegations fall short of sufficient factual pleading, because they are void of any facts to support Plaintiff's allegation that Defendant has violated § 15(d).   Suggesting that the technology Defendant created allows for the dissemination of biometric information is not an allegation of the Defendant's disseminating biometric information.   Thus, Defendant's motion to dismiss, as to the portion of Count I asserting a violation of § 15(d) is GRANTED.

WHEREFORE the Court enters an order as follows:

a.  Defendant ADP, LLC's motion to dismiss Plaintiff Felipe Bernal's Complaint is GRANTED, and Count I is dismissed *without prejudice.*

b.  Plaintiff has until September 20, 2019 to file an amended complaint, with facts consistent with this Order.

c.  This matter is set for further status to October 24, 2019 at 10:30 a.m. in courtroom 2102.

ENTERED:

JUDGE DAVID B. ATKINS

AUG 23 2019

Circuit Court-1879

_____

Judge David B. Atkins

The Court.

_____

[14] See Plaintiff's response to Defendant's motion to dismiss at ¶¶11, 26.