1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN VANCE and TIM JANECYK, for
themselves and others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC.,

Defendant.

No. 2:20-cv-01084-RAJ

**PLAINTIFFS' OPPOSITION TO
DEFENDANT AMAZON.COM,
INC.'S MOTION TO DISMISS**

**ORAL ARGUMENT
REQUESTED**

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

1

**TABLE OF CONTENTS**

2
TABLE OF AUTHORITIES......................................................................................... ii

3
INTRODUCTION .....................................................................................................1

4
FACTUAL BACKGROUND .....................................................................................2

5

6
I.   The Illinois Biometric Information Privacy Act ...........................................2

7
II.  Defendant's Unlawful Obtainment and Use of Plaintiffs' Biometric Data ........................3

8
ARGUMENT .............................................................................................................3

9
Standard of Review ...................................................................................................3

10
I.   Illinois' Extraterritoriality Doctrine Does Not Bar Plaintiffs' BIPA Claims .....................4

11
     A.   Defendant's Extraterritoriality Argument Is Premature ...........................4

12

13
     B.   The Relevant "Circumstances" of This Case Occurred
          "Primarily and Substantially" in Illinois ...............................................5

14
II.  BIPA Does Not Violate the Dormant Commerce Clause ...........................................7

15
     A.   Legal Standards.....................................................................................8

16

17
     B.   BIPA Does Not Directly Control Commerce Occurring
          Wholly Outside of Illinois ...................................................................9

18

19
     C.   BIPA Does Not Project Illinois' Regulatory Scheme
          onto Washington ................................................................................11

20
III. BIPA Applies to Biometric Data Derived from Photographs.............................14

21
IV.  Plaintiffs Have Adequately Alleged a § 15(b) Violation Because
     Defendant Collected, Obtained and Used Their Biometric

22
     Data without Notice and Consent ...........................................................17

23
V.   Plaintiffs Have Adequately Alleged that Defendant Profited from
     their Biometric Data..............................................................................21

24

25
VI.  Plaintiffs Have Adequately Pled a Claim for Unjust Enrichment ....................22

26
CONCLUSION ........................................................................................................24

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – Page i

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# TABLE OF AUTHORITIES

## CASES

*Ades v. Omni Hotels Mgm't Corp.*,
46 F.Supp.3d 999 (C.D. Cal. 2014)..........................................................................9, 10, 12, 13

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
729 F.3d 937 (9th Cir. 2013) ..........................................................................................10

*Avery v. State Farm Mut. Auto. Ins. Co.,*
835 N.E.2d 801 (Ill. 2005) ............................................................................................4, 5, 6

*Bernal v. ADP, LLC*, No. 2017-CH-12364
(Cook Cty. Ill. Cir. Ct. Aug 23, 2019)...........................................................................18, 20

*Bryant v. Compass Grp USA, Inc.*, 958 F.3d 617 (7th Cir. 2020)...........................................6, 23

*Cameron v. Polar Tech Indus., Inc. & ADP, LLC*, No. 2019-CH-000013
(DeKalb Cty. Ill. Cir. Ct. Aug. 23, 2019).........................................................................18

*Carcieri v. Salazar*, 555 U.S. 379 (2009)...............................................................................15

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015).......................................................................................8, 10

*Coe v. Philips Oral Healthcare Inc.*, No. 13-cv-518,
2014 WL 5162912 (W.D. Wash. Oct. 14, 2014).............................................................23

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249 (1992)......................................................21

*Cousineau v. Microsoft Corp.,*
 992 F. Supp. 2d 1116 (W.D. Wash. 2012) ...................................................................23

*Figueroa v. Kronos, Inc.,*
454 F.Supp.3d 772 (N.D. Ill. 2020)...............................................................................17, 18

*Fox v. Holland Am. Line, Inc.,* No. C14-1081-JCC,
2016 WL 258522 (W.D. Wash. Jan. 21, 2016) .............................................................10

*Gravquick A/S v. Trimble Navig. Int'l Ltd.*, 323 F.3d 1219 (9th Cir. 2003) ...............................8

*Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989) ......................................................................9, 11

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – Page ii

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

*Heard v. Becton, Dickinson & Co.*,
440 F.Supp.3d 960 (N.D. Ill. 2020).................................................................19

*In re Facebook Biometric Info. Privacy Litig.*,
185 F.Supp.3d 1155 (N.D. Cal. 2016)........................................12, 14, 16, 23

*In Re Facebook Biometric Info. Privacy Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) .........................................................................5

*In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-3747-JD,
2018 WL 2197546 (N.D. Cal., May 14, 2018) .................................................7

*In re Tracht Gut, LLC*, 836 F.3d 1146 (9th Cir. 2016) ...................................4

*Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018).................................................3

*Kelley v. Microsoft Corp.*, 251 F.R.D. 544 (W.D. Wash. 2008) ...............23, 24

*Mabry v. Standard Industries, Inc.*, No. 20 C 376,
2020 WL 2112372 (N.D. Ill. May 4, 2020) .....................................................22

*Monroy v. Shutterfly, Inc.*, No. 16 C 10984,
2017 WL 4099846 (N.D. Ill. Sept. 15, 2017)..................................4, 7, 14, 16

*Morrison v. YTB Intern., Inc.*, 649 F.3d 533 (7th Cir. 2011) ......................20

*Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847
(N.D. Ill. 2006) ......................................................................................................22

*Namuwonge v. Kronos, Inc.*, 418 F.Supp.3d 279 (N.D. Ill. 2019).............18

*Nat'l Ass'n of Optometrists and Opticians v. Harris*,
682 F.3d 1144 (9th Cir. 2012)............................................................................8

*Nat'l Fed'n of the Blind v. Target Corp.*,
452 F.Supp.2d 946 (N.D. Cal. 2006)..............................................9, 12, 13, 14

*National Collegiate Athletic Association v. Miller*,
10 F.3d 633 (9th Cir. 1993)...............................................................................13

*Neals v. PAR Tech. Corp.*, 419 F.Supp.3d 1088 (N.D. Ill. 2019) ..........6, 7, 18

*Norberg v. Shutterfly, Inc.*, 152 F.Supp.3d 1103 (N.D. Ill. 2015)...........14, 20

*Patel v. Facebook, Inc.*, 290 F.Supp.3d 948 (N.D. Cal. 2018) .................23

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – Page iii

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019)....................................................4, 5, 6

*Pooh-Bah Enter., Inc v. Cnty of Cook*, 905 N.E.2d 78 (Ill. 2009) ...........................................21

*Poole v. Benjamin Moore & Co., Inc.*, No. 18-cv-5168,
2018 WL 2716806 (W.D. Wash. Jun. 6, 2018)....................................................................23

*Quadion Corp. v. Mache*, 738 F. Supp. 270 (N.D. Ill. 1990)...................................................23

*Rivera v. Google, Inc.*, 238 F.Supp.3d 1088 (N.D. Ill. 2017) ........................................... *passim*

*Rocky Mountain Farmers Union v. Corey,* 730 F.3d 1070 (2013) ...................................8, 9, 11

*Rosenbach v. Six Flags Entm't Corp.,* 129 N.E.3d 1197 (Ill. 2019) ..............................1, 20, 23

*Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015).....................................11

*South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018)..........................................7, 13

*State v. Heckel*, 24 P.3d 404 (Wash. 2001) .............................................................................14

*Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148,
2019 WL 5064732 (N.D. Ill. Oct. 9, 2019) ..........................................................................7

*Vance v. Int'l Business Machines Corp.*, No. 20-cv-577,
2020 WL 5530134 (N.D. Ill. Sept. 15, 2020)................................................................. *passim*

## STATUTES

740 ILCS 14/1 ...................................................................................................1, 2, 10, 12

740 ILCS 14/15(b)..................................................................................................2, 17, 20

740 ILCS 14/15(c).......................................................................................................2, 21

740 ILCS 14/5(c)..............................................................................................................3

740 ILCS 14/10 ...............................................................................................................2

RCW 19.375.010..............................................................................................................12

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – Page iv

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

1

## RULES

2

Fed. R. Civ. P. Rule 12(b)(6) .................................................................................. 7, 22

3

## OTHER AUTHORITIES

4

Michele Merler, *et al., Diversity in Faces*, IBM Research AI (Apr. 10, 2019) ........................17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## INTRODUCTION

This is a case about Illinois residents' ability to protect their biometric data and privacy. The Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS §14/1, *et seq.*, "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.,* 129 N.E.3d 1197, 1206 (Ill. 2019). The Class Action Complaint ("Complaint") of Plaintiffs Steven Vance and Tim Janecyk alleges that Defendant Amazon.Com, Inc. ("Amazon") deprived them and putative Illinois class members ("Class Members") of that statutorily-guaranteed right when it collected, obtained, used and profited from their biometric identifiers and information ("Biometric Data") without providing the notice and obtaining the consent required by BIPA. The Complaint also alleges unjust enrichment.

While Defendant argues that BIPA violates Illinois' extraterritoriality doctrine and the dormant Commerce Clause, courts have overwhelmingly rejected these arguments, especially at this early stage. Plaintiffs' allegations and the reasonable inferences therefrom make clear that the relevant conduct and harms at issue occurred in Illinois.

Defendant's remaining arguments likewise fail. While oft asserted by defendants in BIPA cases, no court has found that BIPA exempts Biometric Data derived from scans of photographs. Any other conclusion would gut BIPA's express goal of allowing Illinois residents to control their Biometric Data. Defendant's claim that BIPA does not actually mean what it says—*i.e.*, (a) §15(b) does not apply to entities that "obtain" Biometric Data; and (b) § 15(c) does not prohibit entities from "profiting" from Biometric Data—ignores basic canons of statutory construction and is premised on a misinterpretation of existing authority. Defendant's argument for dismissal of Plaintiffs' unjust enrichment claim fairs no better. Contrary to

Defendant's contention, Plaintiffs need not allege "economic expense" and, even if they did, Plaintiffs' BIPA claims are for economic and informational harm, not ordinary privacy harms.

Notably, a court in the Northern District of Illinois recently denied a motion to dismiss in a BIPA case based on many of the same arguments Defendant makes here. *See Vance v. Int'l Business Machines Corp.* ("*IBM*"), No. 20-cv-577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020). In that case, Plaintiffs sued International Business Machines Corporation ("IBM") based on the same Diversity in Faces biometric dataset (the "Dataset") at issue in this case. Just as the court in *IBM* denied the defendant's motion to dismiss, this Court should do the same here.

## FACTUAL BACKGROUND

### III.  The Illinois Biometric Information Privacy Act

BIPA strictly regulates an individual's Biometric Data. *See* 740 ILCS § 14/1, *et seq.* Under Illinois law, biometric identifiers include a "scan of … face geometry," and biometric information is "any information … based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. BIPA prohibits a private entity from, among other things: (a) collecting, capturing or otherwise obtaining an individual's Biometric Data without providing written notice and obtaining a written release; and (b) selling, leasing, trading or otherwise profiting from an individual's Biometric Data. *See* 740 ILCS §§ 14/15(b)-(c).

In enacting BIPA, the Illinois General Assembly recognized the sensitive and unique nature of Biometric Data:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 2

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 ILCS § 14/5(c).

## IV.  Defendant's Unlawful Obtainment and Use of Plaintiffs' Biometric Data

At relevant times, Plaintiffs Steven Vance and Tim Janecyk were and remain Illinois residents. Dkt. 1 ¶¶ 6-7. Both Plaintiffs used the photo-sharing site Flickr and uploaded the photographs at issue to Flickr from their computers in Illinois. *Id.* ¶¶ 66-68, 75-76.

In violation of BIPA, Defendant collected, obtained, used and profited from Plaintiffs' and Class Members' Biometric Data. *See id.* ¶¶ 69-73, 77-81. Specifically, Defendant obtained IBM's biometric Dataset, which IBM had created by performing facial geometric scans on photographs that had been uploaded to Flickr, including Plaintiffs' photographs. *Id.* ¶¶ 28-32, 42-46, 61-64. Defendant used the Dataset to improve its facial recognition software and generate profits. *Id.* ¶¶ 54-65, 83. The Dataset included the Biometric Data, the underlying photographs and corresponding metadata (including geo-tags relating to where the photograph was taken or uploaded), and links to the Flickr profile of each photograph's owner.[1] *Id.* ¶¶ 48-49, 52-53. IBM and Defendant failed to notify or receive the consent of the individuals in the photographs regarding the collection of their Biometric Data. *Id.* ¶¶ 43, 47-48, 70-72, 78-80, 100.

## ARGUMENT

### Standard of Review

At the motion to dismiss stage, the court "take[s] all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (internal quotation marks omitted). The

---

[1] Plaintiffs' Flickr profiles make clear that they are Illinois residents. *Id.* ¶¶ 68, 70, 76, 78.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 3

1    court must "draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836

2    F.3d 1146, 1150 (9th Cir. 2016).

3    **I.    Illinois' Extraterritoriality Doctrine Does Not Bar Plaintiffs' BIPA Claims.**

4       **A.    Defendant's Extraterritoriality Argument Is Premature.**

5           Defendant contends that Illinois' extraterritoriality doctrine bars Plaintiffs' BIPA claims.

6    Dkt. 18 at 13-15.[2] Courts have soundly rejected the contention, especially at this early stage. *See*

7    *IBM*, 2020 WL 5530134, at *3; s*ee also Patel v. Facebook, Inc*., 932 F.3d 1264, 1275-76 (9th

8    Cir. 2019); *Rivera v. Google, Inc*., 238 F.Supp.3d 1088, 1100-02 (N.D. Ill. 2017); *Monroy v.*

9    *Shutterfly, Inc*., No. 16 C 10984, 2017 WL 4099846, at *5-7 (N.D. Ill. Sept. 15, 2017).

10   According to the Illinois Supreme Court, "there is no single formula or bright-line test for

11   determining whether a transaction occurs within this state. Rather, each case *must be decided on*

12   *its own facts.*" *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 854 (Ill. 2005)

13   (emphasis added); *see also Morrison v. YTB Intern., Inc.*, 649 F.3d 533, 538 (7th Cir. 2011).

14           Prior to filing this case, Plaintiffs sued IBM for alleged BIPA violations in connection

15   with the Dataset. *See IBM*, 2020 WL 5530134, at *1. As here, no direct relationship existed

16   between IBM and Plaintiffs, and Plaintiffs did not upload their photographs directly to IBM. *See*

17   *id.* at *1. Like Defendant, IBM sought dismissal on extraterritoriality grounds. *Id.* at *3. The

18   court denied the motion, holding that the determination of whether the events giving rise to the

19   suit occurred primarily and substantially in Illinois "is a highly fact-based analysis that is

20   generally inappropriate for the motion to dismiss stage." *Id.*; *see also Rivera*, 238 F.Supp.3d at

21   1100-02; *Monroy*, 2017 WL 4099846, at *5-7. The same is true here.

---

[2] Citations to page numbers of docketed entries are to the ECF page numbers.

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

1    Defendant disputes this conclusion, arguing that dismissal is not premature because

2    Plaintiffs did not upload their photographs directly to Defendant's systems from an Illinois

3    device. Dkt. 18 at 14-15. The distinction is meaningless and inaccurate. *IBM* did not involve

4    plaintiffs who uploaded their photographs directly to the defendant's systems, yet the court

5    found IBM's extraterritoriality argument to be premature. 2020 WL 5530134, at *1, 3. Further,

6    contrary to Defendant's contention (Dkt. 18 at 14), *Patel* did not involve class members who

7    necessarily uploaded their photographs to Facebook's systems. In *Patel*, the Ninth Circuit: (a)

8    rejected Facebook's contention that Illinois' extraterritoriality doctrine precluded certification

9    of a class of Illinois Facebook users; and (b) premised class membership merely on whether

10   Facebook had created and stored an Illinois user's face template—with no regard as to how

11   Facebook obtained the underlying photograph. *See* 932 F.3d at 1275-76. Finally, as a practical

12   matter, the location of an upload does not convert a factual argument into a legal one.

13

14   **B.    The Relevant "Circumstances" of This Case Occurred "Primarily and
        Substantially" in Illinois.**

15

16         Under an *Avery* fact analysis, the Court still should deny Defendant's motion because

17   the relevant circumstances of this case occurred primarily and substantially in Illinois. *See* Dkt.

18   1. Indeed, "[n]one of the class members are non-residents suing under Illinois law, which is the

19   paradigmatic situation for the presumption against the extraterritorial application of local law."

20   *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 547 (N.D. Cal. 2018) (citing

21   *Avery*, 835 N.E.2d 801); *see* Dkt. 1 ¶¶ 6-7, 83.

22

23         In *Avery*, the court found that the relevant circumstances of alleged fraudulent

24   transactions occurred "primarily and substantially" within the state where: (a) the plaintiffs

25   resided; (b) the deception or "failure to disclose" occurred; and (c) the plaintiffs incurred their

26

injury, among other factors. 835 N.E.2d at 854. These factors demonstrate that the relevant circumstances herein occurred primarily and substantially in Illinois.

First, the Complaint alleges that Plaintiffs resided in Illinois and uploaded the relevant photographs from Illinois. Dkt. 1 ¶¶ 6-7, 66, 75. Second, Defendant's "failure to disclose" occurred in Illinois—*i.e.*, Defendant's failure to provide the requisite notice under BIPA or obtain the requisite consent occurred in Illinois. *See Rivera,* 238 F.Supp.3d at 1102 ("lack of consent" occurs where the person is located when deprived of the necessary information); *cf. Neals v. PAR Tech. Corp.,* 419 F.Supp.3d 1088, 1092 (N.D. Ill. 2019) (cited by Defendant; the act of collecting an Illinois resident's data creates the "relationship" regulated by BIPA).

Third, Plaintiffs' injuries occurred in Illinois. *See* Dkt. 1 ¶ 82-83. The Seventh Circuit has recently likened a defendant's collection of a victim's biometric data without providing notice and obtaining "informed consent" to an invasion of the victim's "private domain, much like an act of trespass would be . . . ." *See Bryant v. Compass Grp USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020). That "invasion" or "trespass" occurs in Illinois, the location of the victim's "private domain." *See id.*

While Defendant notes that it obtained the Dataset online from IBM (*id.* at 13), that action does not impact the analysis of the relevant considerations discussed above. Further, the Ninth Circuit has observed that "it is reasonable to infer that the [Illinois] General Assembly contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state." *Patel*, 932 F.3d at 1276. Obtaining Illinois residents' Biometric Data online is not an end-around BIPA.

To the extent Defendant's reference to obtaining the Dataset online is intended to show that it did not physically collect Plaintiffs' and Class Members' Biometric Data in Illinois, the

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 6

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

argument is unavailing. The Supreme Court has held  that given the social and economic changes

of the "Cyber Age," it is no longer appropriate to use the dormant Commerce Clause to "limit[]

the lawful prerogatives of the States" by requiring that regulated entities have a physical

presence in the state. *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018). The same

reasoning applies to Defendant's extraterritoriality argument.

　　　　The cases relied on by Defendant are distinguishable. In *Neals*, the court dismissed a

BIPA complaint with leave to replead where, unlike Plaintiffs here, the plaintiff failed to allege

where she provided the medium (a fingerprint) from which her Biometric Data was obtained.

419 F.Supp.3d at 1091-92. As for, *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL

5064732 (N.D. Ill. Oct. 9, 2019), unlike here, that case involved non-Illinois residents who did

not allege an Illinois connection to their case. *Id.* at *2-3.

## II.   BIPA Does Not Violate the Dormant Commerce Clause.

　　　　Courts have uniformly rejected Defendant's contention that BIPA violates the dormant

Commerce Clause, especially at this early stage. *See IBM*, 2020 WL 550134, at *4; *In re

Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-3747-JD, 2018 WL 2197546, at *4 (N.D.

Cal. May 14, 2018); *Rivera*, 238 F.Supp.3d at 1102-04; *Monroy*, 2017 WL 4099846, at *7-8.

The fact-based nature of dormant Commerce Clause challenges make them inappropriate for

resolution at the Rule 12(b)(6) stage. *See IBM*, 2020 WL 550134, at *4; *Rivera*, 238 F.Supp.3d

at 1104; *Monroy*, 2017 WL 4099846, at *7-8. Defendant's attempt to distinguish its challenge

from those cases finding the argument premature fails for the same reasons set forth in § I.A,

*supra.* Should the Court conduct a dormant Commerce Clause analysis at this early stage, it still

should deny Defendant's motion.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 7

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

A.    **Legal Standards.**

While the dormant Commerce Clause limits states' powers, "[n]ot every exercise of state power with some impact on interstate commerce . . . violates the Commerce Clause." *Gravquick A/S v. Trimble Navig. Int'l Ltd.*, 323 F.3d 1219, 1224 (9th Cir. 2003). The Supreme Court has developed a two-tiered approach to determining whether a state economic regulation violates the Commerce Clause. *See Chinatown Neighborhood Ass'n v. Harris* ("*Chinatown*"), 794 F.3d 1136, 1145 (9th Cir. 2015). If a state statute discriminates against or directly regulates interstate commerce, a court should strike down the statute (or challenged application thereof) without additional inquiry. *Id.* However, where a statute only has an indirect effect on interstate commerce, no dormant Commerce Clause violation exists unless the statute's burdens outweigh its putative benefits, making it irrational or unreasonable. *Id.*

A statute "directly regulates" interstate commerce and violates the Commerce Clause where it directly controls commerce taking place *wholly* outside a state's boundaries. *Rocky Mountain Farmers Union v. Corey,* 730 F.3d 1070, 1101 (2013). But if a statute regulates a transaction or relationship "in which at least one party is located in [the regulating state]," as does BIPA, the statute does not regulate extraterritorial conduct for purposes of the "direct regulation" test. *Chinatown*, 794 F.3d at 1146.

States have broad power to enact laws that protect their residents in matters of local concern. *Nat'l Ass'n of Optometrists and Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012). A state "may regulate with reference to local harms" even if the regulation impacts out-of-state entities whose conduct has in-state ramifications. *Corey*, 730 F.3d at 1104.

The dormant Commerce Clause does not demand uniformity in state laws. *Corey*, 730 F.3d at 1104. As the Ninth Circuit has held, "if we were to invalidate a regulation every time

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 8

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

another state considered a complementary statute, we would destroy the states' ability to experiment with regulation." *Id.* at 1105.

"[L]egislation that may cause businesses to *decide* to conform nationwide conduct to meet the requirements of a given state does not necessarily constitute direct regulation of out-of-state commerce." *Ades v. Omni Hotels Mgm't Corp.*, 46 F.Supp.3d 999, 1014 (C.D. Cal. 2014) (emphasis added). "Courts have held that when a defendant *chooses* to manufacture one product for a nationwide market, rather than target its products to comply with state laws, defendant's choice does not implicate the commerce clause." *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F.Supp.2d 946, 961 (N.D. Cal. 2006) (emphasis added). Thus, whether it is a call center (*Ades*), a business operating a website (*Target Corp.*) or fuel producers (*Corey*), a state may permissibly regulate how nationwide businesses interact with its own citizens.

### B. BIPA Does Not Directly Control Commerce Occurring Wholly Outside of Illinois.

BIPA, as applied to Defendant, does not "violate the 'direct regulation' emanation of the dormant Commerce Clause," as Defendant contends (Dkt. 18 at 16), because it does not control commerce wholly outside of Illinois. *See Corey*, 730 F.3d at 1101. In fact, because BIPA is not a price-affirmation statute, Defendant's extraterritoriality-based dormant Commerce Clause argument is misplaced. In "the modern era, the Supreme Court has rarely held that statutes violate the extraterritoriality doctrine." *Corey*, 730 F.3d at 1101. And the Ninth Circuit has held that the two most "prominent cases" where an extraterritorial violation did occur—including *Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989)—do not apply "to a statute that does not dictate the price of a product and does not tie the price of its in-state products to out-of-state products."

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

1    *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 951 (9th Cir. 2013);

2    *see also Chinatown,* 794 F.3d at 1146 (9th Cir. 2015).

3           In all events, because BIPA regulates the relationship between *Illinois residents* and

4    private entities that seek to collect and use their Biometric Data, it does not violate the dormant

5    Commerce Clause. *See Chinatown*, 794 F.3d at 1146; *see also* 740 ILCS 14/1, *et seq.* Any

6    contrary contention by Defendant would be incredible, especially given that Plaintiffs and Class

7

8    Members are all Illinois residents. Dkt. 1 ¶¶ 6-7, 89.

9           In a desperate effort to apply the dormant Commerce Clause to BIPA, Defendant ignores

10   BIPA's focus on Illinois residents and contends that: (a) the "'practical effect'" of Plaintiffs'

11   BIPA claims is to allow Illinois to control conduct entirely beyond its boundaries" (Dkt. 18 at

12

13   16); and, relatedly, (b) BIPA regulates "the transmission of data between two non-Illinois

14   entities (*i.e.*, IBM and Microsoft)." Dkt. 18 at 17. However, BIPA regulates Illinois residents'

15   privacy, not a transaction between IBM and Microsoft. To the extent BIPA has the above-

16   described extraterritorial effects, it "passes Commerce Clause muster" because those effects

17   "result from the regulation of in-state conduct." *See Chinatown*, 794 F.3d at 1145.

18          Based on the above, the Court should deny Defendant's dormant Commerce Clause

19   challenge. In doing so, the Court need not weigh BIPA's putative benefits against any purported

20

21   burdens it creates because Defendant has waived the argument by not addressing it in its motion.

22   *See Fox v. Holland Am. Line, Inc.,* No. C14-1081-JCC, 2016 WL 258522, at *3 (W.D. Wash.

23   Jan. 21, 2016). In any event, beyond being premature, any such fact-based argument would fail

24   given that the putative benefits of protecting Illinois residents' privacy outweigh any purported

25   burden resulting from Defendant's compliance with the statute. *See Ades*, 46 F.Supp.3d at 1015-

26

16 (no dormant Commerce Clause violation where California privacy statute required out-of-state call center to identify calls from California).

The authority relied on by Defendant is misplaced. As discussed above, *Healy* is limited to price-affirmation statutes. The statute in *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608 (9th Cir. 2018), regulated the out-of-state treatment of California waste that had already left California, a scenario that did not implicate California's interest in protecting itself or its citizens. *Id.* at 615. Here, Illinois maintains a continuing interest in allowing residents to protect and control their Biometric Data, as misuse of that data anywhere can cause them harm in Illinois.

Finally, unlike here, the statute at issue in *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015), "facially regulate[d] a commercial transaction that [took] place wholly outside of the State's borders" and did not seek to protect California victims. *Id.* at 1322-24 (internal quotation marks omitted). BIPA facially regulates the relationship between Illinois residents and private entities and seeks to protect Illinois residents from those entities' improper use of their Biometric Data.

## C.    BIPA Does Not Project Illinois' Regulatory Scheme onto Washington.

Relying on *Healy*, Defendant contends that BIPA improperly projects Illinois' regulatory scheme onto Washington. Dkt. 18 at 18. Not so.

Apart from *Healy* having no application to BIPA, *see* § II.B, *supra*, the existence of two state statutes that regulate biometric data does not offend the dormant Commerce Clause. *See Corey*, 730 F.3d at 1105. As the Ninth Circuit has recognized, "[s]uccessful [state regulatory] experiments inspire imitation both vertically . . . and horizontally . . . . ." *Id.* at 1105. Thus, "[i]f we [the Ninth Circuit] were to invalidate regulation every time another state considered a complementary statute, we would destroy the states' ability to experiment with regulation." *Id.*

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 11

Illinois' and Washington's biometric law are complementary—*i.e.*, they both seek to shape the confines of the appropriate use of Biometric Data. *See* 740 ILCS 14/1, *et seq.*; RCW 19.375.010, *et seq.* These states' experimentation with regulation does not require that either state's statute be invalidated; nor does it allow Washington to render BIPA meaningless vis-à-vis Washington private entities' relationships with Illinois residents. Such experimentation is encouraged.

At the same time Defendant complains of BIPA's reach, it seeks to impermissibly project Washington's regulatory scheme onto Illinois and negate BIPA's privacy protections. *Cf. In re Facebook Biometric Info. Privacy Litig.*, 185 F.Supp.3d 1155, 1169-70 (N.D. Cal. 2016) (rejecting California choice of law provision that would negate BIPA's protections). Taken to the extreme, if Washington were to pass a law exempting all businesses from liability arising from the collection of Biometric Data, according to Defendant, Illinois could not exercise its legitimate interest in protecting its residents' privacy vis-à-vis Washington businesses.

Defendant's self-serving prediction of a "parade of horribles" if the Court enforces BIPA (*see* Dkt. 18 at 20-22) does not withstand scrutiny. The mere fact that Defendant may have to take steps to comply with BIPA when working with Illinois residents' Biometric Data does not present dormant Commerce Clause issues. In *Ades*, a California federal court rejected a dormant Commerce Clause challenge to a California privacy statute that required an out-of-state call center to identify California callers. 46 F.Supp.3d at 1015-16. Similarly, a California federal court has found that "it is inappropriate at the motion to dismiss stage to assert a commerce clause violation based on the mere fact that [the defendant], at the remedy stage, may ultimately choose to" implement a national remedy to comply with a state regulation. *Target Corp.*, 452

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 12

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

F.Supp.2d at 961. Just as the statutes in *Ades* and *Target Corp.* did not offend the dormant Commerce Clause, nor does BIPA.

Defendant's contention that BIPA's application to Defendant would adversely affect businesses and universities (*e.g.*, the University of Washington) and end facial recognition research using any dataset with Illinois residents (Dkt. 18 at 21-22) lacks merit. Defendant does not support its claim that BIPA, which applies to "private entities," applies to public universities. *See* 740 ILCS 14/15. Moreover, BIPA does not preclude the use of Illinois residents' Biometric Data. It merely requires private entities to provide notice and obtain consent before obtaining and using the data. Defendant had the ability to do this and chose not to. Dkt. 1 ¶¶ 52-53, 70, 78.

*National Collegiate Athletic Association v. Miller*, 10 F.3d 633 (9th Cir. 1993), on which Defendant relies (Dkt. 18 at 19-20), is distinguishable. There, the court found a dormant Commerce Clause violation where a Nevada law interfered with the NCAA's enforcement procedures which had to be "uniform in order to accomplish its fundamental goals." *Id.* at 638-40. Defendant is not a national collegiate body that requires uniformity of its internal adjudicatory procedures.

Defendant's reliance on authority addressing the regulation of the Internet (*see* Dkt. 18 at 20-21) is misplaced. As discussed above, BIPA does not regulate Internet transactions, and the issue here is not Defendant's act of obtaining the Dataset from IBM. Rather, at issue is Defendant's failure to comply with BIPA's notice and consent provisions. Moreover, the view that Internet commerce requires uniformity is no longer viable. As the Supreme Court made clear in *Wayfair, Inc.*, the dormant Commerce Clause does not prevent States in the twenty-first century from regulating wholly online conduct even if the regulated entity has no physical in-state presence. 138 S.Ct. at 2097-2100. Further, Defendant's reliance on non-binding authority

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 13

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

from the 1990s to suggest that, in 2020, the dormant Commerce Clause should be read to eliminate entirely a State's ability to protect its citizens from online harms (Dkt. 18 at 20-21) does not reflect the reality that state laws can regulate online activity without violating the dormant Commerce Clause. *See Target Corp.*, 452 F.Supp.2d at 959-62; *State v. Heckel*, 24 P.3d 404, 412-13 (Wash. 2001).

### III. BIPA Applies to Biometric Data Derived from Photographs.

This Court should reject Defendant's invitation to be the first court to find that capturing Biometric Data from a photograph exceeds BIPA's reach. Defendant's strained interpretation would turn BIPA on its head and exempt the very practice BIPA was designed to regulate.

At issue is whether an entity violates BIPA when it obtains a person's Biometric Data by scanning his or her facial geometry. Courts have uniformly found that BIPA applies to facial scans performed on photographs, rejecting the categorical exemption Defendant urges. *IBM*, 2020 WL 5530134 at *4-5; *Rivera*, 238 F.Supp.3d at 1092-1100; *Monroy* 2017 WL 4099846 at *2-5; *Norberg v. Shutterfly, Inc.,* 152 F.Supp.3d 1103, 1105 (N.D. Ill. 2015); *In re Facebook Biometric Info. Privacy Litig.*, 185 F.Supp.3d at 1171.

In *Rivera*, after an exhaustive analysis of BIPA and the parties' competing interpretations, the court held that the specific materials or methods used to perform a facial geometric scan—of photographs or otherwise—were irrelevant to the definition of a biometric identifier. *Rivera*, 238 F.Supp. 3d at 1096. According to the court, "[t]he bottom line is that a 'biometric identifier' is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person." *Id*. The court then held that "there is no textual or structural clue to support" the notion that the exclusion of "photographs" from the definition of "biometric

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 14

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

identifier" should mean that identifiers extracted from photographs are excluded *sub silencio* from the definition of a "biometric identifier." *Id*. The court concluded that "the list of biometric identifiers [in BIPA] are just that—specific, biology-based measurements used to identify a person, without reference to how the measurements were taken." *Id*. at 1097.

More recently, facing the same "photograph" argument Defendant makes here, the court in *IBM* held that IBM had "not offered any persuasive arguments to convince us" "that *Rivera* and other cases were wrongly decided." 2020 WL 5530134 at *5. So too here.[3]

The court in *Rivera* also rejected the legislative history arguments that Defendant regurgitates here (Dkt. 18 at 22-23): "Because the text of [BIPA] provides the answer to whether the alleged face templates come within the definition of biometric identifier, there is no need to resort to legislative history." *Rivera*, 238 F.Supp.3d at 1098 (citation omitted); *Carcieri v. Salazar*, 555 U.S. 379, 388 (2009) (plain and unambiguous statutory text should be applied according to its terms). For the "sake of completeness," however, the court addressed Defendant's legislative history argument. *Rivera*, 238 F.Supp.3d at 1099. The court rejected the contention that by opting for the word "scan" over "records," the Illinois legislature suggested that it cared about how the content was obtained. *Id.* The court found that "scan . . . is not obviously more suggestive of something done directly to a *person* than to a *thing* (like a photograph)." *Id.* (emphasis in original). The court also addressed the legislature's decision to omit the term "facial recognition" from BIPA, finding that it likely did so "simply because [the term] was redundant with 'facial geometry'" and because of grammatical issues.  *Id*. at 1099-1100.

---

[3] Plaintiffs do not claim that simply possessing a photograph of a face violates BIPA. It is the act of scanning or otherwise capturing Biometric Data from photographs that falls within BIPA's purview.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 15

Practically, it would make no sense for a statute aimed at an evolving technology to create the exception Defendant advocates. *See, e.g., id.* at 1096 ("because advances in technology are what drove the Illinois legislature to enact [BIPA] in the first place, it is unlikely that the statute sought to limit the definition of biometric identifier by limiting how the measurements are taken."); *Monroy*, 2017 WL 4099846, at *5 (limitation to in-person scans would "leave little room for the law to adapt and respond to technological development").

Further, courts have unanimously rejected Defendant's attempt to derive an atextual "in-person" requirement from BIPA's illustrative list of where Biometric Data may be obtained, such as at "grocery stores, gas stations, and school cafeterias," *see* 740 ILCS 14/5(b). The strained interpretation ignores § 15(b)'s plain language, which flatly prohibits any private entity from, among other things, obtaining Biometric Data without complying with BIPA's notice and consent requirements. *See* 740 ILCS § 14/15; *see also Monroy*, 2017 WL 4099846, at *4 (rejecting claim that BIPA "is narrowly concerned with the use of biometric data in the context of commercial transactions" given its "notably broad" definition of "private entity"); *Rivera*, 238 F.Supp.3d at 1098 (emphasis in original) ("To be sure, the only *example* given in [BIPA] Section 5 relates to in-person transactions . . . but the stated concern is considerably broader than this one application."); *In re Facebook Biometric Info. Privacy Litig.*, 185 F.Supp.3d at 1171-72 ("this cramped interpretation is not stated in BIPA and cannot be squared with the statute's purpose.").

If adopted, Defendant's interpretation of BIPA would transform BIPA into a statute that specifically permits anyone—without notice or consent—to obtain, disclose, sell, or otherwise profit off any biometric measurements so long as they are extracted from photographs. "A federal court should not read a state law in a way that makes it self-defeating," and this Court

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 16

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

should decline Defendant's invitation to turn BIPA into a license for unconstrained Biometric

Data extraction.  *Morrison*, 649 F.3d at 538.

**IV.   Plaintiffs Have Adequately Alleged a § 15(b) Violation Because Defendant Collected, Obtained and Used Their Biometric Data without Notice and Consent.**

The Court should also refuse Defendant's invitation to read a "passive possession"

exception into BIPA § 15(b). Dkt. 18 at 24-26. Contrary to Defendant's self-serving reading of

BIPA, Section 15(b) makes clear that it applies to any private entity that has collected or obtained

a person's Biometric Data regardless of whether that entity personally scanned a photograph to

derive the data: "No private entity may collect, capture, purchase, receive through trade, or

otherwise obtain a person's . . . biometric identifier or biometric information," unless it first

provides written notice and receives written consent. *See* 740 ILCS § 14/15(b).

The Complaint alleges that Defendant collected and otherwise obtained Plaintiffs' and

Class Members' Biometric Data by applying for and obtaining the Dataset, which included

Plaintiffs' and Class Members' Biometric Data.[4] Dkt. 1 ¶¶ 61-64. The Complaint further alleges

that Defendant failed to provide the notice and obtain the consent required by BIPA before

collecting and obtaining the Biometric Data. *Id.* ¶¶ 71-72, 79-80. Moreover, the Complaint

alleges that Defendant used the Biometric Data to improve its facial recognition products. *Id.* ¶¶

64-65. Defendant could not have used the Biometric Data unless it first collected or obtained it.

These allegations and the inferences therefrom are sufficient to allege a § 15(b) violation. *See*

*Figueroa v. Kronos, Inc.*, 454 F.Supp.3d 772, 783-84 (N.D. Ill. 2020).

---

[4] Further, Defendant knew or should have known that the Dataset contained individuals' Biometric Data from photographs that were scraped from the Internet without their knowledge or consent, as the methodology of building the Dataset was set forth in the research papers accompanying and promoting the Dataset.  *See* Dkt. 1 ¶¶ 42-48 (citing Michele Merler, *et al., Diversity in Faces*, IBM Research AI (Apr. 10, 2019)).

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 17

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

Contrary to Defendant's contention, § 15(b) does not require a private entity to "actively collect" a person's Biometric Data. *See id.* at 783-85 (N.D. Ill. 2020) (no active collection requirement); *Neals*, 419 F.Supp.3d at 1092 (BIPA "obligates any private entity that collects a person's biometric information to comply with its requirements").

The fact that §§ 15(a), (c), (d) and (e) contain the word "possess" does not change the above-stated conclusion. The court in *Figueroa* rejected such an argument, noting that there is nothing inconsistent about the legislature's use of "collect' and "otherwise obtain" in Section 15(b) with its use of "in possession" in Sections 15(a), (c), (d), and (e) because those sections apply to entities regardless of whether they obtained Biometric Data before or after BIPA's effective date, while Section 15(b) imposes obligations on entities that came into possession of such data *after* BIPA's effective date. *Figueroa*, 2020 WL 1848206, at *6.

The authority relied on by Defendant (Dkt. 18 at 25-26) is distinguishable, having arisen in the employment context. In *Cameron v. Polar Tech Indus., Inc. & ADP, LLC*, No. 2019-CH-000013 (DeKalb Cty. Ill. Cir. Ct. Aug. 23, 2019), the court dismissed an employee's § 15(b) claim based on its "view that 15(b) only applies to an employer and not a third party." *See* Dkt. 18 at 105 (Ex. E to Def. Motion – transcript of ruling). The court specifically noted that its decision was limited to BIPA claims arising in an employment situation. *Id.* at 105-06.

Defendant's remaining authority is further distinguishable because, unlike here, the plaintiffs failed to plead any affirmative action that biometric device manufacturers took to obtain the Biometric Data. *See Namuwonge v. Kronos, Inc.*, 418 F.Supp.3d 279, 286 (N.D. Ill. 2019) (allegations that employer "collected fingerprints using a system that [a manufacturer] supplied," not that "[manufacturer] collected, captured, or otherwise obtained biometric information."); *Bernal v. ADP, LLC*, No. 2017-CH-12364, Order at 2-3 (Cook Cty. Ill. Cir. Ct.

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

Aug 23, 2019) (*see* Dkt. 18 at 133 (Ex. F to Def. Motion – court order)) ("Plaintiff has failed to allege facts sufficient enough for the Court to properly assess Defendant's actual involvement . . . beyond the fact that Defendant supplied [the employer] with the technology"); *Heard v. Becton, Dickinson & Co.*, 440 F.Supp.3d 960, 966 (N.D. Ill. 2020) (same).

This case is distinguishable from an employment case where it unquestionably is easier for an employer to give notice and receive consent from its employees than for a device manufacturer. Here, however, IBM and Defendant were in the same position with respect to their ability to provide the notice and obtain the consent required by BIPA.[5] Indeed, the Complaint alleges that Defendant obtained from IBM the metadata associated with Plaintiffs' and Class Members' photographs and then associated the that data with each photograph. Dkt. 1 ¶¶ 52-53, 63. The Complaint further alleges that the information Defendant received from IBM allowed it to contact Plaintiffs and, by inference, other Class Members. *Id.* ¶¶ 68-70, 76-78.

Importantly, Defendant could have complied with BIPA's notice and consent requirements before obtaining Plaintiffs' and Class Members' Biometric Data. Defendant could have asked IBM to initially provide it with the metadata for all photographs in the Dataset, as well as the contact information/Flickr user information for all individuals in the Dataset. Likewise, Defendant could have asked IBM to initially provide a version of the Dataset without the Biometric Data, which Defendant could have used to provide the requisite notice and obtain the requisite consent before acquiring their Biometric Data. Instead, Defendant took no action to obtain the requisite consent or provide the requisite notice. *See id.* ¶¶ 65-66, 73-74, 79.

---

[5] Plaintiffs note that, based on available information, Yahoo! was not required to provide the notice and consent required by BIPA because it did not collect or obtain Biometric Data. Rather, it made photographs uploaded to Flickr accounts publicly available. *See* Dkt. 1 ¶¶ 28-32 It is possible that Yahoo!'s conduct violated other laws.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 19

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Contrary to Defendant's claim (Dkt. 18 at 26), there is nothing "absurd" about requiring Defendant to comply with BIPA before collecting or obtaining Plaintiffs' and Class Members' Biometric Data. Indeed, Defendant's invasive and predatory conduct is the very conduct that BIPA was designed to thwart. Defendant attempts to bolster its "absurdity" argument by making the inaccurate claim that the images in the Dataset were anonymized. *Id.* However, as discussed throughout, the Complaint alleges that the Dataset allowed Defendant to determine the identities of the subjects of the photographs. Those allegations and the inferences therefrom must be accepted as true, which Defendant has failed to do. Whether a hypothetical anonymized biometric dataset may exist in the future (*see id.*) has no bearing on this case.

To the extent Defendant contends that BIPA's notice and consent requirements only apply where a direct relationship exists between a private entity and a person whose Biometric Data is at issue (*see* Dkt. 18 at 26), the contention fails. BIPA's plain language makes clear that a private entity must provide notice to and obtain consent from, not only "customers" (direct relationship), but any person. 740 ILCS 14/15(b); *see also Rosenbach*, 129 N.E.3d at 1206 ("individuals and customers" have the right to control their Biometric Data); *Norberg*, 152 F.Supp.3d at 1105 (plaintiff alleged § 15(b) violation despite averring having never used the defendant's website); *Monroy*, 2017 WL 4099846, at *1 (finding plausible BIPA claims against defendant where the plaintiff did not use Shutterfly).

Defendant's reliance on dicta in *Bernal* (Dkt. 18 at 26) does not counter the overwhelming authority rejecting the notion that BIPA has a "direct relationship" requirement. In *Bernal*, the court observed in a footnote that because the plaintiff could have withheld consent to use his Biometric Data from his employer, the court did not believe that a third-party vendor

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

also had to obtain consent. *See* Dkt. 18 at 132, n.9. Here, Plaintiffs did not have the opportunity to withhold consent either from IBM or Defendant.

## V.   Plaintiffs Have Adequately Alleged that Defendant Profited from their Biometric Data.

The Complaint alleges that Defendant utilized their Biometric Data to improve its facial recognition products and generate profits. Dkt. 1 ¶¶ 54-65, 83. The Complaint further alleges that Defendant violated BIPA § 15(c), which precludes a private entity from selling, leasing, trading or otherwise profiting from a person's Biometric Data. 740 ILCS 14/15(c).

Despite BIPA's plain language, Defendant suggests that the Court should ascribe something other than the plain meaning to the term "profit from." Dkt. 18 at 27. The Supreme Court has "stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Thus, courts must stop with a statute's unambiguous language. *Id*.

Ignoring the above canon of statutory interpretation, Defendant contends that the Court can only read the phrase "otherwise profit from" to mean the receipt of a "pecuniary benefit in exchange for a person's biometric data." Dkt. 18 at 27. The authority relied on by Defendant only addresses statutory clauses that describe "several classes of *persons or things*" and then includes "other persons or things." *Id.* (citing *Pooh-Bah Enter., Inc v. Cnty of Cook*, 905 N.E.2d 781, 799 (Ill. 2009) (emphasis added)). Section 15(c) does not describe "several classes of persons or things." *See* 740 ILCS 14/15(c). Rather, it set forth a series of verbs followed by the phrase or "otherwise profit from." *Id.* Notably, the phrase "otherwise profit from" does not encompass or otherwise render the preceding words superfluous, which was the concern in *Pooh-Bah Enter., Inc. See Pooh-Bah Enter., Inc.*, 905 N.E.2d at 799-800. A private entity can

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

sell, lease or trade items with generating a profit—*e.g.*, the entity can sell the items at a loss or break even. Thus, § 15(c)'s use of the phrase "otherwise profit from" has a meaning independent from the words that precede it, and the Court should give the phrase its plain meaning.

## VI.  Plaintiffs Have Adequately Pled a Claim for Unjust Enrichment.

In support of their unjust enrichment claim, Plaintiffs allege that Defendant unfairly profited from its illegal capture and use of Plaintiffs' and Class Members' protected Biometric Data when it used the data to develop, improve, and sell its own facial recognition technology. Dkt. 1 ¶¶ 54-64. Plaintiffs also allege that the above-described conduct worked to Plaintiffs' and Class Members' detriment by: (a) depriving them of their right to be informed of and control the use of their Biometric Data (which is distinct from a privacy harm); (b) putting them at an increased risk of identity theft, social engineering, and other kinds of fraud of economic injury; (c) causing them privacy harms; and (d) causing them to stop participating in biometric-facilitated transactions and other facially-mediated electronic participation. *Id.* ¶¶ 82-88. Details surrounding the alleged detriment present fact questions inappropriate for resolution at the Rule 12(b)(6) stage. *Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 856 (N.D. Ill. 2006).

As in *IBM*, Plaintiffs have stated a claim for unjust enrichment under Illinois law. *See* 2020 WL 5530134, at *5. Plaintiffs have satisfied all of the actual pleading requirements: that the "[defendant] has unjustly retained a benefit to [the plaintiff's] detriment and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Mabry v. Standard Industries, Inc.*, No. 20 C 376, 2020 WL 2112372, at *5 (N.D. Ill. May 4, 2020); *IBM*, 2020 WL 5530134, *5. Likewise, Plaintiffs have stated a claim under Washington law, which only requires: "(a) a benefit conferred on defendant by the plaintiff; (b)

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 22

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

1  appreciation or knowledge of the benefit; and (c) that retention of the benefit would be unjust

2  under the circumstances." *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 559 (W.D. Wash. 2008).

3       Notwithstanding the seeming congruity of Illinois and Washington unjust enrichment

4  law, Defendant contends the Court should dismiss Plaintiff's unjust enrichment claim under

5  Washington law because Plaintiffs have not pled an "economic expense." Dkt. 18 at 27-29.

6  Illinois law contains no such pleading requirement and, in Plaintiffs' view, nor does Washington

7  law. However, to the extent the Court determines that Washington law requires allegations

8  beyond the retention of the unjust benefit, Illinois law controls as it has the most significant

9  relationship to the case.[6] *See Coe v. Philips Oral Healthcare Inc.*, No. 13-cv-518, 2014 WL

10  5162912, at *2 (W.D. Wash. Oct. 14, 2014); *see also In re Facebook Biometric Info. Privacy*

11  *Litig.,* 185 F.Supp.3d at 1168-70 (applying Illinois, not California, law to BIPA claims).

12       Regarding Defendant's argument that Plaintiffs cannot state a claim for unjust

13  enrichment where statutory damages lie, Plaintiffs note that they plead unjust enrichment in the

14  alternative to their BIPA claims, which is allowable under both Illinois and Washington law.

15  *See Quadion Corp. v. Mache*, 738 F.Supp. 270, 278 (N.D. Ill. 1990); *Poole v. Benjamin Moore*

16  *& Co., Inc.*, No. 18-cv-5168, 2018 WL 2716806, *5 (W.D. Wash. Jun. 6, 2018). Nevertheless,

17  if deemed necessary by the Court, Plaintiffs can specifically plead that unjust enrichment is an

18  alternative claim. Lastly, to the extent Defendant argues that Plaintiffs' unjust enrichment claim

---

[6] To the extent Washington law applies to the unjust enrichment claims and *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1130 (W.D. Wash. 2012) sets forth the applicable standard, Plaintiffs have still pled informational and economic harms beyond privacy harms alone. *See, e.g., Bryant*, 958 F.3d at 626 (noting that "[t]he judgment of Illinois's General Assembly is that the sensitivity of biometric information and the risk of identity theft or other privacy *or economic* harm that may result from its dissemination, necessitates that people be given the opportunity to make informed choices about to whom and for what purpose they will relinquish control of that information.") (emphasis added); *Patel v. Facebook, Inc.,* 290 F.Supp.3d 948, 954 (N.D. Cal. 2018) (abrogation of procedural rights mandated by BIPA "are worlds away from the trivial harm of a mishandled zip code or credit card receipt," and "are 'unlike other unique identifiers,' such as 'social security numbers,' because those 'when compromised, can be changed"); *Rosenbach*, 129 N.E.3d at 1206- 07.

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902

1   should be dismissed because their BIPA claims fail, the unjust enrichment claim cannot be

2   dismissed for the same reasons the other claims survive, as set forth *supra*.  *See Kelley*, 251

3   F.R.D. at 559.

4                                           **CONCLUSION**

5           For the foregoing reasons, the Court should deny Defendant's motion to dismiss as to

6   Counts One through Three of the Complaint (Plaintiffs do not contest the motion as it relates to

7   Count Four). To the extent the Court grants the motion as to Counts One through Three, in whole

8

9   or in part, the Court should grant Plaintiffs the opportunity to file an amended complaint.

10   Dated: October 13, 2020

11                                   STEVEN VANCE and TIM JANECYK, for
                                     themselves and others similarly situated,
12
                     By:     /s/ Scott R. Drury
13                           SCOTT R. DRURY, ISBA #6255867
                             *Attorney for Plaintiffs*
14

15   David B. Owens WSBA #52856              Gary Lynch* (PA Bar No. #56887)
     LOEVY & LOEVY                           CARLSON LYNCH LLP
16   100 S. King Street, Suite 100           1133 Penn Avenue, Floor 5
     Seattle, WA 98104                       Pittsburgh, PA 15222
17   david@loevy.com                         (412) 322-9243
                                             glynch@carlsonlynch.com
18

19   Michael Kanovitz* (ISBA #6275233)       Katrina Carroll* (ISBA #6291405)
     Scott R. Drury* (ISBA #6255867)         Nicholas R. Lange* (ISBA #6318106)
20   LOEVY & LOEVY                           CARLSON LYNCH LLP
     311 N. Aberdeen, 3rd Floor              111 West Washington Street, Suite 1240
21   Chicago, Illinois 60607                 Chicago, Illinois 60602
     312.243.5900                            312.750.1265
22   mike@loevy.com                          kcarroll@carlsonlynch.com
     drury@loevy.com                         nlange@carlsonlynch.com
23

24   *admitted *pro hac vice*               *admitted *pro hac vice*

25

26

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - Page 24

LOEVY & LOEVY
100 S. KING STREET., #100-748
SEATTLE, WASHINGTON 98104
T: 312-243-5900, FAX: 312-243-5902