The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN VANCE, *et. al.*, | No. 2:20-cv-01084-JLR |
| Plaintiffs, | **DEFENDANT AMAZON.COM, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| AMAZON.COM, INC, | **NOTE ON MOTION CALENDAR:** January 14, 2022 |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR)
4882-9632-0774v.1 0051461-003220

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

UNDISPUTED MATERIAL FACTS ............................................................................. 3

    A.    Flickr and the Yahoo-Created YFCC100M Dataset ................................. 3

    B.    The IBM-Created DiF Dataset ................................................................. 5

    C.    Plaintiffs' Flickr Photos ........................................................................... 6

    D.    Amazon's Download and Deletion of the IBM DiF Dataset ..................... 7

    E.    Three Amazon Research Scientists' Brief Evaluation the IBM DiF
            Dataset ..................................................................................................... 8

            1.    Dr. Yuanjun Xiong's Evaluation in Washington ........................ 8

            2.    Dr. Michele Donini's Evaluation in Washington ........................ 9

            3.    Dr. Nashlie Sephus's Evaluation in Georgia .............................. 10

ARGUMENT ................................................................................................................. 10

    I.    Illinois' BIPA Statute Does Not—and Cannot Constitutionally—Apply to
       Amazon's Out-of-State Activities .......................................................... 11

       A.    BIPA Does Not Apply Extraterritorially and Amazon Did Not
           Engage in Conduct "Primarily and Substantially" in Illinois ................. 11

            1.    The Undisputed Evidence Confirms that Amazon's
                 Conduct Occurred Entirely Outside Illinois ............................... 12

            2.    Plaintiffs' Residency in Illinois Cannot Satisfy Illinois'
                 Extraterritoriality Doctrine ...................................................... 13

       B.    If BIPA Were Interpreted to Apply to Amazon's Out-of-State
           Conduct, Plaintiffs' Claims Would Violate the Dormant
           Commerce Clause ................................................................................... 17

            1.    Application of BIPA Would Regulate Conduct Occurring
                 Entirely Outside of Illinois's Borders ......................................... 18

            2.    BIPA's Application Here Would Conflict with Washington
                 and Georgia Biometric Privacy Law .......................................... 19

    II.    The Court Should Grant Summary Judgment on Plaintiffs' BIPA Section
       15(c) Claim ............................................................................................ 21

    III.    This Court Should Grant Summary Judgment on Plaintiffs' Claim for
       Unjust Enrichment. ................................................................................ 22

CONCLUSION ............................................................................................................. 23

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - i
4882-9632-0774v.1 0051461-003220

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5
*Avery v. State Farm Mutual Auto. Ins. Co.*,
6
    835 N.E.2d 801 (Ill. 2005) ..................................................................................................11

7
*Chinatown Neighborhood Ass'n v. Harris*,
    794 F.3d 1136 (9th Cir. 2015) ...........................................................................................17
8

9
*Cleary v. Philip Morris Inc.*,
    656 F.3d 511 (7th Cir. 2011) .............................................................................................22

10
*Cousineau v. Microsoft Corp.*,
    992 F. Supp. 2d 1116 (W.D. Wash. 2012) ........................................................................22
11

12
*Daniels Sharpsmart, Inc. v. Smith*,
    889 F.3d 608 (9th Cir. 2018) .......................................................................................17, 18

13
*David K. Lindemuth Co. v. Shannon Fin. Corp.*,
14
    637 F. Supp. 991 (N.D. Cal. 1986) ....................................................................................16

15
*Healy v. Beer Institute, Inc.*,
    491 U.S. 324 (1989)............................................................................................................17
16

17
*Hesketh v. Total Renal Care, Inc.*,
    2021 WL 5761610 (W.D. Wash. Dec. 3, 2021) .................................................................10

18
*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
    545 N.E.2d 672, 131 Ill. 2d 145 (Ill. 1989) .......................................................................22
19

20
*Iancu v. Brunetti*,
    139 S. Ct. 2294 (2019)........................................................................................................12
21

22
*Landau v. CNA Fin. Corp.*,
    886 N.E.2d 405 (Ill. App. 2008) ........................................................................................11

23
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)............................................................................................................10
24

25
*McGoveran v. Amazon Web Services, Inc.*,
    2021 WL 4502089 (D. Del. Sept. 30, 2021)...................................................14, 15, 16, 17
26

27
*Monroy v. Shutterfly*,
    2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ....................................................................14

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Nat'l Collegiate Athletic Ass'n v. Miller,*
   10 F.3d 633 (9th Cir. 1993) ......................................................................................20

*People v. Scheib,*
   390 N.E.2d 872 (Ill. 1979) ......................................................................................12

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.,*
   442 F.3d 741 (9th Cir. 2006) ......................................................................................4

*Rivera v. Google,*
   238 F.Supp.3d 1088 (N.D. Ill. 2017) ......................................................................14

*S.D. Myers, Inc. v. City & County of San Francisco,*
   253 F.3d 461 (9th Cir. 2001) ...................................................................................17

*Sam Francis Found. V. Christies, Inc.,*
   784 F.3d 1320 (9th Cir. 2015) .................................................................................18

*Sitterli v. Csachi,*
   811 S.E.2d 454 (Ga. App. Ct. 2018) ......................................................................22

*Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.,*
   2013 WL 1337303 (N.D. Ill. Mar. 29, 2013) .........................................................13

*United States v. Pappadopoulos,*
   64 F.3d 522 (9th Cir. 1995), abrogated on other grounds by *Jones v. United*
   *State*s, 529 U.S. 848 (2000) ...................................................................................17

*Vance v. Microsoft Corp.,*
   2021 WL 1401634 (W.D. Wash. Apr. 14, 2021) ...................................................21

*Vulcan Golf, LLC v. Google Inc.,*
   552 F. Supp. 2d 752 (N.D. Ill. 2008) .....................................................................13

*Young v. Young,*
   164 Wn. 2d 477 ......................................................................................................22

**Statutes**

740 ILCS 14/5 .....................................................................................................................11

740 ILCS 14/10 ...................................................................................................................15

740 ILCS 14/15(c) ..............................................................................................................20

RCW 19.375.010(1) .......................................................................................................18, 19

RCW 19.375.020 ............................................................................................................18, 19

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

RCW 19.375.101(5) ..................................................................................................... 19

**Other Authorities**

Bart Thomee et al., "YFCC100M: The New Data in Multimedia Research,"
    *available at* https://dl.acm.org/doi/pdf/10.1145/2812802 ..................................... 3, 4

Communications of the ACM, 59(2), 2016, *available at*
    https://dl.acm.org/doi/pdf/10.1145/2812802 ........................................................ 3, 4

Creative Commons, About The Licenses, https://creativecommons.org/licenses/ ............... 4, 6, 15

Fed. R. Civ. P. 56(a) .................................................................................................... 10

Flickr, How to Change Your License on Flickr https://www.flickrhelp.com/hc/en-
    us/articles/4404078674324-Change-Your-Photo-s-License-in-Flickr .................................. 3, 4

*State of Delaware*, *Department of State: Division of Corporations, Business
    Search Results for Flickr Inc. and Yahoo, Inc.*,
    https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx .............................. 4, 12

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

## INTRODUCTION

2    This action presents the question whether Amazon, a Washington-based company, can be

3  held liable for statutory damages under the Illinois Biometric Information Privacy Act ("BIPA"),

4  even though it took no action in Illinois and had no knowledge that any photos or data regarding

5  Illinois residents may have been in the dataset.  The answer is no.  BIPA does not apply to

6  Amazon here because it did not engage in the conduct that allegedly violated BIPA "primarily

7  and substantially" in Illinois, as Illinois law requires.  To hold otherwise would also violate the

8  dormant Commerce Clause.  And having done nothing with the dataset, Amazon was not

9  unjustly enriched by it.  The Court should grant summary judgment for Amazon.

10    The IBM Diversity in Faces Dataset ("DiF Dataset") is a large and diverse dataset of

11  human faces that IBM, a New York company, created in New York to advance the study of

12  fairness, accuracy, and bias in facial recognition technology.  The DiF Dataset contains links to

13  roughly 1 million publicly available photos taken all over the world, as well as annotations of

14  data regarding some (but not all) of the faces in the photos.  In early 2019, IBM offered its DiF

15  Dataset to approved researchers, free of charge, for use in research only.  One research scientist

16  employed by Amazon Web Services ("AWS") and located in Washington downloaded two

17  versions of the DiF Dataset.[1]  Three AWS research scientists – two in Washington and one in

18  Georgia – then briefly evaluated the Dataset and determined that it didn't meet their respective

19  research needs.  None of these scientists were aware that the DiF Dataset linked to photos of

20  Illinois residents.  None of them used the Dataset, nor shared it with anyone else, and both

21  versions were deleted.

22    In this action, Illinois residents Steven Vance and Tim Janecyk allege that Amazon (a)

23  violated BIPA Section 15(b) by downloading the IBM DiF Dataset without their consent—even

24  though Amazon could not have known their faces were in it; (b) violated BIPA Section 15(c) by

25  allegedly profiting from use of their biometric identifiers and biometric information; and (c) was

26

27  _____
[1] Plaintiffs improperly named "Amazon.com, Inc." as the defendant in this case.  No one employed by Amazon.com, Inc. downloaded, reviewed, accessed, or used the IBM DiF Dataset.

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 1

allegedly unjustly enriched by profiting from use of Plaintiffs' biometric identifiers and information.  The Court denied Amazon's Motion to Dismiss, concluding "more factual refinement" about "the circumstances around Amazon's attainment, possession and use of the Diversity in Faces dataset" was needed.  Dkt. 34 at 8.

The undisputed evidence now confirms that any potentially relevant Amazon activity took place outside Illinois and, instead, occurred entirely in Washington and Georgia.  The undisputed evidence also confirms Amazon did nothing with the IBM DiF Dataset.  On these facts, the Court should grant Amazon summary judgment for the following reasons:

*First*, BIPA does not apply to Amazon's conduct here, which occurred entirely outside Illinois.  Under settled Illinois law, BIPA has no extraterritorial effect and applies only to conduct "primarily and substantially" in Illinois.  But here, Amazon engaged in *no* relevant conduct in Illinois, let alone conduct giving rise to a BIPA violation.  The Amazon research scientist who downloaded the two versions of the IBM DiF Dataset (while in Washington) did not use the Dataset and had no interaction with Plaintiffs or reason to know the Dataset may contain links to Illinois residents' photos, much less their alleged biometric identifiers.  Nor did the other Amazon research scientists (in Washington and Georgia) who briefly reviewed it.  Plaintiffs are therefore taking the absurd and untenable position that downloading and reviewing IBM's DiF Dataset *entirely outside* Illinois somehow constitutes conduct "primarily and substantially" in Illinois.  Nothing in BIPA's statutory language or Illinois law suggests BIPA's reach extends that far.

And even if BIPA could apply to Amazon's extraterritorial conduct as a matter of Illinois law (and it cannot), the dormant Commerce Clause would bar Plaintiffs' claims.  Illinois cannot reach outside its borders to dictate what Amazon must do in Washington or Georgia.  That Constitutional principle applies with special force here because Illinois' policy choices regarding biometric privacy, embodied in BIPA, squarely conflict with Washington's and Georgia's.

*Second*, Plaintiffs' Section 15(c) claim fails regardless of extraterritoriality because Amazon did not use or integrate the IBM DiF Dataset into any of its products or services,

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

including Amazon Rekognition.  Although the Court denied Amazon's earlier motion to dismiss Plaintiffs' Section 15(c) claim, the Court acknowledge that "[i]t is certainly possible that with further factual development, it is discovered that Amazon does not so integrate biometric data, or the Diversity in Faces database in particular, into its products."  Dkt. 38 at 12.  The facts are now known—Amazon did not use the IBM DiF Dataset in its products.

*Finally*, even if the information in the DiF Dataset were biometric information or identifiers (it is not), it is undisputed that Amazon did not use that (or any other) information from the Dataset at all—so Plaintiffs have no unjust enrichment claim.  On these undisputed facts, Amazon simply received no "benefit" or "profit" from Plaintiffs' biometric information or identifiers, and the Court should dismiss their unjust enrichment claim.[2]

## UNDISPUTED MATERIAL FACTS

### A.    Flickr and the Yahoo-Created YFCC100M Dataset

Flickr is a photo sharing website that allows users to upload and share photos with others online.  Compl. ¶ 28.  Between at least 2004 and 2014, Flickr users could choose to upload their photos under either an "All Rights Reserved" license or a "Creative Commons" license."[3]  Under the former, the Flickr user retained the right to make copies and distribute their uploaded photo.[4]  Under the latter, the Flickr user consented to the ability of third parties to copy, distribute, edit, and use the photo(s).[5]  The purpose of a Creative Commons license is to create a "digital

---

[2] Amazon has concurrently filed its Opposition to Plaintiffs' Motion for Class Certification.  If the Court grants this motion for summary judgment, it need not reach Plaintiffs' Motion for Class Certification.

[3] *See* Flickr, How to Change Your License on Flickr https://www.flickrhelp.com/hc/en-us/articles/4404078674324-Change-Your-Photo-s-License-in-Flickr (last visited Dec. 6, 2021) (describing the licenses supported by Flickr); *see also* Bart Thomee et al., "YFCC100M: The New Data in Multimedia Research," Communications of the ACM, 59(2), 2016, at 66, *available at* https://dl.acm.org/doi/pdf/10.1145/2812802 ("YFCC100M Paper") (YFCC100M is comprised of "100 million media objects … all uploaded to Flickr between 2004 and 2014 and published under a [Creative Commons] commercial or noncommercial license").

[4] Flickr, How to Change Your License on Flickr (describing All Rights Reserved license).

[5] *Id.* (describing that Flickr supports numerous Creative Commons licenses and linking to Creative Commons webpage); Creative Commons, About The Licenses, https://creativecommons.org/licenses/ (last visited Nov. 29, 2021) (describing licenses as allowing "others [to] distribute, remix, adapt, and build upon your work").

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

commons, a pool of content that can be copied, distributed, edited, remixed, and built upon, all within the boundaries of copyright law.[6]

In 2014, Yahoo!—Flickr's then-parent[7]—released to the public a dataset of about 100 million Flickr photos uploaded to Flickr's website between 2004 and 2014.[8]   The Yahoo-created dataset became known as "the Yahoo Flickr Creative Commons 100 Million Dataset (YFCC100M)."[9]   The YFCC100M dataset "is the largest public multimedia collection that has ever been released, comprising a total of 100 million media objects [i.e., photos] . . . all of which have been uploaded to Flickr between 2004 and 2014 and published under a [Creative Commons] commercial or non-commercial license."  *Id.* at 66.  The purpose of a Creative Commons license is to create a "digital commons, a pool of content that can be copied, distributed, edited, remixed, and built upon, all within the boundaries of copyright law."[10]

The YFCC100M dataset thus includes only photos that Flickr users voluntarily allowed third parties to copy, distribute, edit, and use.  *See* YFCC100M Paper at 66 ("Each media object included in the dataset is represented by its Flickr identifier . . . and the CC license under which it was published.").[11]

## B.    The IBM-Created DiF Dataset

In 2019, researchers at IBM created the IBM DiF Dataset "to help advance the study of fairness and accuracy in face recognition technology."  IBM DiF Paper at 24.  To create this

---

[6] Creative Commons, About The Licenses, https://creativecommons.org/licenses/ (last visited Dec. 9, 2021)..

[7] Both Flickr, Inc. and Yahoo Inc. are Delaware corporations based in California.  *See State of Delaware, Department of State:  Division of Corporations, Business Search Results for Flickr Inc. and Yahoo, Inc.,* https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx (last accessed Dec. 6, 2021). The Court may take judicial notice of information posted on a state government website because it is "readily verifiable and, therefore, the proper subject of judicial notice." *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746, n.6 (9th Cir. 2006).

[8] Compl. ¶ 29; M. Merler Decl. at Ex. A, M. Merler, Diversity in Faces ("IBM DiF Paper").

[9] Bart Thomee et al., "YFCC100M: The New Data in Multimedia Research," Communications of the ACM, 59(2), 2016, pp. 64–73, available at https://dl.acm.org/doi/pdf/10.1145/2812802 ("YFCC100M Paper").

[10] Creative Commons, About The Licenses, https://creativecommons.org/licenses/ (last visited Dec. 9, 2021).

[11] Flickr, How to Change Your License on Flickr https://www.flickrhelp.com/hc/en-us/articles/4404078674324-Change-Your-Photo-s-License-in-Flickr (last visited Dec. 6, 20

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

dataset in compliance with "various copyright laws and privacy regulations," the IBM researchers used only photos from the YFCC100M dataset subject to the Creative Commons license. *Id.* at 7.  After selecting photos, the IBM researchers applied 10 different coding schemes and made "annotations" from some of the photos linked to in the dataset, including information related to some of the faces in the photos, such as "craniofacial distances" and "areas and ratios." *Id.* at 9.  They also included other demographic information about some of the faces in the photos, such as the estimated age and gender. *Id.* at 9, 14–16 (describing coding schemes for skin color, age prediction, and gender prediction).  The information about the faces in the IBM DiF Dataset was "purely descriptive and designed to provide a mechanism to evaluate diversity in the dataset—not to provide a method of facial identification."  Merler Decl. ¶ 7.

The IBM researchers who created the DiF Dataset were in New York, and IBM created and stored the dataset on servers in New York. *Id.* at ¶ 8.  IBM did not create its DiF Dataset in Illinois, store it on computers in Illinois, or otherwise take any actions involving Illinois with respect to the dataset. *Id.*  In addition, the "IBM RESEARCH DiF DATASET TERMS OF USE" prohibited recipients of the IBM DiF Dataset from "attempt[ing] to identify any individuals within the IBM Research DiF Dataset (unless required by law and with IBM's prior written consent)."  IBM Research DiF Dataset Terms of Use at 3.  After creating the IBM DiF Dataset, IBM made it available for download free of charge to certain researchers who requested access to the DiF Dataset and filled out a questionnaire certifying that the request for access was for research purposes only.  Merler Decl. ¶ 9.

**C.      Plaintiffs' Flickr Photos**

Plaintiffs assert that, while in Illinois, they uploaded photos of themselves and others to their personal Flickr accounts.  Compl. ¶¶ 66, 75; Declaration of Jaime Drozd Allen ("Allen Decl.") Ex. 1, Vance Dep. 132:4–6; *Id.* Ex. 2, Janecyk Dep. 99:21–100:13.  When signing up for Flickr, Plaintiffs did not exercise the option to restrict who could access their photos, such as choosing the All Rights Reserved license. *Id.* Ex. 1, Vance Dep. 207:17–208:4; Ex 2, Janecyk Dep. 72:2–24.  Instead, both chose to upload their photos under the Creative Commons license,

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

thereby granting the public "license" to "distribute, remix, adapt, and build upon [their] work[.]"[12]  *See id.* Ex. 1, Vance Dep. 206:1–6; Ex 2, Janecyk Dep. 72:2–9.

Vance testified that he uploaded at least 18,595 public photos to Flickr, at least 63 of which were part of the YFCC100M Dataset and subsequently included by IBM in IBM included in its DiF Dataset.  *Id.* Ex. 1, Vance Dep. 179:22–23; 210:19–24.  These 63 photos depict other people, not just Vance, and Vance did not always know who the people were or whether these people were Illinois residents.  *Id.* at 132:4–14; 154:5–16.  Some of these 63 photos were taken by someone other than Vance, and some were taken outside Illinois.  *Id.* at 70:2–71:22; 131:10–132:3.

Janecyk uploaded 1,669 public photos to Flickr, 24 of which were part of the YFCC100M Dataset and subsequently became part of the IBM DiF Dataset.  *Id.* Ex. 2, Janecyk Dep. 74:21–24; 95:22–96:1.  Janecyk's practice was to photograph strangers on the streets of Chicago.  *Id* at 45:16–46:19.  Aside from himself and individuals he knew only as "Popcorn Mike" and "Dave," Janecyk did not know the names of any of the people in the 24 photos and did not know where they lived.  *Id.* at 98:8–100:13; 167:11–168:15; 225:9–227:4; 228:19–21.  At least 2 of the 24 photos were taken outside of Illinois.  *Id.* at 97:18–20.  Janecyk put a note on his account saying "PLEASE STEAL MY PHOTOS! ... I encourage you to steal any of my photography for personal or commercial use."  *Id.* Ex. 3, Janecyk Dep. Ex. 4.  Although Janecyk testified that this was "kind of a joke," he acknowledged he would allow people to use his photos from Flickr for non-commercial purposes.  *Id.* Ex. 2, Janecyk Dep. 88:14–89:6.

Neither Vance nor Janecyk alleges he had any contact or communication with Amazon (in Illinois or elsewhere) concerning the IBM DiF Dataset or their photos on Flickr.  *Id.* Ex. 1, Vance Dep. 187:9–19; 199:8–12; Ex. 2, Janecyk Dep. 95:3–6; 33:18–21.  Neither Plaintiff contacted IBM about removing their photos (or information) from the Dataset upon learning they were in it.  *Id.*

---

[12] Creative Commons, About The Licenses, https://creativecommons.org/licenses/ (last visited Dec. 9, 2021).

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**D.      Amazon's Download and Deletion of the IBM DiF Dataset**

In late January 2019, former AWS scientist Dr. Tal Hassner, who worked in California at the time, asked Dr. Stefano Soatto—who was an AWS Director also based in California—if he could request access to the IBM DiF Dataset to allow the AWS AI Computer Vision research team (the "Research Team") to determine whether the Dataset would be suitable for a research project involving fairness and bias in machine learning.  Soatto Decl. ¶ 3; Hassner Decl. ¶ 3. Soatto provided Hassner permission to request access from IBM to the DiF Dataset for that purpose.  *Id.*

In early February 2019, Hassner requested access to Version 1A of the DiF Dataset from IBM.  Hassner Decl. ¶ 4.  He was later granted access to the IBM DiF Dataset through an online link sent to him by IBM, while he was in California.  *Id.* ¶¶ 1, 4.

Dr. Yuanjun Xiong, an AWS Principal Scientist in Seattle, Washington, received the IBM online link from Hassner, and downloaded Version 1A of the IBM DiF Dataset.  Xiong Decl. ¶¶ 1, 4.  Xiong stored it in two locations used by the Research Team: (1) Amazon Elastic Block Storage ("Amazon EBS") and (2) the Research Team's "S3 Bucket," which is the specific AWS cloud storage location used by the Research Team.  *Id.* ¶¶ 4-5.  Access to and use of this Amazon EBS and this S3 Bucket was restricted to members of the Research Team, which included approximately 50 other AWS researchers.  *Id.* ¶ 5.  Both this Amazon EBS and this S3 Bucket were physically stored on AWS's US West (Oregon) Region data centers.  *Id.* ¶¶ 4-5.

On April 8, 2019, Hassner received an email from IBM noting that IBM made a new version (Version 1B) of its DiF Dataset available.  IBM instructed recipients of Version 1A of the IBM DiF Dataset to delete it.  Hassner Decl. ¶ 5; Xiong Decl. ¶ 10.  On April 8, 2019, consistent with IBM's instructions, Xiong deleted Version 1A of the IBM DiF Dataset from the Amazon EBS and the Research Team's S3 Bucket.  Xiong Decl. ¶ 11.  Upon Xiong's deletion of Version 1A of the IBM DiF Dataset, no one at Amazon had access to it or was able to use it.  *Id.*

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

On or about April 8, 2019, while located in Washington, Xiong then downloaded Version 1B of the IBM DiF Dataset to the Research Team's Amazon EBS and S3 Bucket from the link Hassner received from IBM.  *Id.* ¶ 12.

In late 2019 or early 2020, Xiong deleted Version 1B of the IBM DiF Dataset from the Amazon EBS and the Research Team's S3 Bucket. *Id.* ¶ 15.  Upon Xiong's deletion of Version 1B of the IBM DiF Dataset, no one at Amazon would have had access to it or been able to use it. *Id.* ¶¶ 11, 15.

### E.   Three of Amazon Research Scientists' Brief Evaluation of the IBM DiF Dataset

#### 1.   Dr. Yuanjun Xiong's Evaluation in Washington

In March 2019, Xiong evaluated Version 1A of the IBM DiF Dataset to determine whether it would be suitable for the Research Team's project involving fairness and bias in machine learning models.  *Id.* ¶ 6.  He conducted this evaluation while located in Washington. *Id.*  After his evaluation, he discussed the results with his colleagues, Soatto and Dr. Wei Xia, and determined the IBM DiF Dataset was not suitable for the Research Team's purposes.  *Id.* ¶ 7. The Research Team required datasets with sufficient demographic diversity, i.e., different skin tones, genders, and ages.  *Id.*  Their research also required a dataset to have accurate demographic annotations.  *Id.*   Version 1A of the IBM DiF Dataset did not have either. Therefore, it was Xiong's conclusion that the IBM DiF Dataset was not a demographically balanced dataset and its demographic annotations were unreliable because they were machine generated.  *Id.*

After the determination that Version 1A of the IBM DiF Dataset was unsuitable for the Research Team's purposes, neither Xiong nor his colleagues Soatto and Xia are aware of any other member of the Research Team using the dataset.  *Id.* ¶ 8; Xia ¶ 10; Soatto Decl. ¶ 6.

Although Xiong later downloaded Version 1B of the IBM DiF Dataset, he did not evaluate or use Version 1B of the IBM DiF Dataset.  Xiong Decl. ¶ 14.  Neither Xiong nor his

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

colleague Xia are aware of any other member of the Research Team using or accessing Version 1B of the IBM DiF Dataset.  *Id.*; Xia Decl. ¶ 10.

### 2.    Dr. Michele Donini's Evaluation in Washington

In late March 2019, Xiong provided AWS Dr. Michele Donini, with access to Version 1A of the IBM DiF Dataset stored on the Research Team's S3 Bucket for Donini's own evaluation of the Dataset.  Xiong Decl. ¶ 9.  Donini was an Applied Scientist II for AWS, but not a member of the Research Team; therefore, he needed Xiong to provide him access to the S3 Bucket.  Donini Decl. ¶ 4.  Donini was working in Seattle, Washington at the time.  *Id.*

Donini saved a local copy of the IBM DiF Dataset to his Amazon-issued laptop and examined the Dataset, specifically its demographic annotations.  He quickly determined that the Dataset was not suitable for his intended research purpose.  *Id.* ¶¶ 4-5.  After making this determination, Donini did not use the DiF Dataset for any purpose.  *Id.* ¶ 5.  He does not recall specifically deleting the local copy of the DiF Dataset he saved on his Amazon-issued laptop, but it was Donini's typical practice to delete any dataset if he was unable to work with it.  *Id.*  ¶ 6.  Prior to transferring to Amazon's Berlin, Germany office in February 2020, Donini returned his Amazon-issued laptop to Amazon's Seattle, Washington office.  *Id.* ¶ 7.  Amazon's standard practice is to wipe any laptops returned by its employees, which erases all data on it.  *Id.*

Donini never shared the local copy of the IBM DiF Dataset that was saved on his Amazon-issued laptop with anyone, and he did not back up or upload the IBM DiF Dataset to any device or cloud-server.  *Id.* ¶ 8.  He is not aware of any version of the DiF Dataset being used for or integrated into any Amazon product or service, including Amazon Rekognition.  *Id.* ¶ 9.

### 3.    Dr. Nashlie Sephus's Evaluation in Georgia

In April 2019, Xiong provided his AWS colleague, Dr. Nashlie Sephus, with access to Version 1B of the IBM DiF Dataset stored on the Research Team's S3 Bucket for Sephus's own evaluation of the dataset.  Xiong Decl. ¶ 13.  Sephus was an Applied Scientist Manager for

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

AWS, but not a member of the Research Team; therefore, she needed to be provided access to the S3 Bucket.  *Id.*  She was working in Atlanta, Georgia at the time.  Sephus Decl. ¶ 1.

Sephus was provided access to Version 1B of the IBM DiF Dataset stored in the S3 bucket to determine whether the Dataset would be suitable for Sephus's research auditing fairness and bias in Amazon Rekognition.  *Id.* ¶ 3.  Sephus did not separately save any copy of the Dataset but worked directly with the copy saved in the S3 bucket.  *Id.*

To evaluate the IBM DiF Dataset, Sephus looked at its demographic annotations and quickly determined the IBM DiF Dataset was not suitable for her research purposes because the Dataset was not sufficiently demographically balanced.  *Id.* ¶ 4.  After making that determination, Sephus did not access or use any version of the IBM DiF Dataset in her research. *Id.*  She is not aware of any version of the IBM DiF Dataset being used for or integrated into any Amazon product or service, including Amazon Rekognition.  *Id.* ¶ 5.

## ARGUMENT

The Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To avoid summary judgment, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original); *see also Hesketh v. Total Renal Care, Inc.*, 2021 WL 5761610, at *7 (W.D. Wash. Dec. 3, 2021) (Robart, J.).  Here, because Amazon "does not bear the ultimate burden of persuasion at trial," it is entitled to summary judgment "by showing that the nonmoving party lacks evidence of an essential element of its claim[.]" *Hesketh*, 2021 WL 5761610, at *7.  The Court should grant summary judgment on Plaintiffs' claims because the undisputed evidence confirms that Amazon did not engage in any relevant conduct in Illinois and did not do anything with the IBM DiF Dataset—defeating Plaintiffs' BIPA Section 15(b) and 15(c) claims, as well as their claim for unjust enrichment.

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.     Illinois' BIPA Statute Does Not—and Cannot Constitutionally—Apply to Amazon's Out-of-State Activities.

The people associated with Amazon who briefly interacted with the DiF Dataset in Washington and Georgia did not even know it may contain links to photos or data of Illinois residents, nor did they use the Dataset for any purpose.  Plaintiffs nevertheless assert that Amazon should be subject to BIPA's statutory damages for downloading and briefly reviewing some demographic annotations in the DiF Dataset.  Such an interpretation would lead to absurd consequences, imposing statutory damages on private entities who lack *any* connection to Illinois for unknowingly (and briefly) coming into possession of data allegedly about Illinois residents, but never using it.  Nothing in BIPA suggests the statute was intended to have this type of extraterritorial effect; to the contrary, the Illinois General Assembly's legislative findings show that it was concerned with companies coming *into* Illinois and collecting Illinois residents' biometrics.[13]  As a matter of Illinois state law, BIPA does not apply to Amazon's out-of-state conduct.  And any such application would violate the dormant Commerce Clause.

### A.     BIPA Does Not Apply Extraterritorially and Amazon Did Not Engage in Conduct "Primarily and Substantially" in Illinois.

As this Court previously acknowledged, as a matter of Illinois law, BIPA "is not authorized to have extraterritorial effect."  Dkt. 34 at 6.  To establish a BIPA claim against Amazon, Plaintiffs must prove that Amazon violated the statute and that these violations "occur[red] primarily <u>and</u> substantially in Illinois."  *Id.* (quoting *Avery v. State Farm Mutual Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005) (emphasis added).  Put another way, Amazon could be subject to BIPA only if "the majority of circumstances relating to the alleged violation of the [statute]" occurred in Illinois.  *Landau v. CNA Fin. Corp.,* 886 N.E.2d 405, 409 (Ill. App. 2008).[14]

---

[13] The General Assembly found that "[m]ajor national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger scan technologies at grocery stores, gas stations, and school cafeterias."  740 ILCS 14/5(b).

[14] In determining whether Plaintiffs have satisfied this standard, any ambiguities must be resolved in favor of Amazon.  Illinois attempting to regulate Amazon's wholly out-of-state conduct would—at a minimum—raise serious constitutional doubts under the dormant Commerce Clause.  *See infra* at pp.17–20.  The extraterritorial aspects of BIPA should, if possible, be interpreted in a way that avoids constitutional doubts under the dormant

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

### 1. The Undisputed Evidence Confirms that Amazon's Conduct Occurred Entirely Outside Illinois

3

Here, the only conduct that could possibly support Plaintiffs' BIPA Section 15(b) claim is

4

Amazon's download of two versions of the IBM DiF Dataset in Washington and Amazon's

5

review of that Dataset in Washington and Georgia.  There is no evidence of any conduct

6

underlying Plaintiffs' Section 15(c) claims.  As this Court previously ruled, the relevant question

7

is "whether and to what extent Amazon's alleged acts involving the Diversity in Faces dataset

8

occurred in Illinois."  Dkt. 34 at 10.  The undisputed facts answer that question:  not at all.

9

Far from showing any connection to Illinois, the evidence shows that Amazon's conduct

10

regarding the IBM DiF Dataset was several steps *removed* from Illinois.  The IBM DiF Dataset,

11

which allegedly generated facial annotations from publicly available photos taken and uploaded

12

from around the world, was created by IBM in New York.  Merler Decl. ¶ 8.  IBM used the

13

YFCC100M dataset created by Yahoo! and Flickr, which are both Delaware corporations

14

headquartered in California.[15]  Xiong downloaded the Version 1A and Version 1B of the IBM

15

DiF Dataset while located in Seattle, Washington.  Xiong Decl. ¶¶ 4, 12.  Both versions of the

16

IBM DiF Dataset were physically stored on AWS's US West (Oregon) Region data center.  *Id.*

17

¶¶ 4, 5, 12; Xia Decl. ¶¶ 4, 5, 8.

18

Xiong, Donini, and Sephus briefly evaluated the IBM DiF Dataset, and separately

19

concluded that the IBM DiF Dataset was unsuitable for their research purposes.  Xiong Decl. ¶ 7;

20

Donini Decl. ¶ 5; Sephus Decl. ¶ 4.  None of these research scientists were in Illinois; they were

21

located in either Seattle, Washington or Atlanta, Georgia.  Xiong Decl. ¶ 1; Donini Decl. ¶ 1;

22

Sephus Decl. ¶ 1.  The IBM DiF Dataset was never used in any Amazon product or service,

23

24

Commerce Clause.  *See People v. Scheib*, 390 N.E.2d 872, 876 (Ill. 1979) ("[W]e do not favor any construction that would raise legitimate doubts as to the constitutional validity of a statutory provision."); *accord Iancu v. Brunetti*,

25

139 S. Ct. 2294, 2301 (2019).  The Court avoids these legitimate doubts by holding, as a matter of state law, that BIPA does not apply to Amazon's out-of-state conduct, which did not occur in Illinois at all—and certainly did not

26

occur "primarily and substantially" in Illinois.

27

[15] *See State of Delaware, Department of State:  Division of Corporations, Business Search Results for Flickr Inc. and Yahoo, Inc.,* https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx (last accessed Dec. 6, 2021).

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 12

1   including Amazon Rekognition.  Soatto Decl. ¶ 6; Xia Decl. ¶ 11; Xiong Decl. ¶ 16; Donini

2   Decl. ¶ 9; Sephus Decl. ¶ 5.

3          Amazon also did not have any communications with Illinois residents (or residents of

4   other states) whose photos were linked in the IBM DiF Dataset.  Indeed, Xiong—the only AWS

5   scientist who downloaded Version 1A and 1B of the Dataset—was not even aware that it may

6   contain links to photos or annotations about Illinois residents (nor were Donini or Sephus).

7   Xiong Decl. ¶ 16; Donini Decl. ¶ 9; Sephus Decl. ¶ 5.  The absence of any communications with

8   Illinois residents confirms that the circumstances giving rise to the claims did not occur primarily

9   and substantially in Illinois.  To hold otherwise would make BIPA apply to anyone who touches

10  an Illinois resident's data, even unwittingly, without regard to where the defendant resides or

11  conducted the activities giving rise to the BIPA claim.

12         All of Amazon's conduct related to the IBM DiF Dataset occurred outside of Illinois.

13  The evidence in this case thus confirms the possibility the Court recognized in ruling on

14  Amazon's motion to dismiss, i.e., "that with more factual refinement around this complex issue,

15  the circumstances around Amazon's attainment, possession and use of the Diversity in Faces

16  dataset will reveal that the alleged violations did not occur primarily in Illinois."  Dkt. 34 at 8.

17              **2.      Plaintiffs' Residency in Illinois Cannot Satisfy Illinois'
                          Extraterritoriality Doctrine.**

18

19         The only connection between Plaintiffs' BIPA claims and Illinois is that Plaintiffs are

20  Illinois residents who assert they uploaded photos to Flickr while allegedly located in Illinois.

21  Compl. ¶¶ 6-7, 66-67, 75.  That does not suffice.  Plaintiffs' residence alone cannot satisfy

22  Illinois' requirement that *Amazon's* alleged violation of BIPA must have occurred primarily and

23  substantially in Illinois.  *See, e.g., Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*,

24  2013 WL 1337303, at *7 (N.D. Ill. Mar. 29, 2013) (no substantial connection though plaintiff

25  was an Illinois business); *Vulcan Golf, LLC v. Google Inc.,* 552 F. Supp. 2d 752, 775 (N.D. Ill.

26  2008) (dismissing case when only contact was plaintiffs' Illinois residency).

27

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 13

A federal court recently refused a similar attempt to apply BIPA based solely on the plaintiffs' Illinois residence in another BIPA case against AWS because plaintiffs there sought to improperly apply the statute extraterritorially. *See McGoveran v. Amazon Web Services, Inc.*, 2021 WL 4502089 (D. Del. Sept. 30, 2021). In that case, plaintiffs alleged that when they called a call center located in Massachusetts, a defendant based in Georgia—who provided voice technology to the company that operated the call center—"extracted biometric information from calls originating from Illinois, from Illinois citizens, and from clearly recognizable Illinois phone numbers," and AWS based in Washington "intercepted biometric information" from Illinois callers. *Id.* at *4. The plaintiffs argued BIPA applied to this conduct because they were in Illinois when they called Massachusetts. *Id.* According to them, "under BIPA, as long as the source of the biometric data is Illinois, that's enough to establish liability." *Id.* at *6.

The district court flatly rejected that argument. "There is no basis in the statutory language to find that BIPA stretches so far." *Id.* The court held "[t]he location of the caller does not . . . say anything about the location where the rest of the conduct occurred," and there was no indication in the complaint that the non-Illinois defendants "did anything in Illinois." *Id.* at *4. Because the defendants did not do "anything" in Illinois, it followed that any BIPA violations did not occur "primarily and substantially" in Illinois. *Id.* at *6. The court distinguished decisions denying motions to dismiss in *Rivera v. Google*, 238 F.Supp.3d 1088 (N.D. Ill. 2017), and *Monroy v. Shutterfly*, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017), noting that in both those cases the defendants were alleged to have directly and intentionally interacted with the plaintiffs in Illinois. *Id.* at *11.[16]

Similarly, here Plaintiffs allege that they uploaded photos to Flickr while residing in Illinois many years before IBM's created its DiF Dataset, but as the *McGoveran* court correctly held, the location of the caller (in this case the uploader) says nothing about the location where the rest of the alleged conduct took place. *Id.* at *6. Moreover, *the uploading of the photos is*

---

[16] To Amazon's knowledge, decisions regarding extraterritoriality in BIPA cases have all been at the motion to dismiss stage, rather than assessed on summary judgment.

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*not when Amazon allegedly violated BIPA.*  As this Court recognized, BIPA expressly exempts "photographs" from its definition of "biometric identifier."[17]  Dkt. 34 at 12 (quoting 740 ILCS 14/10).  Accordingly, Amazon allegedly violated BIPA Section 15(b) not when Plaintiffs uploaded their photos, but several years later, when Amazon downloaded IBM's DiF Dataset in Washington and supposedly obtained Plaintiffs' biometric identifiers or information.  Likewise, Amazon allegedly violated Section 15(c) when it supposedly "profited" from Plaintiffs' biometric identifiers or information.  The relevant inquiry is "whether and to what extent *Amazon's alleged acts* involving the Diversity in Faces dataset occurred in Illinois"—not whether Plaintiffs are Illinois residents or uploaded photos from Illinois long before Amazon's alleged BIPA violations.  Dkt. 34 at 10 (emphasis added); *see also McGoveran*, 2021 WL 4502089, at *6.

Nor can Plaintiffs manufacture a link to Illinois by showing that Amazon failed to provide them Section 15(b) disclosures or seek their consent before obtaining their biometric information.  Under Section 15(b) claim, Plaintiffs must first prove that Amazon was required to provide such disclosures or consents for conduct in Washington or Georgia before pointing to the lack of communications.  In other words, the *absence* of communications with Illinois cannot bring otherwise extraterritorial conduct within BIPA's reach, as it is not conduct occurring "primarily and substantially" in Illinois.

The *McGoveran* court made this very point in dismissing the other BIPA case against AWS.  There, the plaintiffs argued that the defendants "failed to make written biometric data retention and destruction policies available to the public and that they failed to provide notice to and obtain consent from Illinois citizens."  *McGoveran*, 2021 WL 4502089, at *4.  But the court rejected the notion that a location could be assigned for the defendants' alleged failure to act:

---

[17] And Plaintiffs do not and cannot allege any wrongdoing based on Amazon obtaining their photographs.  By uploading photographs to Flickr pursuant to the Creative Commons license, Plaintiffs licensed anyone to use their photographs to copy, distribute, and make derivative works from their photographs.  Creative Commons, About The Licenses, https://creativecommons.org/licenses/.

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The Court does not see why that must be true (*See* Tr. at 10) ("It really makes no sense to assign a location for an act that did not occur.")  More fundamentally, that argument depends on the assumption that Defendants were required to provide notice, publish policies, and obtain consent in Illinois. . . . Plaintiffs have not alleged any activity in Illinois that would impose such obligations on Defendants.

*Id.*; *see also David K. Lindemuth Co. v. Shannon Fin. Corp.*, 637 F. Supp. 991, 994 (N.D. Cal. 1986) ("[t]here is no 'place' where [an] omission occur[s]").

Finally, the Court previously noted that depending on what the evidence of Amazon's actions shows, it could be possible that "alleged harm to privacy interests is ongoing for Illinois residents." Dkt. 34 at 8.  But the uncontroverted evidence demonstrates that there has been no harm to Illinois residents, and certainly is no ongoing harm to residents of Illinois or anywhere else.  The three Amazon scientists who briefly reviewed the IBM DiF Dataset determined it was unsuitable for their research purposes and never used it.  Xiong Decl. ¶ 8; Donini Decl. ¶ 5; Sephus Decl. ¶ 4.  The IBM DiF Dataset was not used or integrated into any Amazon product or service, including Rekognition.  Soatto Decl. ¶ 6; Xia Decl. ¶ 11; Xiong Decl. ¶ 16; Donini Decl. ¶ 9; Sephus Decl. ¶ 5.  And both versions of the IBM DiF Dataset that Xiong downloaded were deleted several months prior to the filing of this lawsuit.  Xiong Decl. ¶¶ 11, 15.

In short, this case is analogous to *McGoveran.*  Amazon had no interaction with Plaintiffs, and Amazon's conduct cannot be fairly attributed to Illinois.  Nothing happened in Illinois other than Plaintiffs allegedly uploading their photos to Flickr in Illinois, years before IBM created its DiF Dataset in New York.  That is the *only* conceivable connection between Plaintiffs' claims and Illinois.[18]  Plaintiffs ask the Court to adopt the very rule for which the *McGoveran* court found "no basis:" that a plaintiff's location in Illinois is enough to implicate BIPA even when the conduct forming the alleged BIPA violation occurred entirely outside Illinois.  That outcome makes no sense because, if that rule were correct, "BIPA could impose

---

[18] In *McGoveran*, the court noted that AWS emphasized that its data centers "are located wholly outside Illinois – in Virginia, Ohio, California, and Oregon – and Plaintiffs do not allege otherwise."  *McGoveran*, 2021 WL 4502089, at *4.  The IBM DiF Dataset was never stored anywhere other than on an Oregon server or on Donini's laptop (that was later wiped), and unlike in *McGoveran*, this case is presented on summary judgment, where plaintiffs have the burden of presenting evidence on their claims.

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 16

liability on a vast number of corporations who do no business in Illinois and who lack any other

significant connection to Illinois."  *McGoveran*, 2021 WL 4502089, at *6.  The Court should

follow *McGoveran* and reject Plaintiffs' argument.

### B.    If BIPA Were Interpreted to Apply to Amazon's Out-of-State Conduct, Plaintiffs' Claims Would Violate the Dormant Commerce Clause.

Even if BIPA could apply on the facts of this case as a matter of Illinois law, the dormant

Commerce Clause would prohibit Illinois from regulating Amazon's conduct in Washington or

Georgia.  The Commerce Clause, Article I, section 8, has long been understood to have a

negative implication "commonly known as the dormant Commerce Clause."  *Daniels*

*Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 614 (9th Cir. 2018).  The dormant Commerce Clause

prohibits a State from "directly affect[ing] transactions that take place across state lines or

entirely outside of the state's borders."  *Id.* (quoting *S.D. Myers, Inc. v. City & County of San*

*Francisco*, 253 F.3d 461, 467 (9th Cir. 2001 )).   If a state statute directly regulates conduct

"entirely outside of the state's borders," the statute is "struck down . . .  without further inquiry."

*Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) (citation

omitted).  In addition, the dormant Commerce Clause also prevents "inconsistent legislation

arising from the projection of one state regulatory regime into the jurisdiction of another

State."  *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 337 (1989) (citation omitted).  This case

presents both dormant Commerce Clause scenarios, although each is independently sufficient.

*Id.* at 336–37 (the Commerce Clause protects both against inconsistent legislation "generally" or

against one State "specifically … forc[ing] an out-of-state merchant to seek regulatory approval

in one State before undertaking a transaction in another.").

### 1.    Application of BIPA Would Regulate Conduct Occurring Entirely Outside of Illinois's Borders.

In the same way that "Congress's power to regulate articles or goods in commerce may

not permit it to regulate an item for eternity simply because it has once passed state lines,"

*United States v. Pappadopoulos*, 64 F.3d 522, 527 (9th Cir. 1995), abrogated on other grounds

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

by *Jones v. United States*, 529 U.S. 848, 854 (2000), Illinois may not regulate a photo (or information derived from a photo) anywhere in the world simply because the photo was taken in Illinois or contains information about an Illinois resident. For example, in *Daniels Sharpsmart*, the Ninth Circuit held that a party would likely succeed on its claim that California violated the dormant Commerce Clause when it attempted to regulate how medical waste arising in California could be disposed of in other States. 889 F.3d at 616. Similarly, the Ninth Circuit has held that California may not regulate art "sales that take place outside California" merely because the seller resides in California. *See Sam Francis Found. V. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015).

The principle is clear: "One state cannot be permitted to dictate what other states must do within their own borders." *Daniels Sharpsmart*, 889 F.3d at 615. Illinois cannot dictate what Amazon may do with biometric information within the borders of Washington or Georgia (to the extent Amazon's brief review of IBM's DiF Dataset in Georgia is even relevant). The Court should reject Plaintiffs' invitation to apply BIPA in an unconstitutional manner and should hold BIPA's application here violates the dormant Commerce Clause.

> ## 2.     BIPA's Application Here Would Conflict with Washington and Georgia Biometric Privacy Law.

Applying Illinois' BIPA to Amazon on the facts of this case would not only regulate out-of-state conduct but also supplant Washington's biometric privacy law and—to the extent relevant—Georgia's decision not to specifically regulate biometrics.

Washington has enacted its own Biometric Privacy Law that, unlike Illinois, expressly exempts "data generated" from "a physical or digital photo" from its protections. RCW 19.375.010(1). Washington has also chosen to extend privacy protections only to the use and collection of biometric information for "commercial purposes." RCW 19.375.020(1). Because Xiong downloaded the IBM DiF Dataset for research purposes, the "commercial purposes" limitation in the Washington law would exclude Amazon's download of the DiF Dataset.[19]

---

[19] "Commercial purpose" means "in furtherance of the sale or disclosure to a third party of a biometric identifier for the purpose of marketing of goods or services when such goods or services are unrelated to the initial transaction in

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Moreover, unlike Illinois, Washington requires notice and consent only to "enroll" biometric information in a database—which "enrollment" activity Plaintiffs do not allege Amazon engaged in—involving "captur[ing] a biometric identifier of an individual, convert[ing] it into a reference template that cannot be reconstructed into the original output image, and stor[ing] it in a database that matches the biometric identifier to a specific individual.  RCW 19.375.020; RCW 19.375.101(5).  There is no question that Plaintiffs hinge their liability theory on Amazon downloading a dataset in which IBM included data generated from some of the photos—conduct the Washington law would, again, exclude.  Amazon fully complied with Washington law, the jurisdiction where Xiong interacted with the IBM DiF Dataset (and wherein Xiong and Donini briefly evaluated and rejected any use of the Dataset).  The Court should not allow Plaintiffs to import Illinois' policy decisions into Washington to find a violation where Washington law would deem there was none.

While Sephus briefly evaluated the IBM DiF Dataset (stored on the S3 Bucket in Oregon, but never downloaded) in Georgia, such conduct should not be relevant to Plaintiffs two BIPA claims.  Section 15(b) does not regulate the review or evaluation of biometrics, and Sephus engaged in no conduct that could implicate Section 15(c).  Regardless, Georgia has made the decision not to regulate the use of biometric information, leaving biometric information freely available for use by companies and researchers, and Illinois should not be allowed to supplant that.

If BIPA were applied to Amazon's out-of-state conduct, it would effectively allow Illinois to make policy and legislative decisions for Washington and Georgia, substituting its views for the different biometric privacy policies adopted by other States.  It is no answer to suggest that Amazon could simply comply with the stricter law.  In that event, Illinois would still be overruling other State's chosen biometric policies—that is, Washington's decision to freely allow use of all biometric information for non-commercial purposes or Georgia's decision not to

---

which a person first gains possession of an individual's biometric identifier."  RCW 19.375.010(4).  In other words, Washington's biometric privacy statute applies only to the sale or disclosure of biometric information itself.

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

regulate at all.  *Cf. Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 640 (9th Cir. 1993) (rejecting a "comply with the most stringent" argument).

In denying Amazon's motion to dismiss, this Court rejected these arguments because it "need[ed] more information about the technology behind how Amazon obtained, stores, or uses the Diversity in Faces dataset[.]"  Dkt. 34 at 11.  As discussed above, Xiong downloaded the IBM DiF Dataset while in Washington to a restricted "S3 Bucket" on a server in Oregon.  Xiong Decl. ¶¶ 4, 5, 11.  Nothing is complex about the technology—the download simply operated in the way that any download from a web page might.  Merler Decl. ¶ 10.  Amazon did not "use" the Dataset at all.  Three AWS scientists—Xiong and Donini working in Washington and Sephus working in Georgia—evaluated the IBM DiF Dataset, determined it was unsuitable for their research purposes, and then deleted it.  Xiong Decl. ¶¶ 8, 11, 14, 15; Donini Decl. ¶ 5-7; Sephus Decl. ¶¶ 3, 4.  The IBM DiF Dataset was never used in any Amazon product or service, including Rekognition.  Soatto Decl. ¶ 6; Xia Decl. ¶ 11; Xiong Decl. ¶ 16; Donini Decl. ¶ 9; Sephus Decl. ¶ 5.

None of Amazon's relevant conduct occurred in Illinois, and the Court should dismiss Plaintiffs' BIPA claim because applying BIPA on these facts would violate the dormant Commerce Clause.

## II.    The Court Should Grant Summary Judgment on Plaintiff's BIPA Section 15(c) Claim

Aside from running afoul of extraterritoriality and the dormant Commerce Clause, Plaintiffs' BIPA Section 15(c) claim fails for another reason:  Amazon did not profit from Plaintiffs' biometric identifiers or information.

Section 15(c) states that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information."  740 ILCS 14/15(c).  In deciding Amazon's earlier motion to dismiss, the Court found that "§ 15(c) regulates transactions with two

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

components: (1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value." Dkt. 38 at 7.

The Court did not grant Amazon's motion to dismiss Plaintiffs' Section 15(c) claim because "Plaintiffs' factual allegations allow for the reasonable inference that selling Amazon's products necessarily shares access to the underlying biometric data in exchange for some benefit to Amazon." *Id.* at 12. But the Court also acknowledged that "[i]t is certainly possible that with further factual development, it is discovered that Amazon does not so integrate biometric data, or the Diversity in Faces database in particular, into its products." *Id.* That further factual development has occurred, and the undisputed facts is that Amazon did *not* ever use—let alone integrate—the IBM DiF Dataset into any of Amazon's products or services. Soatto Decl. ¶ 6; Xia Decl. ¶ 11; Xiong Decl. ¶ 16; Donini Decl. ¶ 9; Sephus Decl. ¶ 5.

To the extent that Plaintiffs suggest that the mere evaluation (and non-use) of the DiF Dataset by AWS scientists constitutes a Section 15(c) violation, they are wrong. As the Court already held in *Vance v. Microsoft*, "use [of] the biometric data to 'improve its facial recognition products and technologies,' which 'improve[d] the effectiveness' of those products and [make] them 'more valuable in the commercial marketplace'" are insufficient. *Vance v. Microsoft Corp.*, 2021 WL 1401634, at *5 (W.D. Wash. Apr. 14, 2021). Such "allegations support the inference that [Amazon] may have received some benefit from increased sales of its improved products," but that "do[es] not establish that [Amazon] disseminated or shared access to biometric data through its products" or "that the biometric data is itself so incorporated into [Amazon's] product that by marketing the product, it is commercially disseminating the biometric data." *Id.* In short, the undisputed evidence shows that Amazon did not profit from Plaintiffs' biometric information or identifiers. Summary judgment should be entered in Amazon's favor on Plaintiffs' Section 15(c) claim.

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**III.     This Court Should Grant Summary Judgment on Plaintiffs' Claim for Unjust Enrichment.**

Plaintiffs claim Amazon obtained a "monetary benefit" from Plaintiffs and Class Members to their detriment and that Amazon did so by "profiting off of Plaintiffs' and Class Members' biometric identifiers and information."  Compl. ¶ 114.  But the undisputed evidence establishes that Amazon did nothing with the DiF Dataset at all.  It therefore did not and could not possibly have obtained any "monetary benefit" or "profit" from Plaintiffs' identifiers or information.  The Court should grant summary judgment dismissing this claim.

In denying Amazon's Motion to Dismiss, this Court held that Illinois law governed Plaintiffs' unjust enrichment claims because Plaintiffs allegedly uploaded their photos in Illinois. Dkt. 38 at 16 ("uploaded Illinois-created content in Illinois"); *id.* ("Plaintiffs providing images of their faces—albeit unknowingly—that ultimately improved Amazon's products"); Dkt.  38 at 17 ("the benefiting act (the sharing of facial images) was done [in Illinois]").[20]

Under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145 (Ill. 1989)).

Although Plaintiffs alleged that Amazon benefited because it used the IBM DiF Dataset to "improve its facial recognition products," Compl. ¶ 65, the evidence demonstrates that this

---

[20] In its motion to dismiss, Amazon argued that Washington law should apply under a choice of law analysis.  Under Washington law, Plaintiffs must show "(1) [Amazon] received a benefit, (2) at [Plaintiffs'] expense, and (3) the circumstances make it unjust for [Amazon] to retain the benefit without payment."  *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012) (citing *Young v. Young*, 164 Wn. 2d 477, 484 (2008)).  For the reasons Plaintiffs' unjust enrichment claim fails under Illinois law, it fails under Washington law.  Amazon received no benefit from its brief download and review of the DiF Dataset.  Similarly, to the extent that Georgia law could apply because Sephus evaluated the IBM DiF Dataset in Atlanta (and it should not), Plaintiffs' unjust enrichment claim also fails under Georgia law.  Plaintiffs do not suggest that Amazon "induced or encouraged [Plaintiffs] to provide something of value to [Amazon]; that [Plaintiffs] provided a benefit to [Amazon] with the expectation that [Amazon] would be responsible for the cost thereof; and that [Amazon] knew of the benefit being bestowed upon it by [Plaintiffs] and either affirmatively chose to accept the benefit or failed to reject it."  *See Sitterli v. Csachi*, 811 S.E.2d 454, 456 (Ga. App. Ct. 2018) (citation omitted).

allegation is flatly wrong.  Amazon did not use or benefit from the IBM DiF Dataset in any way, much less "profit" from it.  The Dataset was not used or integrated in any Amazon product or service –including Rekognition.  Soatto Decl. ¶ 6; Xia Decl. ¶ 11; Xiong Decl. ¶ 16; Donini Decl. ¶ 9; Sephus Decl. ¶ 5.  Because there has been no "benefit" conferred on Amazon from the download of Plaintiffs' alleged biometric information or identifiers, Plaintiffs cannot prove Amazon was unjustly enriched under either Illinois or Washington law.  The Court should grant summary judgment in Amazon's favor on Plaintiffs' unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court grant summary judgment on Plaintiffs' claims.

DATED this 10th day of December, 2021.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendant Amazon.com, Inc.


By /s/ Jaime Drozd Allen
  Jaime Drozd Allen, WSBA #35742
  David Maas, WSBA #50694
  920 Fifth Avenue, Suite 3300
  Seattle, WA  98104-1610
  Telephone: (206) 757-8039
  Fax: (206) 757-7039
  E-mail: JaimeAllen@dwt.com
            DavidMaas@dwt.com


MORGAN LEWIS & BOCKIUS
Attorneys for Defendant Amazon.com, Inc.


By /s/ Elizabeth B. Herrington
  Elizabeth B. Herrington (pro hac vice)
  110 North Wacker Drive, Suite 2800
  Chicago, IL 60606-1511
  Telephone: (312) 324-1188
  E-mail:  beth.herrington@morganlewis.com

AMAZON'S MOTION
FOR SUMMARY JUDGMENT
(2:20-CV-01084-JLR) - 23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax