THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN VANCE, *et. al.*,

                 Plaintiffs,

    v.

AMAZON.COM, INC,

                 Defendant.

No. 2:20-cv-01084-JLR

**DEFENDANT AMAZON.COM, INC.'S RENEWED MOTION FOR SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR:**
June 10, 2022

**ORAL ARGUMENT REQUESTED**

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

UNDISPUTED MATERIAL FACTS .......................................................................... 3

    A.    Flickr and the Yahoo-Created YFCC100M Dataset ................................ 3

    B.    The IBM-Created DiF Dataset .................................................................. 4

    C.    Plaintiffs' Flickr Photos ........................................................................... 4

    D.    Amazon's Download and Deletion of the IBM DiF Dataset .................... 6

    E.    Three Amazon Research Scientists' Brief Evaluation of the IBM
        DiF Dataset ............................................................................................... 7

        1.    Dr. Yuanjun Xiong's Evaluation in Washington .......................... 7

        2.    Dr. Michele Donini's Evaluation in Washington ......................... 8

        3.    Dr. Nashlie Sephus's Evaluation in Georgia ................................ 9

ARGUMENT ........................................................................................................... 10

  I.    BIPA Does Not and Cannot Constitutionally Apply to Amazon's
        Activities in Washington and Georgia. ................................................... 11

    A.    BIPA Does Not Apply Extraterritorially to Amazon. ............................ 11

        1.    The Undisputed Facts Confirm that Amazon's Relevant
            Conduct Occurred Entirely Outside Illinois. .............................. 12

        2.    Amazon's Alleged BIPA Violation Had No Connection to
            Illinois. ........................................................................................ 13

        3.    Plaintiffs' Illinois Residency Alone Cannot Satisfy Illinois'
            Extraterritoriality Doctrine .......................................................... 14

    B.    Applying BIPA to Amazon's Out-of-State Conduct Would Violate
        the Dormant Commerce Clause. ............................................................. 16

        1.    Plaintiffs May Not Use BIPA to Regulate Conduct
            Occurring Outside of Illinois' Borders. ...................................... 17

        2.    BIPA's Application Would Conflict with Washington's
            Privacy Law. ................................................................................ 18

  II.    BIPA Section 15(b) Does Not Apply Because Amazon Had No
        Reasonable Way to Give Notice or Obtain Consent Before Downloading
        the DiF Dataset. ...................................................................................... 20

  III.    The Court Should Grant Summary Judgment on Plaintiffs' Section 15(c)
        Claim. ...................................................................................................... 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF CONTENTS</u>
(continued)

Page

IV.    The Court Should Grant Summary Judgment on the Unjust Enrichment
Claim............................................................................................................................. 23

CONCLUSION........................................................................................................................ 24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005) ............................................................................11, 14

*Chinatown Neighborhood Ass'n v. Harris*,
  794 F.3d 1136 (9th Cir. 2015) ...........................................................................16

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) .............................................................................23

*Cousineau v. Microsoft Corp.*,
  992 F. Supp. 2d 1116 (W.D. Wash. 2012)..........................................................23

*Daniels Sharpsmart, Inc. v. Smith*,
  889 F.3d 608 (9th Cir. 2018) .......................................................................16, 17

*David K. Lindemuth Co. v. Shannon Fin. Corp.*,
  637 F. Supp. 991 (N.D. Cal. 1986) .....................................................................14

*Healy v. Beer Inst., Inc.*,
  491 U.S. 324 (1989)......................................................................................16, 17

*Hesketh v. Total Renal Care, Inc.*,
  2021 WL 5761610 (W.D. Wash. Dec. 3, 2021) (Robart, J.) ..............................10

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
  545 N.E.2d 672 (Ill. 1989) .................................................................................23

*Iancu v. Brunetti*,
  139 S. Ct. 2294 (2019).........................................................................................12

*Landau v. CNA Fin. Corp.*,
  886 N.E.2d 405 (Ill. App. 2008) .........................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).............................................................................................10

*Mazza v. Am. Honda Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale
  Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) .......................19

*McGoveran v. Amazon Web Servs., Inc.*,
  2021 WL 4502089 (D. Del. Sept. 30, 2021) ................................................. *passim*

AMAZON'S RENEWED MOT. FOR SUMM. J - iii
(2:20-CV-01084-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Monroy v. Shutterfly*,
　2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) .......................................................................15

*Nat'l Collegiate Athletic Ass'n v. Miller*,
　10 F.3d 633 (9th Cir. 1993) ................................................................................................19

*People v. Hanna*,
　207 Ill. 2d 486 (2003) .........................................................................................................21

*People v. Scheib*,
　390 N.E.2d 872 (Ill. 1979) ..................................................................................................12

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
　442 F.3d 741 (9th Cir. 2006) .................................................................................................3

*Rivera v. Google*,
　238 F. Supp. 3d 1088 (N.D. Ill. 2017) ...............................................................................15

*Rosenbach v. Six Flags Entm't*,
　129 N.E.3d 1197 (Ill. 2019) ................................................................................................20

*Sam Francis Found. v. Christies, Inc.*,
　784 F.3d 1320 (9th Cir. 2015) ............................................................................................17

*S.D. Myers, Inc. v. City & Cnty. of San Francisco*,
　253 F.3d 461(9th Cir. 2001 .................................................................................................16

*Sitterli v. Csachi*,
　811 S.E.2d 454 (Ga. App. Ct. 2018) ..................................................................................23

*Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*,
　2013 WL 1337303 (N.D. Ill. Mar. 29, 2013) .....................................................................15

*United States v. Pappadopoulos*,
　64 F.3d 522 (9th Cir. 1995), *abrogated on other grounds by Jones v. United*
　*State*s, 529 U.S. 848 (2000) ...............................................................................................17

*Vance v. Microsoft Corp.*,
　534 F. Supp. 3d 1301 (W.D. Wash. 2021)..........................................................................22

*Vulcan Golf, LLC v. Google Inc.*,
　552 F. Supp. 2d 752 (N.D. Ill. 2008) .................................................................................15

*Zellmer v. Facebook, Inc.*,
　2022 WL 976981 (N.D. Cal. Mar. 31, 2022)...........................................................2, 20, 21

AMAZON'S RENEWED MOT. FOR SUMM. J - iv
(2:20-CV-01084-JLR)

**Statutes**

740 ILCS 14/5(b) ...................................................................................................11

740 ILCS 14/15(b) ......................................................................................... *passim*

740 ILCS 14/15(c) ......................................................................................... *passim*

RCW 19.375.010 ...................................................................................................18

RCW 19.375.020 ...................................................................................................18

RCW 19.375.101(5) ...............................................................................................18

**Other Authorities**

U.S. Constitution Commerce Clause ......................................................................16

Fed. R. Civ. P. 56(a) ..............................................................................................10

Creative Commons, About The Licenses, https://creativecommons.org/licenses/
(last visited May 19, 2022) ...........................................................................3, 5

Flickr, How to Change Your License on Flickr https://www.flickrhelp.com/hc/en-
us/articles/4404078674324-Change-Your-Photo-s-License-in-Flickr (last
visited May 19, 2022) .........................................................................................3

*State of Delaware, Department of State: Division of Corporations, Business
Search Results for Flickr Inc. and Yahoo, Inc.,*
https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx (last
accessed May 19, 2022) ......................................................................................3

AMAZON'S RENEWED MOT. FOR SUMM. J - v
(2:20-CV-01084-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

**INTRODUCTION**

2      In February 2019, Amazon downloaded the IBM Diversity in Faces Dataset ("DiF

3   Dataset" or "Dataset"), a collection of publicly available photos (and related data) from around

4   the world that, without Amazon's knowledge, apparently contained links to photos of Illinois

5   residents.  Amazon downloaded the Dataset from Washington, quickly determined it was useless

6   for Amazon's research purposes, and did not use it for any of its products or services.  This

7   action presents the question whether Amazon, a Washington-based company, can be held liable

8   for statutory damages under the Illinois Biometric Information Privacy Act ("BIPA"), even

9   though it took no action in Illinois and had no knowledge that any photos or data regarding

10   Illinois residents may have been in the Dataset.  The answer is no.  BIPA does not apply

11   extraterritorially to Amazon here because it engaged in no conduct that allegedly violated BIPA

12   "primarily and substantially" in Illinois, as required to trigger BIPA under Illinois law.  To hold

13   otherwise would also violate the dormant Commerce Clause, as such a reading of BIPA would

14   conflict with the Washington Biometric Privacy Law—the state in which Amazon downloaded

15   the Dataset.  And having considered but never used the Dataset to develop or improve any

16   products or services, Amazon was not unjustly enriched by it.

17      The DiF Dataset is a large and diverse set of human faces that IBM, a New York

18   company, created in New York to advance the study of fairness, accuracy, and bias in facial

19   recognition technology.  The Dataset contains links to roughly 1 million publicly available

20   photos taken all over the world, as well as annotations of data regarding some (but not all) of the

21   faces in the photos.  In early 2019, IBM offered its DiF Dataset to approved researchers, free of

22   charge, for use in research only.  One research scientist employed by Amazon Web Services

23   ("AWS" or "Amazon") and located in Washington downloaded two versions of the DiF Dataset,

24   using an online link from IBM.  Three AWS research scientists—two in Washington and one in

25   Georgia—each then briefly evaluated the Dataset and determined that it did not meet their

26   respective research needs.  None of these scientists were aware that the Dataset contained links

27

AMAZON'S RENEWED MOT. FOR SUMM. J - 1
(2:20-CV-01084-JLR)

to photos of Illinois residents.  None of them used the Dataset for their research work, nor shared it with anyone else, and Amazon deleted both versions.

Illinois residents Steven Vance and Tim Janecyk now allege that Amazon (a) violated BIPA Section 15(b) simply by downloading the IBM DiF Dataset in Washington without their consent—even though Amazon could not have known their faces were in it; and (b) was unjustly enriched by downloading and profiting from use of Plaintiffs' biometric identifiers and information from the Dataset.  The Court denied in part Amazon's motion to dismiss, concluding "more factual refinement" about "the circumstances around Amazon's attainment, possession and use of the Diversity in Faces dataset" was needed.  Dkt. 34 at 8.

Now, with the record developed, the Court should grant summary judgment for the following four reasons:

*First*, BIPA does not apply here because Amazon did not engage in any action in Illinois, much less "primarily and substantially" in Illinois as required for BIPA to govern.  Amazon did not download Plaintiffs' alleged biometrics in Illinois, did not use the Dataset for any Amazon product or service, and had no interaction with Plaintiffs or reason to know the Dataset may contain links to Illinois residents' photos, much less their biometric identifiers.  Further, if BIPA were construed to reach Amazon's conduct in Washington and Georgia, the statute would violate the dormant Commerce Clause.  Illinois cannot reach outside its borders to dictate what Amazon must do in Washington or Georgia, especially considering Illinois' policy choices embodied in BIPA squarely conflict with Washington's and Georgia's.

*Second*, Amazon has no relationship with Plaintiffs and no way to identify them, let alone a way to provide notice or obtain consent.  BIPA's notice and consent provision in Section 15(b) cannot apply under the circumstances in this case.  "[I]t would be patently unreasonable to construe BIPA" to require notice to and consent from individuals who were "total strangers." *See Zellmer v. Facebook, Inc.*, 2022 WL 976981, at *3 (N.D. Cal. Mar. 31, 2022).

*Third*, Plaintiffs' Section 15(c) claim fails because Amazon did not use or integrate the IBM DiF Dataset into any of its products or services, including Amazon Rekognition.  Although

AMAZON'S RENEWED MOT. FOR SUMM. J - 2
(2:20-CV-01084-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the Court denied in part Amazon's earlier motion to dismiss Plaintiffs' Section 15(c) claim, the Court acknowledge that "[i]t is certainly possible that with further factual development, it is discovered that Amazon does not so integrate biometric data, or the Diversity in Faces database in particular, into its products."  Dkt. 38 at 12.  The facts are now known—Amazon did not integrate Plaintiffs' biometric data or the DiF Dataset into any products whatsoever.

*Finally*, even if the information in the DiF Dataset constituted biometric information or identifiers (a contested fact), Amazon simply received no "benefit" or "profit" from it.  Plaintiffs therefore have no unjust enrichment claim.

## UNDISPUTED MATERIAL FACTS

### A.    Flickr and the Yahoo-Created YFCC100M Dataset

Flickr is a photo sharing website that allows users to upload and share photos with others online.  Compl. ¶ 28.  Between at least 2004 and 2014, Flickr users could choose to upload their photos under either an "All Rights Reserved" license or a "Creative Commons" license.[1]  Under the former, the Flickr user retained the right to make copies and distribute uploaded photos.  *Id.*  Under the latter, the Flickr user consented to third parties' ability to copy, distribute, edit, and use the photos.[2]  The purpose of a Creative Commons license is to create a "digital commons, a pool of content that can be copied, distributed, edited, remixed, and built upon, all within the boundaries of copyright law."  *Id.*

In 2014, Yahoo!—Flickr's then-parent[3]—publicly released a dataset of about 100 million photos uploaded to Flickr's website between 2004 and 2014.  Compl.  ¶ 29; Dkt. 70 ("Merler Decl.") at Ex. A ("IBM DiF Paper").  The dataset became known as "the Yahoo Flickr Creative

---

[1] *See* Flickr, How to Change Your License on Flickr, https://www.flickrhelp.com/hc/en-us/articles/4404078674324-Change-Your-Photo-s-License-in-Flickr (last visited May 19, 2022) (describing the licenses supported by Flickr).

[2] Creative Commons, About The Licenses, https://creativecommons.org/licenses/ (last visited May 19, 2022) (describing licenses as allowing "others [to] distribute, remix, adapt, and build upon your work").

[3] Both Flickr, Inc. and Yahoo Inc. are Delaware corporations based in California.  *See State of Delaware, Department of State:  Division of Corporations, Business Search Results for Flickr Inc. and Yahoo, Inc.,* https://icis.corp.delaware.gov/eCorp/EntitySearch/NameSearch.aspx (last accessed May 19, 2022). The Court may take judicial notice of information on a state government website because it is "readily verifiable and, therefore, the proper subject of judicial notice." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746, n.6 (9th Cir. 2006).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Commons 100 Million Dataset (YFCC100M), "the largest public multimedia collection that has ever been released, comprising a total of 100 million media objects [i.e., photos] . . . all of which have been uploaded to Flickr between 2004 and 2014 and published under a [Creative Commons] commercial or non-commercial license." *Id.* at 66. The YFCC100M dataset includes only photos that users voluntarily allowed third parties to copy, distribute, and use. *Id.*

## B.    The IBM-Created DiF Dataset

In 2019, IBM researchers released the DiF Dataset "to help advance the study of fairness and accuracy in face recognition technology." IBM DiF Paper at 24. To create this dataset in compliance with "various copyright laws and privacy regulations," IBM researchers used only photos from the YFCC100M dataset subject to the Creative Commons license. *Id.* at 7-8. After selecting photos, IBM researchers applied 10 coding schemes and "annotations" from some of the photos in the dataset, including information related to some of the faces in some of the photos, such as "craniofacial distances" and "areas and ratios." *Id.* at 9. They also included other demographic information about some of the faces in the photos, such as the estimated age and gender. *Id.* at 9, 14–16. Information about faces in the photos linked in the Dataset was "purely descriptive and designed to provide a mechanism to evaluate diversity in the dataset—not to provide a method of facial identification." Merler Decl. ¶ 7.

IBM researchers who created the DiF Dataset did so in New York, and IBM created and stored the Dataset on servers in New York. *Id.* at ¶ 8. IBM did not create the Dataset in Illinois, did not store it on computers in Illinois, and did not take any other actions involving the Dataset in Illinois. *Id.* The Dataset Terms of Use prohibited recipients of the Dataset from "attempt[ing] to identify any individuals within the IBM Research DiF Dataset." Merler Decl., Ex. H, Terms of Use at 3. IBM made the DiF Dataset available for free download to researchers who filled out a questionnaire certifying they sought access for research purposes only. Merler Decl. ¶ 9.

## C.    Plaintiffs' Flickr Photos

Plaintiffs assert that, while in Illinois, they uploaded photos of themselves and others to their Flickr accounts. Compl. ¶¶ 66, 75; Dkt. 63 ("Allen Decl."), Ex. 1 ("Vance Dep.") 132:4–6;

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*id.* Ex. 2, ("Janecyk Dep.") 99:21–100:13.  When signing up for Flickr, Plaintiffs did not exercise the option to restrict who could access their photos, such as choosing the All Rights Reserved license.  Vance Dep. 207:17–208:4; Janecyk Dep. 72:2–24.  Instead, they uploaded their photos under the Creative Commons license, Vance Dep. 206:1–6; Janecyk Dep. 72:2–9, granting the public "license" to "distribute, remix, adapt, and build upon [their] work[.]"  Creative Commons, About The Licenses, https://creativecommons.org/licenses/ (last visited May 19, 2022).

Vance testified that he uploaded at least 18,595 public photos to Flickr, and at least 63 of these were included by IBM in the DiF Dataset.  Vance Dep. 179:22–23; 210:19–24.  These 63 photos depict other people, not just Vance, and he did not always know whether these people were Illinois residents.  *Id.* at 132:4–14; 154:5–16.  Some of these 63 photos were taken by someone other than Vance, and some were taken outside Illinois.  *Id.* at 70:2–71:22; 131:10–132:2.

Janecyk uploaded 1,669 public photos to Flickr, 24 of which became part of the Dataset.  Janecyk Dep. 74:21–24; 95:22–96:1.  Janecyk's practice was to photograph strangers on the streets of Chicago.  *Id.* 45:16–46:19.  Aside from himself and people Janecyk knew only as "Popcorn Mike" and "Dave," Janecyk did not know the names of *anyone* in the 24 photos and did not know where they lived.  *Id.* 98:8–100:13; 167:11–168:15; 225:9–227:4; 228:19–21.  At least two of the 24 photos were taken outside of Illinois.  *Id.* 97:18–20.  Janecyk put a note on his account saying "PLEASE STEAL MY PHOTOS! ... I encourage you to steal any of my photography for personal or commercial use."  Allen Decl., Ex. 3; Janecyk Dep. Ex. 4.  Although Janecyk testified that this was "kind of a joke," he acknowledged he would allow people to use his photos from Flickr for non-commercial purposes.  Janecyk Dep. 88:14–89:6.

Neither Vance nor Janecyk alleges he had any contact or communication with Amazon (in Illinois or elsewhere) concerning the DiF Dataset or their photos on Flickr.  Vance Dep. 187:9–19; 199:8–12; Janecyk Dep. 95:3–6; 33:18–21.  Neither Plaintiff contacted IBM about removing their photos from the Dataset upon learning the photos were in it.  *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**D.      Amazon's Download and Deletion of the IBM DiF Dataset**

In late January 2019, former AWS scientist Dr. Tal Hassner, who worked in California at the time, asked Dr. Stefano Soatto—who was an AWS Director based in California—if he could request access to the IBM DiF Dataset to allow the AWS AI Computer Vision research team (the "Research Team") to determine whether the Dataset would be suitable for a research project involving fairness and bias in machine learning.  Dkt. 64 ("Soatto Decl.") ¶ 3; Soatto Dep. 125:8-128:6; Dkt. 69 ("Hassner Decl.") ¶ 3; Hassner Dep. 125:8-128:6.[4]  Soatto provided Hassner permission to request access from IBM to the DiF Dataset for that purpose.  Soatto Decl. ¶ 3; Soatto Dep. 134:207; Hassner Decl. ¶ 3.

In early February 2019, Hassner requested access to Version 1A of the DiF Dataset from IBM.  Hassner Decl. ¶ 4; Hassner Dep. 131:1-18.  IBM gave Hassner access to the Dataset via a link sent while Hassner was in California.  Hassner Decl. ¶¶ 1, 4; Hassner Dep. 160:9-161:12.

Dr. Yuanjun Xiong, an AWS Principal Scientist in Seattle, received the online link from Hassner by email, and downloaded Version 1A of the DiF Dataset.  Dkt. 65 ("Xiong Decl.") ¶¶ 1, 4; Xiong Dep. 67:2-8.  Xiong stored the Dataset in two locations used by the Research Team: (1) Amazon Elastic Block Storage ("Amazon EBS") and (2) the Research Team's "S3 Bucket," which is the specific AWS cloud storage location used by the Research Team.  Xiong Decl. ¶¶ 4-5; Xiong Dep. 109:2-110:18.  Access to and use of this Amazon EBS and this S3 Bucket was restricted to the approximately 50-member Research Team.  Xiong Decl. ¶ 5; Xiong Dep. 122:21-123:6.  Both the Amazon EBS and S3 Bucket were stored on AWS's US West (Oregon) Region data centers.  Xiong Decl. ¶¶ 4-5; Xiong Dep. 108:8-15, 100:24-111:5, 111:23-112:6.

On April 8, 2019, Hassner received an email from IBM noting that a new version (Version 1B) of its Dataset was available.  IBM instructed recipients of Version 1A of the Dataset to delete that version and confirm that they had done so.  Hassner Decl. ¶ 5; Hassner

---

[4] Other than excerpts from Plaintiffs' depositions (attached as exhibits to Dkt. 63), all other deposition excerpts are attached to the concurrently filed Wiese Declaration.

AMAZON'S RENEWED MOT. FOR SUMM. J - 6
(2:20-CV-01084-JLR)

Dep. 205:2-25; Xiong Decl. ¶ 10; Xiong Dep. 251:8-11.  On April 8, 2019, consistent with IBM's instructions, Xiong deleted Version 1A from the Amazon EBS and the Research Team's S3 Bucket.  Xiong Decl. ¶ 11; Xiong Dep. 252:1-253:5.  Upon Xiong's deletion of Version 1A of the DiF Dataset, no one at Amazon had access to it or was able to use it.  Xiong Decl. ¶ 11.

On or about April 8, 2019, while located in Washington, Xiong then downloaded Version 1B of the IBM DiF Dataset to the Research Team's Amazon EBS and S3 Bucket from the link Hassner received from IBM.  Xiong Decl. ¶ 12; Xiong Dep. 257:3-14; 263:3-6.

In late 2019 or early 2020, Xiong deleted Version 1B of the IBM DiF Dataset from the Amazon EBS and the Research Team's S3 Bucket. Xiong Decl. ¶ 15; Xiong Dep. 267:23-269:20.  Upon Xiong's deletion of Version 1B of the IBM DiF Dataset, no one at Amazon would have had access to it or been able to use it for any purpose.  Xiong Decl. ¶¶ 11, 15.

E.     **Three Amazon Research Scientists' Brief Evaluation of the IBM DiF Dataset**

1.     **Dr. Yuanjun Xiong's Evaluation in Washington**

In March 2019, Xiong evaluated Version 1A of the IBM DiF Dataset to determine whether it would be suitable for the Research Team's project involving fairness and bias in machine learning models.  Xiong Decl. ¶ 6.  Xiong conducted this evaluation while located in Washington.  *Id.*; Xiong Dep. 106:7-13, 132:4-12.  To determine whether the Dataset would be useful to the Research Team, he ran preliminary experiments on it, which included statistical analysis on the diversity distribution (counting the number of certain human attributes, including skin tones, genders, and ages) and running computer vision models, including Rekognition and open-source models, on the Dataset's images to determine accuracy rates.  Xiong Dep. 67:2-73:15, 131:10-132:9, 154:17-155:1.  While running these experiments, Xiong was concerned only with whether the Dataset was useful for the Research Team, and ultimately determined that the Dataset contained too many errors to be used for any purpose whatsoever.  *Id.* 131:10-133:15; 140:19-143:19.  Xiong did not train Rekognition or any other computer vision model on

AMAZON'S RENEWED MOT. FOR SUMM. J - 7
(2:20-CV-01084-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the DiF Dataset or use the DiF Dataset to improve or affect Rekognition or any other product or service in any way—he merely ran a benchmark test. *Id.* 70:16-73:15; 275:19-276:14.

After his evaluation, Xiong discussed the results with his colleagues, Soatto and Dr. Wei Xia, and determined the DiF Dataset was not suitable for the Research Team's purposes. Xiong Decl. ¶ 7; Xiong Dep. 150:23-151:10. The Research Team required datasets with sufficient demographic diversity, i.e., datasets that consistent of adequate images with different skin tones, genders, and ages. Xiong Decl. ¶ 7; Xiong Dep. 154:17-155:1. Their research also required a dataset to have accurate demographic annotations, e.g., annotations that matched the apparent gender of the person in the photograph. Xiong Decl. ¶ 7; Xiong Dep. 139:4-12, 155:2-21. Version 1A of the Dataset did not have either. Xiong Decl. ¶ 7; Xiong Dep. 154:17-155:21.

After determining that Version 1A of the IBM DiF Dataset was unsuitable for the Research Team's purposes, neither Xiong nor his colleagues Soatto and Xia are aware of any other member of the Research Team using the Dataset. Xiong Decl. ¶ 8; Dkt. 66 ("Xia Decl.") ¶ 10; Xia Dep. 42:3-17; Soatto Decl. ¶ 6; Soatto Dep. 131:10-20.

Although Xiong later downloaded Version 1B of the DiF Dataset, he did not evaluate or use Version 1B of the Dataset. Xiong Decl. ¶ 14; Xiong Dep. 264:19-21. Neither Xiong nor his colleague Xia are aware of any other member of the Research Team using or accessing Version 1B of the IBM DiF Dataset. Xiong Decl. ¶ 14; Xiong Dep. 265:21-266:9; Xia Decl. ¶ 10.

### 2.    Dr. Michele Donini's Evaluation in Washington

In late March 2019, Xiong provided Dr. Michele Donini of AWS with access to Version 1A of the DiF Dataset stored on the Research Team's S3 Bucket for Donini's own evaluation of the Dataset. Xiong Decl. ¶ 9; Xiong Dep. 170:21-171:4. Donini was an Applied Scientist II for AWS, but not a member of the Research Team; therefore, he needed Xiong to provide him access to the S3 Bucket. Dkt. 67 ("Donini Decl.") ¶ 4; Donini Dep. 13:14-23; 42:21-43:2. Donini was working in Seattle, Washington at the time. Donini Decl. ¶ 4; Donini Dep. 43:7-22.

Donini saved a local copy of the DiF Dataset to his Amazon-issued laptop and examined the Dataset, specifically its demographic annotations. Donini Decl. ¶ 4-5. He used code to count

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the number of entries for certain subgroups—for example, entries for certain age groups and ethnicity—and those results alone caused him to quickly conclude the Dataset was unbalanced and useless.  Donini Decl. ¶¶ 4-5; Donini Dep. 43:23-25, 58:17-61:6, 141:7-23, 83:19-24.  After making this determination, Donini did not use the Dataset for any purpose.  Donini Decl. ¶ 5; Donini Dep. 137:24-138:3.  Donini does not recall specifically deleting the local copy of the DiF Dataset he saved on his Amazon-issued laptop, but it was his typical practice to delete datasets he was unable to use.  Donini Decl. ¶ 6; Donini Dep. 65:16-23; 109:5-10.  Prior to transferring to Amazon's Berlin, Germany office in February 2020, Donini returned his Amazon-issued laptop to Amazon's Seattle office.  Donini Decl. ¶ 7.  Amazon's standard practice is to wipe any laptops returned by its employees, which erases all data on the device.  *Id.*; Donini Dep. 113:9-18.

Donini never shared the local copy of the IBM DiF Dataset that was saved on his Amazon-issued laptop with anyone, and he did not back up or upload the DiF Dataset to any device or cloud-server.  Donini Decl. ¶ 8; Donini Dep. 89:8-11.  He is not aware of any version of the DiF Dataset being used for or integrated into any Amazon product or service, including Amazon Rekognition.  Donini Decl. ¶ 9; Donini Dep. 120:6-14.

### 3. Dr. Nashlie Sephus's Evaluation in Georgia

In April 2019, Xiong provided his AWS colleague, Dr. Nashlie Sephus, with access to Version 1B of the DiF Dataset stored on the Research Team's S3 Bucket for Sephus's own evaluation of the dataset.  Xiong Decl. ¶ 13; Xiong Dep. 262:3-6.  Sephus was an Applied Scientist Manager for AWS, but not a member of the Research Team; therefore, she needed to be provided access to the S3 Bucket.  Xiong Decl. ¶ 13. She was working in Atlanta, Georgia at the time.  Dkt. 68 ("Sephus Decl.") ¶ 1.

Xiong provided Sephus access to Version 1B stored in the S3 Bucket, so she could determine whether the Dataset would be suitable for her research auditing fairness and bias in Amazon Rekognition.  *Id.* ¶ 3.  Sephus did not separately save any copy of the DiF Dataset but worked directly with the copy saved in the S3 Bucket.  *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Sephus tried to run Rekognition against a few images in the Dataset but ran into "roadblocks" and did not even finish the script she wrote to do so.  Sephus Dep. 41:2-10, 41:18-42:5.  She also manually compared a few of the images in the Dataset to the annotations and found there were "several misannotated labels or images."[5]  Sephus Dep. 95:6:96-1.  Specifically, she looked at the images for six photos annotated as "darker-skinned females," and found the annotations did not match the apparent gender or skin tone of the persons in the photos.  *Id.* 96:23-97:11.  In Sephus' opinion, the Dataset was biased toward lighter-skinned males.  *Id.* 131:6-15.  At that point, Sephus stopped and moved on to another dataset.  *Id.* 96:23-97:11.  She cited those same six sample photos in a presentation to show how the DiF Dataset was mislabeled and cited them again in a paper about bias in gender classification generally, but performed no further evaluation of the Dataset.  *Id.* 97:12-18, 132:8-10, 141:19-24; Sephus Decl., ¶ 4.  She is not aware of any version of the DiF Dataset being used for or integrated into any Amazon product or service, including Rekognition.  Sephus Decl. ¶ 5.

## ARGUMENT

The Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To avoid summary judgment, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Hesketh v. Total Renal Care, Inc.*, 2021 WL 5761610, at *7 (W.D. Wash. Dec. 3, 2021) (Robart, J.).  Because Amazon "does not bear the ultimate burden of persuasion at trial," it is entitled to judgment "by showing that the nonmoving party lacks evidence of an essential element of its claim[.]"  *Hesketh*, 2021 WL 5761610, at *7.

---

[5] Sephus said she received annotations about the hair length for a subset of the Dataset from Xiong (Sephus Dep. 165:24-167:17), but she could not recall whether those annotations were actually created for the DiF Dataset or different dataset (*Id.* 37:15-21).  In any case, creating annotations on a dataset involves only humans reviewing and labeling the images—neither Rekognition nor any other computer vision model would be used.  Xiong Dep. 329:1-330:6.

AMAZON'S RENEWED MOT. FOR SUMM. J - 10
(2:20-CV-01084-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    **I.    BIPA Does Not and Cannot Constitutionally Apply to Amazon's Activities in Washington and Georgia.**

2           The Amazon employees who briefly interacted with some photos in the DiF Dataset in

3    Washington and Georgia did not know it might have contained links to photos or data of Illinois

4    residents, nor did they use the Dataset for any Amazon product or service.  Plaintiffs

5    nevertheless assert that Amazon should be subject to statutory damages under BIPA for failing to

6    obtain their consent before downloading the DiF Dataset outside Illinois.  Such an interpretation

7    of BIPA would lead to absurd consequences, imposing statutory damages on private entities for

8    unknowingly coming into possession of data allegedly about Illinois residents—but taking no

9    action in Illinois and never using it.  Nothing in BIPA suggests the statute was intended to have

10   extraterritorial effect.  To the contrary, the Illinois General Assembly's findings show it was

11   concerned with companies coming *into* Illinois and collecting Illinois residents' biometrics.  *See*

12   740 ILCS 14/5(b).  As a matter of Illinois law, BIPA does not apply to Amazon's out-of-state

13   conduct.  Further, its application here would violate the dormant Commerce Clause.

14          **A.    BIPA Does Not Apply Extraterritorially to Amazon.**

15          As this Court has acknowledged, BIPA "is not authorized to have extraterritorial effect"

16   as a matter of Illinois law.  Dkt. 34 at 6.  To establish a BIPA claim, Plaintiffs must prove

17   Amazon violated the statute and that its violation "occur[red] primarily and substantially in

18   Illinois."  *Id.* (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005).

19   Put another way, Amazon could be subject to BIPA only if "the majority of circumstances

20   relating to the alleged violation" occurred in Illinois.  *Landau v. CNA Fin. Corp.,* 886 N.E.2d

21   405, 409 (Ill. App. 2008).  Another district court recently dismissed a BIPA putative class action

22   because, like here, a plaintiff sought to apply the statute improperly to conduct that did not occur

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

"primarily and substantially" in Illinois.  *See McGoveran v. Amazon Web Services, Inc.*, 2021 WL 4502089, at *6 (D. Del. Sept. 30, 2021).[6]  This Court should reach the same conclusions.[7]

> ### 1.     The Undisputed Facts Confirm that Amazon's Relevant Conduct Occurred Entirely Outside Illinois.

BIPA Section 15(b) prohibits any "private entity" from obtaining any person's biometrics without first giving notice and obtaining consent.  740 ILCS 14/15(b).  Plaintiffs claim Amazon violated BIPA Section 15(b) because it allegedly "obtain[ed]" their biometrics without first receiving their written consent or telling them the purpose and duration of Amazon's collection. The relevant conduct underlying Plaintiffs' BIPA Section 15(b) claim involves Amazon "obtain[ing]" (via download from New York-based IBM) two versions of the IBM DiF Dataset *in Washington* and reviewing that Dataset *in Washington and Georgia*.  Further, there is no evidence of any conduct underlying Plaintiffs' Section 15(c) claims, which requires a showing that Amazon sold, leased, traded or otherwise profited from the IBM DiF Dataset.  As this Court emphasized in its order on Amazon's motion to dismiss, the only question is "whether and to what extent Amazon's alleged acts involving the Diversity in Faces dataset occurred in Illinois." Dkt. 34 at 10.  The undisputed answer:  not at all.

Far from showing any connection to Illinois, the evidence shows that Amazon's conduct was several steps *removed* from Illinois.  The DiF Dataset, which allegedly included facial annotations from publicly available photos taken and uploaded *from around the world*, was created by IBM in New York.  Merler Decl. ¶ 8.  IBM used the YFCC100M dataset created by Yahoo! and Flickr, which are both Delaware corporations based in California.  Xiong downloaded the Version 1A and Version 1B of the DiF Dataset from IBM while located in

---

[6] The BIPA claims in *McGoveran* were later permitted to proceed after plaintiffs amended their complaint to specifically allege facts (although untrue) that AWS reached into Illinois to collect plaintiffs' biometric information. *McGoveran*, No. 20-1399-LPS (D. Del. Feb. 14, 2022) (Dkt. 46).  Plaintiffs here, by contrast, do not, and cannot, allege that Amazon engaged in similar conduct.  All of the evidence is to the contrary.

[7] Illinois courts "do not favor any [statutory] construction that would raise legitimate doubts as to the constitutional validity of a statutory provision."  *People v. Scheib*, 390 N.E.2d 872, 876 (Ill. 1979); *accord Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Seattle.  Xiong Decl. ¶¶ 4, 12.  Both versions of the Dataset were physically stored on AWS's US West (Oregon) Region data center.  *Id.* ¶¶ 4, 5, 12; Xia Decl. ¶¶ 4, 5, 8; Xia Dep. 21:10-23.

Xiong, Donini, and Sephus briefly evaluated the DiF Dataset, and separately concluded that the Dataset was unsuitable for their research purposes.  Xiong Decl. ¶ 7; Donini Decl. ¶ 5; Donini Dep. 39:25-40:12; Sephus Decl. ¶ 4.  None of these research scientists were in Illinois; they were located in either Seattle or Atlanta, Georgia.  Xiong Decl. ¶ 1; Xiong Dep. 277:12-278:1; Donini Decl. ¶ 1; Donini Dep. 43:7-22; Sephus Decl. ¶ 1.  None of these research scientists were even aware that the Dataset contained photos of Illinois residents.  Xiong Decl. ¶ 16; Donini Decl. ¶ 9; Sephus Decl. ¶ 5.  The DiF Dataset was never used to develop or improve any Amazon product or service, including Rekognition.  Soatto Decl. ¶ 6; Xia Decl. ¶ 11; Xia Dep. 42:3-17; Xiong Decl. ¶ 16; Xiong Dep. 272:18-273:20; Donini Decl. ¶ 9; Sephus Decl. ¶ 5.

All of Amazon's conduct related to the IBM DiF Dataset occurred outside of Illinois. The evidence confirms the scenario the Court recognized in ruling on Amazon's motion to dismiss, i.e., "[i]t is certainly possible that with more factual refinement around this complex issue, the circumstances around Amazon's attainment, possession and use of the Diversity in Faces dataset will reveal that the alleged violations did not occur primarily in Illinois."  Dkt. 34 at 8.

### 2.    Amazon's Alleged BIPA Violation Had No Connection to Illinois.

Illinois' only connection to this case is that Plaintiffs are Illinois residents who allege they uploaded photos to Flickr while residing in Illinois many years before IBM created its DiF Dataset.  But Plaintiffs do not allege Amazon violated BIPA when Plaintiffs uploaded their photos.  They allege Amazon violated BIPA years later, when it downloaded the DiF Dataset in Washington and supposedly obtained Plaintiffs' biometric identifiers or information.  Likewise, Amazon allegedly violated Section 15(c) when it supposedly "profited" from Plaintiffs' biometric identifiers or information.  As the Court recognized, the relevant inquiry on Plaintiffs' BIPA claim is "whether and to what extent *Amazon's alleged acts* involving the Diversity in

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Faces dataset occurred in Illinois." Dkt. 34 at 10.  But the evidence shows Amazon's conduct did not occur in Illinois at all.

Plaintiffs may respond that if Amazon had sought to obtain consent from Illinois residents before downloading the IBM DiF dataset, any such hypothetical communications would necessarily have involved Illinois.  But that argument puts the cart before the horse by improperly assuming Amazon had an obligation to obtain consent from Illinois residents without first identifying any conduct by Amazon *in Illinois* that would trigger BIPA.  The court made this very point in *McGoveran v. Amazon Web Services, Inc.*, where the plaintiffs opposed the defendants' extraterritoriality defense by arguing that they "failed to make written biometric data retention and destruction policies available to the public and that they failed to provide notice to and obtain consent from Illinois citizens."  2021 WL 4502089, at *4.  The *McGoveran* court rejected the notion that a location could be assigned to an alleged failure to act or that the *absence* of communications with Illinois could bring otherwise extraterritorial conduct within BIPA's reach:

> The Court does not see why that must be true (*See* Tr. at 10) ("It really makes no sense to assign a location for an act that did not occur.")  More fundamentally, that argument depends on the assumption that Defendants were required to provide notice, publish policies, and obtain consent in Illinois. . . . Plaintiffs have not alleged any activity in Illinois that would impose such obligations on Defendants.

*Id.*; *see also David K. Lindemuth Co. v. Shannon Fin. Corp.*, 637 F. Supp. 991, 994 (N.D. Cal. 1986) ("[t]here is no 'place' where [an] omission occur[s]").  The *McGoveran* court's reasoning is sound, as to hold otherwise would make BIPA applicable to anyone who obtains an Illinois resident's biometric data, even unwittingly, without regard to where the defendant resides or conducted the activities giving rise to the claim—an extraterritorial application that the Illinois courts have directly rejected.  *See Avery*, 835 N.E.2d at 852.

### 3. Plaintiffs' Illinois Residency Alone Cannot Satisfy Illinois' Extraterritoriality Doctrine.

The only connection between Plaintiffs' BIPA claim and Illinois is that Plaintiffs are Illinois residents who assert they uploaded photos to Flickr while in Illinois.  Compl. ¶¶ 6-7, 66-

AMAZON'S RENEWED MOT. FOR SUMM. J - 14
(2:20-CV-01084-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

67, 75.  That does not suffice for the application of BIPA.  Plaintiffs' residence alone cannot satisfy Illinois' requirement that *Amazon's* alleged violation of BIPA must have occurred primarily and substantially in Illinois.  *See, e.g., Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*, 2013 WL 1337303, at *7 (N.D. Ill. Mar. 29, 2013) (no substantial connection though plaintiff was an Illinois business); *Vulcan Golf, LLC v. Google Inc.,* 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing case when only contact was plaintiffs' Illinois residency).

In *McGoveran*, the court  refused a similar attempt to apply BIPA extraterritorially based solely on the plaintiffs' Illinois residence.  *See* 2021 WL 4502089, at *6.  There, plaintiffs alleged that when they called a call center located in Massachusetts, one Georgia-based defendant who provided voice technology to the company that operated the call center "extracted biometric information from calls originating from Illinois, from Illinois citizens, and from clearly recognizable Illinois phone numbers," and AWS based in Washington "intercepted biometric information" from Illinois callers.  *Id.* at *4.  The plaintiffs argued BIPA applied because they were in Illinois when they called Massachusetts.  *Id.* According to them, "under BIPA, as long as the source of the biometric data is Illinois, that's enough to establish liability."  *Id.* at *6.

The *McGoveran* court flatly rejected this argument:  "There is no basis in the statutory language to find that BIPA stretches so far."  *Id.*  The court held that "[t]he location of the caller does not . . . say anything about the location where the rest of the conduct occurred," and that there was no indication in the complaint that the non-Illinois defendants "did anything in Illinois."  *Id.* at *4.  Because the defendants did not do "anything" in Illinois, it followed that any BIPA violations did not occur "primarily and substantially" in Illinois.  *Id.* at *6.  The court distinguished decisions denying motions to dismiss (not summary judgment motions) in *Rivera v. Google*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017), and *Monroy v. Shutterfly*, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017), noting that in both those cases the defendants were alleged to have directly and intentionally interacted with the plaintiffs in Illinois.  *Id.* at *5-6.

This case is analogous to *McGoveran.*  Amazon had *no interaction* with Plaintiffs and engaged in *no conduct* in Illinois.  Indeed, nothing happened in Illinois other than Plaintiffs

allegedly uploading their photos to Flickr years before IBM created its DiF Dataset in New York. Vance Dep. 187:9-19; 199:13-16; Janecyk Dep. 95:3-6.[8]  Nonetheless, Plaintiffs ask this Court to adopt the very rule for which the *McGoveran* court found "no basis": that a plaintiff's location in Illinois is alone sufficient to trigger BIPA even when the conduct underlying the alleged BIPA violation occurred entirely outside Illinois.  But as the *McGoveran* court rightly acknowledged, such a rule makes no sense, as it would mean "BIPA could impose liability on a vast number of corporations who do no business in Illinois and who lack any other significant connection to Illinois." *McGoveran*, 2021 WL 4502089, at *6.  Nothing in the Illinois legislative history or findings for BIPA suggests the legislature intended for BIPA to have such sweeping effect.  The Court should follow *McGoveran* and reject Plaintiffs' argument.

> **B.     Applying BIPA to Amazon's Out-of-State Conduct Would Violate the Dormant Commerce Clause.**

Even if Illinois law permitted BIPA to apply extraterritorially to Amazon here (and it does not), the dormant Commerce Clause would prohibit such application.  The Commerce Clause of the U.S. Constitution, Article I, section 8, has a negative implication "commonly known as the dormant Commerce Clause." *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 614 (9th Cir. 2018).  The dormant Commerce Clause prohibits a state from "directly affect[ing] transactions that take place across state lines or entirely outside of the state's borders." *Id.* at 614-15 (quoting *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001)).  If a state statute directly regulates conduct entirely outside of the state's borders, the statute is "struck down . . .  without further inquiry." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) (citation omitted).  The dormant Commerce Clause also prevents "inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 337 (1989) (citation

---

[8] In *McGoveran*, the court acknowledged AWS's public disclosures that its data centers "are located wholly outside Illinois – in Virginia, Ohio, California, and Oregon" and noted that "Plaintiffs do not allege otherwise."  2021 WL 4502089, at *4.  The IBM DiF Dataset was never stored anywhere other than on an Oregon server or on Donini's laptop (that was later wiped), and unlike in *McGoveran*, this case is presented on summary judgment, where Plaintiffs have the burden of presenting evidence to support their claims.

omitted).  This case presents both dormant Commerce Clause scenarios; each is sufficient to foreclose applying BIPA.  *Id.* at 336–37 (the Commerce Clause protects both against inconsistent legislation "generally" or against one State "specifically … forc[ing] an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another.").

### 1.    Plaintiffs May Not Use BIPA to Regulate Conduct Occurring Outside of Illinois' Borders.

"Congress's power to regulate articles or goods in commerce may not permit it to regulate an item for eternity simply because it has once passed state lines."  *United States v. Pappadopoulos*, 64 F.3d 522, 527 (9th Cir. 1995), *abrogated on other grounds by Jones v. United State*s, 529 U.S. 848, 854 (2000).  So too, Illinois may not regulate a photo (or information derived from a photo) anywhere in the world simply because it was taken in Illinois or contains information about an Illinois resident.  For example, in *Daniels Sharpsmart*, the Ninth Circuit held a party would likely succeed on its claim that California violated the dormant Commerce Clause when it attempted to regulate how medical waste created in California could be disposed of elsewhere.  889 F.3d at 616.  Similarly, the Ninth Circuit has held California may not regulate "sales that take place outside California" merely because the seller resides in California.  *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015).

As in these cases, Illinois may not regulate conduct involving biometric data that takes place entirely outside Illinois.  "One state cannot be permitted to dictate what other states must do within their own borders."  *Daniels Sharpsmart*, 889 F.3d at 615.  Illinois cannot dictate what Amazon may do with biometric information lawfully obtained within Washington or Georgia (to the extent Amazon's brief review of IBM's DiF Dataset in Georgia is even relevant).  Yet that is precisely the outcome Plaintiffs demand here.  The Court should reject Plaintiffs' invitation to apply BIPA in an unconstitutional manner and, instead, hold BIPA's application to Amazon on these facts would violate the dormant Commerce Clause.

AMAZON'S RENEWED MOT. FOR SUMM. J - 17
(2:20-CV-01084-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**2.      BIPA's Application Would Conflict with Washington's Privacy Law.**

Applying Illinois' BIPA to Amazon on the undisputed facts would violate the dormant Commerce Clause for yet another reason:  it would conflict with the policy decision of Washington concerning conduct involving its biometric data privacy law and—to the extent relevant—Georgia's decision not to specifically regulate biometrics.

Washington has enacted its own Biometric Privacy Law.  Unlike Illinois, Washington exempted "data generated" from "a physical or digital photo" from its protections.  RCW 19.375.010(1).  Washington also extended privacy protections only to the use and collection of biometric information for "commercial purposes."  RCW 19.375.020(1).  Because Xiong downloaded the IBM DiF Dataset for research purposes, the "commercial purposes" limitation in the Washington law would exclude Amazon's download of the DiF Dataset.[9]  Unlike Illinois, Washington requires notice and consent only to "enroll" biometric information in a database, which involves "captur[ing] a biometric identifier of an individual, convert[ing] it into a reference template that cannot be reconstructed into the original output image, and stor[ing] it in a database that matches the biometric identifier to a specific individual.  RCW 19.375.020; RCW 19.375.101(5).  Plaintiffs do not allege Amazon engaged in any such "enrollment" activity.  Rather, they hinge their liability theory on Amazon downloading a dataset in which IBM included data generated from some of the photos—conduct the Washington law would, again, exclude.  Amazon complied fully with Washington law, the jurisdiction where Xiong interacted with the DiF Dataset (and wherein Xiong and Donini briefly evaluated and rejected any use of the Dataset).  The Court should not allow Plaintiffs to import Illinois' policy decisions into Washington to find a violation where Washington law would deem there was none.

While Sephus briefly evaluated the DiF Dataset (stored on the S3 Bucket in Oregon, but never downloaded) in Georgia, such conduct should not be relevant to Plaintiffs' two BIPA

---

[9] "Commercial purpose" means "in furtherance of the sale or disclosure to a third party of a biometric identifier for the purpose of marketing of goods or services when such goods or services are unrelated to the initial transaction in which a person first gains possession of an individual's biometric identifier."  RCW 19.375.010(4).  In other words, Washington's biometric privacy statute applies only to the sale or disclosure of biometric information itself.

AMAZON'S RENEWED MOT. FOR SUMM. J - 18
(2:20-CV-01084-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

claims.  Section 15(b) does not regulate the review or evaluation of biometrics, and Sephus

engaged in no conduct that could implicate Section 15(c).  Regardless, Georgia has made the

decision not to regulate the use of biometric data, leaving such information freely available for

use by companies and researchers, and Illinois should not be allowed to supplant that.

Applying BIPA to Amazon's wholly out-of-state conduct here would allow Illinois to

make policy and legislative decisions for Washington and Georgia, substituting its views for the

different biometric privacy policy decisions of these other states.  Suggesting that Amazon could

simply comply with the stricter law provides no answer.  In that event, Illinois would still

overrule other states' chosen biometric policies, including (a) Washington's decision to allow

use of all biometric information for non-commercial purposes, or (b) Georgia's decision not to

regulate at all.  *Cf. Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 640 (9th Cir. 1993)

(rejecting a "comply with the most stringent" argument); *see also Mazza v. Am. Honda Co., Inc.*,

666 F.3d 581, 592 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery

Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (recognizing that states may

choose to leave some conduct unregulated in "balancing the competing interests" between

promoting business and protecting consumers).

The Court denied Amazon's dormant Commerce Clause arguments at the motion to

dismiss stage, explaining it "need[ed] more information about the technology behind how

Amazon obtained, stores, or uses the Diversity in Faces dataset[.]"  Dkt. 34 at 11.  The Court

now has that information.  As discussed above, Xiong downloaded the IBM DiF Dataset while in

Washington to a restricted "S3 Bucket" on a server in Oregon.  Xiong Decl. ¶¶ 4, 5, 11.  Nothing

is complex about the technology—the download simply operated in the way that any download

from an online link might.  Merler Decl. ¶ 10.  Amazon did not "use" the Dataset at all.  Three

AWS scientists—Xiong and Donini working in Washington and Sephus working in Georgia—

evaluated the IBM DiF Dataset, determined it was unsuitable for their research purposes, and

then deleted it.  Xiong Decl. ¶¶ 8, 11, 14, 15; Donini Decl. ¶ 5-7; Donini Dep. 137:24-138:3;

Sephus Decl. ¶¶ 3, 4.  The IBM DiF Dataset was never used to develop or improve any Amazon

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

product or service, including Rekognition.  Soatto Decl. ¶ 6; Xia Decl. ¶ 11; Xia Dep. 42:3-17; Xiong Decl. ¶ 16; Xiong Dep. 272:18-273:20; Donini Decl. ¶ 9; Sephus Decl. ¶ 5.

None of Amazon's relevant conduct occurred in Illinois, and the Court should hold the dormant Commerce Clause bars BIPA from applying to Amazon on these facts.

## II.  BIPA Section 15(b) Does Not Apply Because Amazon Had No Reasonable Way to Give Notice or Obtain Consent Before Downloading the DiF Dataset.

Section 15(b) prohibits a private entity from collecting or obtaining biometrics without first giving notice to and obtaining consent from the "subject."  740 ILCS 14/15(b).  The Illinois Supreme Court has emphasized that "compliance" with BIPA "should not be difficult," so that "whatever expenses a business might incur to meet the law's requirements are likely to be insignificant."  *Rosenbach v. Six Flags Entm't*, 129 N.E.3d 1197, 1207 (Ill. 2019).  But the BIPA "compliance" Plaintiffs expect of Amazon is not just "difficult" but impossible, to the point where application of Section 15(b) would be an absurdity.

Here, Amazon obtained a dataset with links to publicly-available photos of people from around the world, without knowing whether *any* of those people were from Illinois.  Xiong Decl. ¶ 16; Xiong Dep. 269:23-270:8; Donini Decl. ¶ 9; Sephus Decl. ¶ 5.  The photos in the dataset were uploaded to Flickr years before, in accordance with Flickr's terms of use, and compiled by IBM into the DiF Dataset.  *See, e.g.*, Compl. ¶¶ 69, 77.  To the extent the dataset included Illinois residents' information, Amazon could not identify the Illinois residents among the *one million* photos, figure out which of them had annotations of their faces in the dataset, provide them with notice, or solicit a release from them—much less do so *before* downloading the DiF Dataset.  Plaintiffs' suggestions for class notice illustrate this point, proposing Rube Goldberg-like research and notice processes that no reasonable business could undertake before downloading a dataset.  *See* Dkt. 57 (Opp. to Class Cert.) at 10:1-12:24 (discussing Plaintiffs' notice proposals).

The court in *Zellmer v. Facebook*, 2022 WL 976981 (N.D. Cal. Mar. 31, 2022), recently rejected a similar attempt to expand BIPA beyond all reasonable bounds.  There, plaintiff accused Facebook of violating BIPA by scanning user-uploaded photos to identify non-Facebook

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   users.  *Id.* at *1.  Plaintiff was not a Facebook user; his only relationship to the company was

2   appearing in photos Facebook users uploaded to the site.  *Id.*  He sued on behalf of Illinois non-

3   Facebook users, alleging Facebook needed to notify him and obtain consent before scanning his

4   image.  *Id.*  The court granted Facebook summary judgment on plaintiff's Section 15(b) claim

5   because Facebook had no obligation, and no realistic way, to provide notice to unknown non-

6   Facebook users.  *Id.* at *4.  The court held that BIPA applies only where there is a "minimum

7   level of known contact" between a person and the entity who may be collecting biometric

8   information.  *Id.*  Construing BIPA otherwise, the court held, "would lead to obvious and

9   insoluble problems."  *Id.*  For example, Facebook would somehow need to identify every non-

10  user in Illinois and find a way to communicate with them to provide notice and obtain consent.

11  *Id.*  The court found that the Illinois legislature would not have intended such an absurd result.

12  *Id.* at *5; *see also People v. Hanna*, 207 Ill. 2d 486, 498 (2003) ("It is a familiar rule, that a thing

13  may be within the letter of the statute and yet not within the statute, because not within its spirit,

14  nor within the intention of its makers.").

15         Those principles apply even more forcefully here, where Amazon (unlike Facebook) did

16  not have anything to do with the creation of the dataset allegedly containing Plaintiffs'

17  information.  It would be "patently unreasonable to construe BIPA to mean that [Amazon] was

18  required to provide notice to, and obtain consent from, non-users who were for all practical

19  purposes total strangers to [Amazon], and with whom [Amazon] had no relationship

20  whatsoever."  *Zellmer*, 2022 WL 976981, at *3.  In addition to putting Amazon in the

21  "impossible position" of identifying and communicating with potentially thousands of people

22  with whom it had no relationship and no ability to locate, *id.* at *5, Plaintiffs' theory would

23  stretch BIPA beyond any reasonable bounds.  The Court should grant summary judgment on the

24  Section 15(b) claim.

25  **III.    The Court Should Grant Summary Judgment on Plaintiffs' Section 15(c) Claim.**

26         Plaintiffs' BIPA Section 15(c) claim fails for another reason:  Amazon did not profit from

27  Plaintiffs' biometric identifiers or information.

AMAZON'S RENEWED MOT. FOR SUMM. J - 21
(2:20-CV-01084-JLR)

Section 15(c) states that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information."  740 ILCS 14/15(c).  In deciding Amazon's earlier motion to dismiss, the Court found that "§ 15(c) regulates transactions with two components: (1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value."  Dkt. 38 at 7.

The Court did not grant Amazon's motion to dismiss Plaintiffs' Section 15(c) claim because "Plaintiffs' factual allegations allow for the reasonable inference that selling Amazon's products necessarily shares access to the underlying biometric data in exchange for some benefit to Amazon."  *Id.* at 12.  But the Court also acknowledged that "[i]t is certainly possible that with further factual development, it is discovered that Amazon does not so integrate biometric data, or the Diversity in Faces database in particular, into its products."  *Id.*  That further factual development has occurred, and the undisputed evidence shows Amazon *never* used—let alone integrated—the DiF Dataset into any of Amazon's products or services.  Soatto Decl. ¶ 6; Xia Decl. ¶ 11; 42:3-17; Xiong Decl. ¶ 16; 272:18-273:20; Donini Decl. ¶ 9; Sephus Decl. ¶ 5.

In any event, even if Plaintiffs were to suggest (without any evidence) that Amazon used the DiF Dataset to somehow improve Amazon's products or services (it did not), that would still not trigger Section 15(c).  As the Court held in *Vance v. Microsoft*, using " biometric data to 'improve [a company's] facial recognition products and technologies,' which 'improve[s] the effectiveness' of those products and [make] them 'more valuable in the commercial marketplace,'" is insufficient because such allegations merely "support the inference that [the company] may have received some benefit from increased sales of its improved products" but "do not establish that [the company] disseminated or shared access to biometric data through its products" or "that the biometric data is itself so incorporated into [the company's] product that by marketing the product, it is commercially disseminating the biometric data."  *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1309 (W.D. Wash. 2021).  *Id.*

AMAZON'S RENEWED MOT. FOR SUMM. J - 22
(2:20-CV-01084-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    In short, the undisputed evidence shows that Amazon did not profit from Plaintiffs'

2 biometric information or identifiers.  Summary judgment should be entered in Amazon's favor

3 on Plaintiffs' Section 15(c) claim.

4 **IV.    The Court Should Grant Summary Judgment on the Unjust Enrichment Claim.**

5    Plaintiffs allege Amazon obtained a "monetary benefit" from them to their detriment, and

6 that Amazon did so by "profiting off of Plaintiffs' ... biometric identifiers and information."

7 Compl. ¶ 114.  But the undisputed evidence establishes that Amazon did nothing with the DiF

8 Dataset beyond its initial evaluation and determination that the Dataset would not be useful for

9 research.  Amazon therefore did not and could not possibly have obtained any "monetary

10 benefit" or "profit" from Plaintiffs' biometric identifiers or information.

11    In denying Amazon's motion to dismiss, this Court held that Illinois law governed

12 Plaintiffs' unjust enrichment claim because Plaintiffs allegedly uploaded their photos in Illinois.

13 Dkt. 38 at 16, 17 ("uploaded Illinois-created content in Illinois"; "the benefiting act (the sharing

14 of facial images) was done [in Illinois]").

15    Under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a

16 benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the

17 fundamental principles of justice, equity, and good conscience."  *Cleary v. Philip Morris Inc.*,

18 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.,*

19 *Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).[10]

20    In an effort to satisfy the elements of unjust enrichment under Illinois law, Plaintiffs

21 alleged that Amazon benefited because it used the DiF Dataset to "improve its facial recognition

---

[10] In its motion to dismiss, Amazon argued that Washington law should apply.  Under Washington law, Plaintiffs must show "(1) [Amazon] received a benefit, (2) at [Plaintiffs'] expense, and (3) the circumstances make it unjust for [Amazon] to retain the benefit without payment." *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012).  For the same reasons Plaintiffs' unjust enrichment claim fails under Illinois law, it fails under Washington law.  Amazon received no benefit from its brief download and review of the DiF Dataset.  Similarly, to the extent that Georgia law could apply because Sephus evaluated the IBM DiF Dataset in Atlanta (and it should not), Plaintiff's unjust enrichment claim also fails under Georgia law.  Plaintiffs do not suggest that Amazon "induced or encouraged [Plaintiffs] to provide something of value to [Amazon]; that [Plaintiffs] provided a benefit to [Amazon] with the expectation that [Amazon] would be responsible for the cost thereof; and that [Amazon] knew of the benefit being bestowed upon it by [Plaintiffs] and either affirmatively chose to accept the benefit or failed to reject it."  *See Sitterli v. Csachi*, 811 S.E.2d 454, 456 (Ga. App. Ct. 2018) (citation omitted).

AMAZON'S RENEWED MOT. FOR SUMM. J - 23
(2:20-CV-01084-JLR)

products." Compl. ¶ 65.  But the undisputed evidence demonstrates that this allegation has no

factual basis.  Amazon did not use or benefit from the DiF Dataset, much less "profit" from it.

The Dataset was not used or integrated in any Amazon product or service –including

Rekognition.  Soatto Decl. ¶ 6; Xia Decl. ¶ 11; Xia Dep. 42:3-17; Xiong Decl. ¶ 16; Xiong Dep.

272:18-273:20; Donini Decl. ¶ 9; Sephus Decl. ¶ 5.  Because Amazon obtained no "benefit"

from the IBM DiF Dataset, the Court should grant summary judgment in Amazon's favor on

Plaintiffs' unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court grant summary

judgment on Plaintiffs' claims.


DATED this 19th day of May, 2022.


DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendant Amazon.com, Inc.


By s/ Kenneth E. Payson
    Jaime Drozd Allen, WSBA #35742
    Kenneth E. Payson, WSBA #26369
    920 Fifth Avenue, Suite 3300
    Seattle, WA  98104-1610
    Telephone: (206) 622-3150
    Fax: (206) 757-7700
    E-mail: JaimeAllen@dwt.com
            KenPayson@dwt.com


MORGAN LEWIS & BOCKIUS
Attorneys for Defendant Amazon.com, Inc.


By s/ Elizabeth B. Herrington
    Elizabeth B. Herrington (pro hac vice)
    Phillip J. Wiese (pro hac vice)
    110 North Wacker Drive, Suite 2800
    Chicago, IL 60606-1511
    Telephone: (312) 324-1000
    E-mail:  beth.herrington@morganlewis.com
             phillip.wiese@morganlewis.com

AMAZON'S RENEWED MOT. FOR SUMM. J - 24
(2:20-CV-01084-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax